# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT
## STATE OF LOUISIANA

### GHAZIR LACAYO

### VERSUS

### STATE OF LOUISIANA

*******************************
Supreme Court, State of Louisiana
Judgment rendered July 31, 2015, Docket Number 2014-KH-1610

First Circuit Court of Appeals,
Judgment rendered June 16, 2014, Under Docket Number 2014-KW-0381

22nd Judicial District Court, Parish of St. Tammany
Under Docket Number 415424 "G"
********************************************

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>PETITION FOR WRIT OF HABEAS CORPUS</u>

### <u>UNDER 28 USC §2254</u>

*********************************************************

Respectfully submitted,

Ghazir Lacayo #306489
Rayburn Correctional Center
27268 HWY 21
Angie, Louisiana 70426

1

# I
## PRESENTATION OF FACTS

In this issue presented for review, Mr. Lacayo contends that the District Court Records of the motions proceedings in both first and second trials on January 9, 2008, and May 18, 2009, which conducted by several different judges including, Raymond S. Childress, Williams J. Crain are "replete" with sufficient evidence to show that rulings throughout his whole case by these District Judges and procedural irregularities have violated substantial constitutional rights of Mr. Lacayo, sufficient to warrant reversal of his conviction, and each trial official played a major role in depriving Mr. Lacayo of a fair trial by "sabotaging" his entire defense. In their own craftiness and cleverness, each trial official has geared-up to plan a well-organized and/or well-engineered mafia style, "miscarriage of justice".

## VIOLATIONS

24. Principals, 25. Accessories after the fact, 26. Criminal Conspiracy, 28. Inciting Felony, 39. Negligent Injury, 40.1 Terrorizing, 46. False Imprisonment, 73.5 Computer Fraud, 73.7 Computer Tampering, 107.2 Hate Crimes, 113. "Treason", 114. Mis-prison of Treason, 115 Criminal Anarchy, 128.1 Terrorism, 128.2 Aiding Other in Terrorism, 130.1 Obstruction of Justice, 131.1 Compounding a Felony, 132. Injuring Public Records, 133. Filing of Maintaining False Public Records, 134. Malfeasance in Office, and 134.2 Malfeasance in Office: Tampering With Evidence

## CLAIMS PRESENTED FOR REVIEW

1. The trial court lacked subject matter and personal jurisdiction and the conviction and sentence obtained in violation of the constitution of the United States Constitution V, VI, VIII, XIV, and the Louisiana Constitution of 1974, article 1 § 1, 2, 3, 13, 16, 20, 22, 24, Honorable Judge Elaine W. Dimiceli violated Petitioner's rights by not fully advising the Petitioner of the right against self-

incrimination and in violation of the Louisiana Code of Criminal Procedure article 707-715, motion for continuance; time for filing.

2. Conviction and sentence obtained in violation of the United States Constitution Amendment V, VI, XIV, and the Louisiana Constitution of 1974 article 1 §13, 15, §16. "Double Jeopardy"

3. In violation of a fair and impartial 2nd trial and conviction and sentence obtained in violation of the United States Constitution Amendment V, VI, XIV, and the Louisiana Constitution of 1974 article 1 §13 and §16. "Ineffective Assistance of Counsel".

4. La. C. Cr. P. Art. 854, newly discovered evidence; necessary allegations, actual innocence of the Petitioner, Mr. Lacayo.

5. In violation of the United States Constitution, Amendment V, VI, XIV, and Louisiana Constitution of 1974, article 1 §13 and 16, "Petitioner forced to retain counsel not enrolled to the Petitioner's case, or with Petitioner's lawyer, or none at all".

6. In violation of a "Fair and impartial 1st and 2nd trial" and Equal Protection violation caused the conviction and sentence obtained in violation of the United States Constitution Amendment V, VI, XIV, and the Louisiana Constitution of 1974 article 1 §13 and §16. "Bias judges, failure to recuse themselves."

## MEMORANDUM IN SUPPORT
## LAW AND ARGUMENT
### CLAIM #1

**THE TRIAL COURT LACKED SUBJECT MATTER AND PERSONAL JURISDICTION AND THE CONVICTION AND SENTENCE OBTAINED IS IN VIOLATION OF THE CONSTITUTION OF THE UNITED STATES AMENDMENTS V, VI, VIII, XIV, AND THE LOUISIANA CONSTITUTION OF 1974, ARTICLE 1 § 1, 2, 3, 13, 16, 20, 22, 24, HONORABLE JUDGE ELAINE W. DIMICELI VIOLATED PETITIONER'S RIGHTS BY NOT FULLY ADVISING THE PETITIONER OF THE RIGHT AGAINST SELF-INCRIMINATION, AND IN VIOLATION OF THE LOUISIANA CODE OF CRIMINAL PROCEDURE ARTICLE 707-715, MOTION FOR CONTINUANCE; TIME FOR FILING. Attention:** The stenographer completely removed the beginning and a small portion of the middle section of the Recusal Hearing.

During the trial proceedings of the Petitioner, the Honorable Judge Elaine W. Dimiceli failed to advice the Petitioner of the dangerous and disadvantages of self-representation, so that the decision was made with Petitioner's "Eyes Wide Open". Honorable Judge Elaine W. Dimiceli denied the Petitioner the right to have his counsel present during the Motion hearing dated July 23, 2008. The Honorable Judge Elaine W. Dimiceli only stated as part of the record that counsel was not going to adopt the Motion filed by the Petitioner and Petitioner could represent the Motion himself, and therefore the Petitioner's constitutional rights were then violated or Petitioner had retained a paid attorney and this attorney was of record and due to errors made by the trial court and the Honorable Judge Elaine W. Dimiceli, Petitioner was subjected to self-representation without his eyes being wide open. The Honorable Judge Elaine W. Dimiceli, made statements in open court that clearly will prove the violation of the

4

Petitioner's constitutional rights in that the Honorable Judge Elaine W. Dimiceli moved the hearing date without informing Petitioner's Counsel that the hearing had been rescheduled. Counsel for the Petitioner, Mr. DeSalvo supposedly did not know of the time of the hearing being moved and the Honorable Judge Elaine W. Dimiceli should have stopped the hearing, but instead forced the Petitioner into a self-representation mode that violated the Petitioner's constitutional rights and subjected the Petitioner to a grave impediment of representing himself for which the Petitioner could not perform on his own. The Constitution of the United States, and the Louisiana Constitution, states that every defendant shall be afforded the right to counsel and for the Honorable Court to hold a hearing without continuing to allow counsel to be present is a clear violation of these constitutional rights and the case should be reversed and remanded and/or an evidentiary hearing ordered for the determination of the record to be presented herein and for the Honorable Judge Elaine W. Dimiceli to be made present to explain the reason for not allowing Counsel, Mr. DeSalvo, to be notified and present and represent the Petitioner in this aforesaid matter.

The prosecutor, Mr. Dohre, readily admitted that by his own admission that Mr. Lacayo's Private Counsel, Frank DeSalvo was at the 22nd Judicial District Court on July 22, 2008, discussing issues concerning the recusal motion that was filed herein. Mr. Dohre also saw and spoke with Mr. DeSalvo prior to the date of July 23, 2008 and could have notified Mr. DeSalvo of the change in the Hearing. Mr. Dohre went on to state on,

(pg. 114, 4-20 and 21-27;32 and 115, 1-7, TT):

MR. DOHRE: (21) I don't know whether there was (22) Arrangements between Mr. Lacayo and him to be (23) present for this hearing or not. I just (24) wanted to let the court know that I don't know (25) whether Division "A" made attempts to try to (26) get

to let him know that this was set.  I (27) Don't know whether he knew.  (31) **BY THE COURT**: (32) All right. Then he didn't come.  Well,

(pg. 115) (1) As far as I'm concerned, this is not -- I have (2) to go by the written minutes, which were take (3) down from the hearing or whatever happened on (4) January 9th. And after looking at these (5) minutes, I don't see that Judge Childress did (6) anything improper, so the Court's going to (7) deny your motion to recuse him.

Mr. Dohre violated the Petitioner's Constitutional Rights by failing to have or allow counsel for the Petitioner to be made present during the hearing that was held on July 23, 2008. Mr. Dohre stated in open court that he did not know if Mr. DeSalvo knew of the time change twice and then also made statements once more that Mr. Dohre confessed that Mr. DeSalvo was aware of the time change.  The prosecutor Mr. Dohre has clearly committed acts that constitute egregious misconduct.

Therefore, Mr. Lacayo contends the fact his hired attorney was not present due to:

a.  The Docket Time being changed

b.  never informed of that change constitutes the Court's prejudice and bias against Mr. Lacayo, and

c.  unfair Non-Hearing on July 22, 2008, and also without his private counsel or Mr. Lacayo present on the Non-Hearing of July 22, 2008

d.  and the illegal arranging of the hearing without proper procedure to reschedule for a continuance

e.  and changing of the time two dockets earlier on the date of July 23, 2008

f.  WHICH CAUSED A VIOLATION OF THE ATTORNEY AND CLIENT PRIVILEGE BY COMMITTING A FATAL HIGH CRIME WITH THE COURT, THE CLERK OF COURTS AND THE PROSECUTOR?

Mr. Lacayo was never advised of the fundamental disadvantages to the self-representation clause of representing himself. The prosecutor and/or the court intentionally moved the hearing from one date to the other to have Mr. Lacayo forced to represent the Motion he had presented months in advance of the hearing. Mr. Lacayo is not an attorney of law or never has gone before any criminal law classes and has not had any training in this field and was never informed by the JUDGE nor the PROSECUTOR that if he represented himself he would be facing the possibility of losing a lot of constitutional rights that could be afforded to him if the proper objections and motion to move are made during these hearings. Instead the trial court allowed this hearing to be moved by the prosecutor and by the prosecutor readily admitting that he talked to Mr. DeSalvo the day before in that he could have then informed Mr. DeSalvo of the hearing being changed violated the Petitioner's constitutional rights and subject Mr. Lacayo to represent himself without being informed of the right against self-incrimination. The Clerk even admitted in open court,

(pg. 114; 28-30, TT)

(28) **BY THE CLERK**: (29) YES, She did send notice to him for (30)YESTERDAY'S DATE

and that Mr. DeSalvo was notified of the hearing date that had been rescheduled several time by the honorable Judge Childress and the Clerk states it was for July 22, 2008 and not for July 23, 2008. Therefore, the hearing that was held on July 23, 2008 was a clear violation of Mr. Lacayo's constitutional rights to the VI and XIV Amendment of the United States Constitution and the Louisiana Constitution of 1974, Article 1 Section 13, and 16 whereas the 22nd Judicial district Court and/or the prosecutor committed prosecutorial misconduct in the Mr. Lacayo's case. The only way Mr. DeSalvo showed up on the 23rd of July was the fact he just happened to be in the courthouse through telepathic capabilities. The Honorable Judge Elaine W. Dimiceli

7

never appointed Mr. Lacayo counsel for the hearing, once Mr. Lacayo appeared before the Honorable Court for the hearing, the Court should have at that point and time continued the hearing until counsel, Mr. DeSalvo could be notified and brought forth to the court or appointed counsel to stand in on the pro-se motion. Even though the motion filed herein was a pro-se motion Mr. Lacayo is still guaranteed the right to counsel under the VI, XIV, Amendment to the Untied States Constitution and the Honorable Court violated these rights by allowing the prosecutor to proceed and the hearing to be held and to not fully advise Mr. Lacayo of the dangers of self-representation.

Mr. Dohre and/or the court deliberately moved the hearing on the Motion to Recuse and he also deliberately informed the court that he did not remember anything that was said to him the previous day. The Prosecutor Mr. Dohre committed prosecutorial misconduct against the Petitioner, Mr. Lacayo.

Moreover, Mr. Lacayo declared to Judge Elaine W. DiMiceli that it was not his fault that his private attorney, Mr. Frank G. DeSalvo, was not present and that he tried to contacts his attorney by stating on the appeal record. This was stated on the July 23, 2008, Recusal Motion Hearing.

**REVIEW TRANSCRIPTS (Pg. 107-116)  BY THE DEFENDANT (Pg. 111; 8-12)**

(8) I feel even here I have an attorney (9) which knows the date was on **the 22nd, I was** (10) **supposed to come to court, which I'm in** (11) **here without an attorney which is not even** (12) **fair, to defend myself.** (Pg. 111; 27-32) and see also; (370; 12-20; 371, 7-21) **BY THE DEFENDANT** (27) Yes, I did, I notified him for four (28) days, contacted him and on the 4th day, I (29) guess, with me being persistent, he contacted (30) a **friend** of mine, which relayed

8

a message (31) letting him know it is **THE 22ND** that I needed (32) him (THERE), that I wanted **HERE,** to discuss (1) this

Besides, Mr. Lacayo attempted to try to invoke his Constitutions Rights to counsel The Honorable Elaine W. Dimiceli abridged, stymied, and thwarted any attempts of the pitfall by stating on the verbatim record on July 23, 2008. **BY THE COURT (Pg. 112; 5-8)** (5) Because he **"DIDN'T COME YESTERDAY".** He was (6) **NOT "HERE",** so evidently he does **NOT** want—**IT** (7) seems that he does **NOT WANT TO ADOPT YOUR** (8) motion.

Therefore, notice that Honorable Judge Elaine W. Dimiceli, stated in the verbatim record that, **"HE DIDN'T COME YESTERDAY"**, the Judge, Dimiceli admitted on her own acknowledgement that she is aware of the counsel, Mr. Desalvo, did **NOT** show up at the previous date, July 22, 2008 and she also admitted by her own admission that she was aware of the **NON-HEARING** appointment on the date of, July 22, 2008.

Besides, you will notice on **(Pg. 114; 3-27)** of the appeal records and further down later in the facts that we will learn from the prosecutor Mr. Dohre by his own admission that Mr. Lacayo's private counsel, Frank G. DeSalvo, was at the 22nd Judicial District Court on July 22, 2008, discussing issues concerning the Recusal Motion with the prosecutor, Mr. Dohre stated that twice  he did not know if Mr. DeSalvo knew of the time change and then also stated again once more that he, Mr. Dohre, admitted to knowingly knew that Mr. Lacayo's counsel, Mr. DeSalvo, was **"AWARE"** of the time change. **(SEE ALSO; Pg. 114; 4-27) BY MR. DOHRE** (4) I DID WANT TO SAY ONE THING. I HAPPENED (5) TO SEE AS AN OFFICER OF THE COURT, I WAS IN (6) THE HALLWAY, NOT ON THIS CASE, AND I DIDN'T (7) REALIZE IT WAS EVEN SAID "YESTERDAY" UNTIL MR. (8) DREALING TOLD ME AFTER WARDS, BUT I DID SEE MR. (9) DESALVO, AND I DIDN'T KNOW WHETHER, I

DON'T (10) THINK, THE COURT WAS IN "**SESSION**" AT THE TIME **I** (11) **DON'T KNOW**—ACTUALLY, **I THINK I WAS**, ON (12) SECOND FLOOR, **SO (IT) COULDN'T HAVE BEEN LOOKING** (13) **INTO THIS COURTROOM,** BUT HE DID MAKE A COMMENT (14) ABOUT THE CASE, **I DON'T KNOW, WEATHER HE KNEW** (15) "**IT WAS SET" "I CAN'T REMEMBER"** WHETHER HE TALKED. (16) TO AS FAR AS THE RECUSAL HEARING, BUT I DID (17) WANT TO LET THE COURT KNOW THAT **I DID SEE HIM** (18) AND **HE DID MAKE A COMMENT ABOUT THIS CASE AND** (19) **"THAT HE KNEW THAT IT WAS SET." "SET TO THIS** (20) **DIVISION FOR A RECUSAL HEARING"** (21) **I DON'T KNOW,** WHETHER THERE WAS IN (22) AGREEMENT BETWEEN MR. LACAYO AND HIM TO BE (23) PRESENT FOR THIS HEARING OR NOT. I JUST (24) WANT TO LET THE COURT KNOW, **THAT I DON'T KNOW** (25) WEATHER DIVISION "A" MADE ATTEMPT TO TRY TO (26) GET TO LET HIM KNOW THAT THIS WAS SET. **I** (27) **DON'T KNOW, WEATHER HE KNEW.**

Collegian will be studying that bit of double – talk and state – of – the – art lies that was so corrupt on so many different levels.  Indeed, as you can see, it has exacerbated matters when Mr. Dohre attempted to connive his way out of the vibrant scandal and committed oscillated shifty false statements by making contradictory defense that he didn't know if Mr. DeSalvo knew of the time change twice and then also made statement once more again that Mr. Dohre confessed that he knew that Mr. Lacayo's defense counsel, Mr. DeSalvo was aware of the time change is undeniable stratagem yet becomes identical to **scienter, "knowingly"**, guilty knowledge and undoubtedly proof beyond clear and convincing evidence with (**Corpus Deliciti**) **"The Body of the Crime"** and under **Res Ipsa Loqitur** "The Situation Speaks for Itself" and implicit (**MENS REA**) "guilty mind" and with sinister (**Actus Reus**) "guilty act" because of his

confession of showing up at the courthouse on July 22,2008, but never going to the actual non-hearing that they were subpoena to go to in the first place on July 22,2008 and also showed up at the illegal hearing on July 23,2008 without a subpoena or without ever having a proper Continuance Hearing as a result committed a HIGH CRIME by violating the Codified Laws of the State of Louisiana, Obstruction of Justice, Denial of proper Access to Court. Malfeasance in Office by being aware of or involved in the illegal acts. The prosecutor KENNETH DOHRE clearly has committed acts that constitute egregious misconduct.

Therefore, Mr. Lacayo further contends that the facts is his hired attorney, Frank G. DeSalvo, was not present and due to the fact the notice on Tuesday, July 1, 2008 through the actual minute records below states that the re-scheduling was move to the date of **"July 22, 2008."**

ACTUAL MINUTES PART

"The defendant not being present into the court", but having been transported from the St. Tammany Parish Jail to the courthouse and remaining in the holding facility the defended being represented by his counsel, Robert P. Blackburn appearing on behalf of Frank G. DeSalvo in open court and this matter on assignment for pre-trial pursuant the felony jury trial continued without date pending the outcome of the hearing on the motion for Recusal presently **"SCHEDULED FOR JULY 22, 2008".**

Thus, Mr. Lacayo demonstrates that even though all this was done on July 1, 2008, in the Honorable Judge, Raymond S. Childress, Courtroom Div. "A" that it was continued pending the out come of the Recusal Hearing that was reschedule on July 22, 2008, and illegally RE-SCHEDULED time on July 23, 2008. The next day without being notified or without proper Procedural Due Process, to this day The Court does not have any records of the Motion for

Continuance, time for filing or records of the NON-RESCHEDULING of July 22, 2008 NON-HEARING.

Moreover, private attorney, Frank G. DeSalvo was informed of the date of July 22, 2008, Recusal Hearing by court reporter statements stated below: (See also. Pg.114; 29-30)

BY THE CLERK: (29) Yes, she did send notice to him (30) for "**YESTERDAY'S DATE**".

As a result, while the clerk mention when viewing her computer in the July 23, 2008, hearing had re-confirms the initial date on July 22, 2008, but she never mentioned that he was informed of the date of the "**TWENTY THIRD**" so how was Counsel DeSalvo informed of that later date? Because Private Attorney Frank G. DeSalvo, showed up on the date of July 23, 2008, supposedly late, or the recusal hearing was moved earlier on July 23, 2008 as stated by **THE BAILIFF TYSON SONNIER** to Ghazir G. Lacayo and private Attorney Frank G. Desalvo simultaneously after the court's proceedings of July 23, 2008.

The next issue would be a letter from the 22nd Judicial District Court stating on April 6, 2011. **"IN REGARD TO DOCKET #415424 PLEASE BE ADVISED THAT <u>YOU HAD NO COURT DATE ON JULY 22, 2008</u>".**

Furthermore, Mr. Lacayo's hired Attorney Frank G. DeSalvo took <u>ALL</u> responsibility of the pro-se motions, and when Mr. Desalvo petitioned his Oral Motion to Quash indictment dealing with the Constitutional Violation on May 15, 2009, motion hearing, most likely, never submitting a required written Motion To Quash Indictment due to the Constitutional Rights Violation of the UNABRIDGED ILLEGALITY of the date and time period movement, and Attorney Mr. Desalvo somewhat draw back his argument by giving a weak and insufficient defense to his client's defense but protected the rights of the Post-Conviction Relief by stating in the transcripts below: **(APPEAL RECORDS 368; Pg.100; 18-25)** (18) **MR. DESALVO:** (19)

12

Courts ruling, "I think I should at (21) least at this point ask the court to (22) consider there motions as having been (23) filed by me (24) the court (25) I will accept them as such." **(APPEAL RECORDS 376-377; 18-32; 1-18)** (18) I believe that he believe that his (19) rights were violated at the time. Those (20) things, to me, are not necessarily (21) involved in a "CHANGE OF VENUE", but would (22) be more involved in some **"POST-CONVICTION"** (23) relief, **I think** I would like for the (24) Court to consider these **MOTIONS as his** (25) **Objection** and his attempts to protect the (26) record for Appellate purposes (27) The Court (28) **"SURE"** (29) Mr. DeSalvo (30) **I think** that would address it for (31) him. Only that **I think** that (32) Mr. Lacayo would wish beyond that would be for (1) **"The Court to dismiss the charges based** (2) **upon the Violation of his Rights."** (3) **THE COURT:** (4) So, what you're actually moving is (5) for a Motion to Quash the indictment bases (6) on the- - what took place on a Motion to Recuse between Judge Childress and Judge (8) DiMiceli. Is that right? (9) **MR. DESALVO:** (10) one of the many things contained (11) inside his Motion for a **CHANGE OF VENUE** (12) that **perhaps** it's just not titled with, (13) enough width and breadth to cover, all the (14) allegations. However, I'd like the Court to (15) consider the allegation made and request (16) those things requested in the motion be (17) made a part of the record for any (18) appellate purposes if necessary.

In Addition, Private Attorney Frank G. DeSalvo mediocre attempt to "PROVIDE HIS OWN ORAL MOTION TO PETITION THE TRIAL COURT TO QUASH THE INDICTMENT ON THE CONSTITUTIONAL VIOLATIONS". It has now accomplished to disclose the undeniable and unequivocal finagling throughout his unctuous reply. Once again, the sordid sophistry of the private attorney, DeSalvo, using attorney tactics by craftily circumventing the specific question and addressing back to the CHANGE OF VENUE MOTION ISSUES instead

of responding to the previous questioning from Judge Crain, and Mr. DeSalvo used vague wording as in the verbatim expression above: **I think-**(4) times and **perhaps** – (2) times, furthermore, deliberately withholding the forthright sufficient evidence and denied an affirmative defense whether any courts have distinguished that decision from those rendered in similar cases of the "RES JUDICATA" an adjudicated matter, further clarifying that the date was unlawfully moved from July 22, 2008, to July 23, 2008, and moving it two docket earlier the morning of the hearing of July 23, 2008. Since, Mr. DeSalvo was involve in the plot to sabotage his own client's case shows that he had no intention to litigate Mr. Lacayo's case correctly, because of the crime Mr. DeSalvo committed and would have incriminated himself further into the ABYSS.

At that point it has clearly shown that Mr. DeSalvo gave an inadequate defense by cleverly circumventing the response onto the CHANGE OF VENUE instead of completely answering the question about the Quash Indictment shows more involvement in the conspiracy, at least he protected his client's objection to **All** the Court's Rulings as stated below: **(APPEAL RECORDS 429; Pg.71; 25-28)** (25) **MR. DESALVO:** (26) Your Honor, I know the record will (27) reflect our objection to "**ALL**" The Courts (28) rulings (29) **THE COURT:** (30) " The Record Will So Reflect".

"**IF**", The Honorable Judge, William J. Crain would have provided a proper judgment to Quash the Indictment, Mr. Lacayo would have been immediately released from the custody of the courtroom at that point and the prosecutor would have not been able to install or ensure the illegal conviction committed against Mr. Lacayo. In fact, on May 15, 2009, Judge Crain heard a narrated account of the illegal issues including unlawful acts committed in the 1st trial and the 2nd trial issues of the Illegal Recusal Hearing.

**(REVIEW APPEAL RECORDS: 360—375) (SEE ALSO 376; 13—17 AND 382; 3-12) MR. DESALVO**: (13) Judge DiMiceli (14) **took it very early in the docket**, and (15) when I showed up, Mr. Lacayo was sitting (16) on the bench and said the Judge just (17) denied the motion.

**MR. DESALVO**: (4) in conjunction with that, "Your (5) Honor, I would just like to make a part of (6) the record that the decision on that (7) record was made prior to the time that (8) I got to the court (9) Mr. Lacayo thinks he heard a ruling (10) at the time, that I was told ---I don't (11) recall which, but that---."

Notice there are missing statements in these transcript, and in counsel Mr. DeSalvo statements. Let's be reminded of the Prosecutor Mr. Dohre's statement that he did see and spoke with counsel, Mr. DeSalvo, on the July 22, 2008 at different floor within the courthouse and also that Mr. Dohre admitted that he knowingly knew that the defense counsel, Mr. DeSalvo, was **"AWARE"** of the time change and then denied that account in one solid paragraph or sentence and as you can see attorney DeSalvo also tries to put the blame on the 22nd Judicial District Court in fact knowingly full well he was involve in the crime at hand. With all due respect Mr. Lacayo avows he knows the **"utmost truism"** is that his private counsel, DeSalvo has conspired with their conspiratorial overt acts to commit an illegal outrageous conduct with THE JUDGE, THE PROSECUTOR, AND THE CLERK OF COURT to violate his client's Constitutional Rights and to cause malicious injury to Mr. Lacayo by Aiding and abetting the **"ORGANIZED HIGH CRIME"**.

Therewith, The Court has deprived Mr. Lacayo of his Right to a Fair and Impartial Trial Proceedings by allowing the Subterfuge of Illegal Acts to be committed against Mr. Lacayo and most importantly causing MANIFEST VIOLATION of subject matter and personal jurisdiction

issue and violated Equal Protection Clauses by committing Invidious Discrimination against Mr. Lacayo and violated the Due Process, Procedural and Substantive Due Process, under the Louisiana and United States Constitutional Rights of every American citizen of The United States of America!

However, even though the Twenty-Second Judicial District Court has provided information that on the interregnums effective date of <u>January 1, 2009,</u> adopted a new felony allotment system with the effect that of Judge Childress Courtroom felony cases were allotted. Petitioner's case was assigned to Division "G" Judge William J. Crain. Yet, the only defense the Trial Court could come up with was that the adoption of the New Felony allotment system in the TWENTY-SECOND JUDICIAL DISTRICT, whereby Petitioner sought in his first Motion to Recuse was effectively granted. Therefore, any claims related to Judge Dimiceli's action are of no merit. When in fact the recusal of the Judge Raymond S. Childress is irrelevant to the matter at hand, due to the fact of the **22ND JUDICIAL DISTRICT COURT'S CORPUS DELICITI (THE BODY OF THE CRIME).**

The Petitioner has divulged numerous other issues within the First claim of Judge Dimiceli's failure to advise him of the dangers of self-representation at the Recusal Hearing to Recuse Judge Childress. For example,  **<u>U.S. vs. PROCTOR</u>**, 166 F.3d. 396, 404 (1st Cir. 1996)(Judge's comment that it was "Too Late" in response to Pro-Se, defendant expressed desire for a lawyer to argue the motion was a violation of defendant's Right to an Assistance of Counsel, Not Amendable to Plain Error Review.)

It has become obvious "<u>Confession of Judgment</u>" when the Judge, <u>Elaine W. Dimiceli</u>, stated it on the verbatim record in her own voluntary confession of the unlawful movement of the Recusal Motion Hearing within her own courtroom and a knowledge that a certain result will

follow from certain action means awareness that the result is practically certain to occur. Since assessment of culpability often depends upon what the people involved knew would have failed under the Subjective Test. If the Judge claims to have not known or denied any awareness of the fact is ludicrous because of the Objective Test, does not preclude the awareness of a fact gained from "direct observation" or "experience since she had an obligation to a legal requirement that one performs" or "refrain from performing some act," or "the act that one is required to perform," as distinguished from a belief based upon what others have said or upon a less-than-certain chain of reasoning from other information due to the fact it's unquestionable that Mr. Lacayo mentioned on the verbatim recorded record on the July 23, 2008 hearing of the supposed date of July 22, 2008, also everyone will learn that the Court Reporter stated the initial date was for yesterday's date of July 22, 2008 that the Court Reporter stated on July 23, 2008 Hearing and of the Trial Court subpoenaed the defense attorney on that date of July 22, 2008 but never mentioned that he was subpoenaed on the Illegal Hearing date of July 23, 2008, and to exacerbate matters the Prosecutor, Kenneth Dohre, stated … "I was in the hallway, not on this case, and I didn't realize it was even said (Yesterday) until Mr. Drealing to me afterwards, but I did see Mr. DeSalvo, and I don't know whether, I don't think, the court was in "session" at the time I don't know-actually, I think I was, on the second floor, so (it) couldn't have been looking into this courtroom," in violation of La. C. Cr. P. Art. 707-715.

As everyone can foresee above on  the last statement either it is a clerical error or Mr. Kenneth Dohre used attorney tactics by stating "so (it) couldn't have been looking into this courtroom" instead of saying "I" for "it," and there is some type of conspiracy with the Trial Court that Mr. Dohre has now committed willful neglect and neglect of duty by violating R.I.C.O. act and now becomes liable under the criminal, civil, second, strict, joint and several

liabilities or the liability without fault by either failure to be aware of the unabridged illegality especially when denying peeking into the courtroom on July 22, 2008 or DELIBERATELY SABOTAGING AS AN ACCOMPLICE IS NORMALLY EQUAL IN CULPABILITY TO THE PERSON WHO DIRECTLY COMMITS THE CRIME YET ASSISTED OR ATTEMPTED TO ASSIST IN ITS PLANNING OR COMMISSION OR IN SOME SITUATIONS, SIMPLY FAILS TO MAKE AN ATTEMPT TO PREVENT IT BY PARTICIPATING IN THESE ILLEGAL ACTS AGAINST MR. LACAYO, AND **THE 22ND JDC DISTRICT ATTORNEY**, **WALTER P. REED**, FOR RECKLESSLY AND WANTONLY VICARIOUS LIABILITY AS A RESULT COMMITTED COMPARATIVE/WILLFUL/GROSS/CRIMINAL NEGLIGENCE EITHER WAY PERIOD!

However, Judge Elaine DiMiceli, ought to have had knowledge of the Louisiana State laws as she frustratingly and willfully neglected that the law attributes to a person regardless of whether that person has "Actual Knowledge of the Matter," usually because of either implied in facts and implied in law, the circumstances are such that a failure to know a fact, is regarded as "Inexcusable." For example, an individual who was personally served with a court order but failed to read it, would be said to have Constructive Knowledge of its contents despite the fact of Actual Knowledge and to reinforce the fact in a relationship of principal and agent, employer and employee or the like, through the Response from the Superior, Superior's Constructive Knowledge of fact of which the subordinate was made aware in the course of the subordinate's duties under scope of authority. THE CLERK OF COURT, MS. MALISE PRIETO, and JUDGE ELAINE W. DIMICELI are completely responsible and liable under criminal, civil, strict, joint, several, primary and vicarious liability through scope of employment and scope of authority for the subordinate's duties for violating actual, expressed, implied, and apparent authority and

became willful neglect and neglect of duty and comparative / willful / gross / criminal negligence because the clerk of courts, MS. MALISE PRIETO manages or assigns every case on the docket to JUDGE ELAINE DIMICELI'S and then the case has to be presented in her courtroom to be "denied" or "granted" and also delegated to the subordinate's duties before moving the hearing to another date without violating Due Process, Procedure and Substantive Due Process which has now unequivocally proven unlawfulness of the violation of "Actual, Personal, Constructive, Imputed knowledge" yet becomes identical in scienter, "knowingly," guilty knowledge due to awareness before, during and after of the underhanded movement of the Illegal Recusal Motion Hearing from July 22, 2008 to July 23, 2008. Now, gives Mr. Lacayo the implied right of action under Res Ipsa Loquitur, "the situation speaks for itself," and with (Corpus Delicti) "The Body of the Crime," with sinister Actus Reus "guilty act" and Implicit Mens Rea "guilty mind." See also **U.S. vs. AYALA**, 289 F.3d. 16, 27 (1st Cir. 2002)(Whether "The facts asserted, provided what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the Judge's impartiality")(quoting in *Re Boston's Children's First*, 244 F.3d. 164, 167 (1st Cir. 2001).

Therefore, notice that Honorable Judge Elaine W. DiMiceli, stated in the verbatim record that, "He Didn't Come Yesterday" the Judge, DiMiceli, admitted on her own acknowledgment that she is aware of the Counsel, Mr. DeSalvo, did NOT show up at the previous date of the non-continuance-hearing of July 22, 2008 and she also admitted by her own admission that she was aware of the hearing appointed on the date of the Illegal Hearing, July 23, 2008, issues of the Illegal Procedural Violation of the Louisiana Code of *Criminal Procedure Article 707-715*, that caused the Court to divested themselves the right to prosecutor Mr. Lacayo because the Court **LACKED   SUBJECT   MATTER   AND   PERSONAL   JURISDICTION   WHEN**

**COMMITTING THE CRIMES**, that supported the evidence of conspiracy crimes as a result violated the rights to have counsel assist Mr. Lacayo and be present during the Recusal Motion Hearing of <u>July 23, 2008,</u> and especially a unlawfully Non-Continuance-Hearing on <u>July 22, 2008</u>. Then the Petitioner was subject to self representation without his eye being **NOT WIDE OPEN** on <u>July 23, 2008</u> hearing. In additional to prosecutorial egregious misconduct when Mr. Dohre had involved himself within the **"HIGH CRIME"**, with Mr. Lacayo attorney Frank G. DeSalvo and also violated the attorney and client privilege through breaking the confidentiality with his client to the state and ceded and equivocated in a continually providing improper representation as failing to file a **"REQUIRED"** written **MOTION TO QUASH INDICTMENT** due to the Constitutional Rights violation of the **UNABRIDGED ILLEGALITY** of the date and time period movement for the sole purpose of denying Mr. Lacayo's right to Assistance of Counsel that sabotage Mr. Lacayo case and attorney Frank G. DeSalvo intentionally somewhat drawback his own argument by giving an enervated weak and insufficient defense to his client's **MOTION TO CHANGE VENUE** and his own request for the Court to **"DISMISS THE CHARGED"** based upon the violation of Louisiana Constitutional Laws and let's not forget the **"ILLEGAL ACTS"** committed against Mr. Lacayo case through the Judge Elaine W. Dimiceli, **NON-CONTINUANCE HEARING** as required by **La.C.Cr.P. Art. 707-715,** as a result committed a **"HIGH CRIME"** by violating the Codified Laws of the State of Louisiana, Obstruction of Justice, and Denial of Proper Access to Court and especially Malfeasance in Office when being aware of the **HIGH CRIME** within the Judge's own personal Courtroom. The Judge William J. Crain also participated by providing improper judgment to **THE CHANGE OF VENUE** and most significantly the wrongful denial verdict of the **"ORAL" QUASH INDICTMENT** petition from Mr. DeSalvo that ought to have

immediately release Mr. Ghazir G. Lacayo from the custody of ST. SLAMMANY PARISH JAIL.

The Petitioner has provided overwhelmingly with indubitable real evidence beyond any reasonable doubt of the **"ILLEGAL ACTS"** committed within Mr. Lacayo first claim, and that his hired attorney DeSalvo has conspired with the Co-Conspirators Outrageous, Overt Illegal Conduct with the <u>Judge Elaine W. Dimiceli</u>, the <u>Prosecutor Ken Dora</u>, and the <u>Clerk of Court</u> <u>Malise Prieto</u>, so as to violate the rights that caused malicious injury to Mr. Lacayo from Counsel DeSalvo's aiding and abetting systematically the Organize Shenanigan when he unceasingly deprived Mr. Lacayo's Constitutional Rights to a " **FAIR AND IMPARTIAL PROCEEDINGS"** by allowing the subterfuge of **ILLEGAL ACTS,** and most importantly the Manifest **EQUAL PROTECTION RIGHTS VIOLATION** through Due Process, Procedural, and substantive Discrimination so it's preposterous for the Court to state that the relief Petitioner sought for in his First Motion to Recuse was effectively grant and that any of the claims related to Judge Dimiceli's action are of no merit is a blatantly upmost falsehood period!

**"Right of Accused to Assistance of Counsel Includes**

Right of accused to assistance of counsel includes right to assistance of counsel from time of arraignment until beginning of trial for purpose of consultation, investigation, and preparation for trial **(Code Ala.1923, § 5567;  Const.Ala.1901, § 6)**, 53 S.Ct. 55, 287 U.S. 45, **<u>Powell v.</u>** **<u>State of Ala., (U.S. Ala. 1932)</u>**.

United States Supreme Court has held in, 95 S.Ct. 2525, 422 U.S. 806, **<u>Faretta v.</u>** **<u>California</u>**, (U.S. Cal. 1975), and The Sixth Amendment includes a compact statement of the rights necessary to a full defense:

'In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have

compulsory process for obtaining witnesses in his favor, and <u>"to have the Assistance of Counsel for his defense.</u>"

Because these rights are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States.  The rights to notice, confrontation, and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice--through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, "and the orderly introduction of evidence".  In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it.  See **California v. Green**, 399 U.S. 149, 176, 90 S.Ct. 1930, 1944, 26 L.Ed.2d 489 (Harlan, J., concurring).

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.  It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'  Although not stated in the Amendment in so many words, the right to self-representation--to make one's own defense personally--is thus necessarily implied by the structure of the Amendment.  The right to defend [422 U.S. 820] is given directly to the accused; for it is he who suffers the consequences if the defense fails.

Furthermore, although a defendant may waive his Sixth Amendment right to the assistance of counsel at a critical stage and proceed pro se, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' "**Faretta v. California**, 422 U.S.

806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citation omitted).  A defendant who wishes to proceed in this manner must clearly and unequivocally assert his right to self-representation. The court must conduct a hearing to ensure that the defendant is fully aware of the dangers and disadvantages of proceeding without counsel.  See **Raulerson v. Wainwright**, 732 F.2d 803, 808 (11th Cir.1984)., **United States Court of Appeals, Eleventh Circuit, Darrial M. HALL, Petitioner-Petitioner, Michael W. MOORE, Respondent-Appellee, No. 98-3558, June 6, 2001.**

During the trial proceedings of the Petitioner, the Honorable Judge Elaine W. Dimiceli failed to advice the Petitioner of the dangerous and disadvantages of self-representation, so that the decision was made with Petitioner's "Eyes Wide Open". Honorable Judge Elaine W. Dimiceli denied the Petitioner the right to have his counsel present during the Motion hearing dated July 23, 2008.  The Honorable Judge Elaine W. Dimiceli only stated as part of the record that counsel was not going to adopt the Motion filed by the Petitioner and Petitioner could represent the Motion himself, and therefore the Petitioner's constitutional rights were then violated or Petitioner had retained a paid attorney and this attorney was of record and due to errors made by the trial court and the Honorable Judge Elaine W. Dimiceli, Petitioner was subjected to self-representation without his eyes being wide open.  The Honorable Judge Elaine W. Dimiceli, made statements in open court that clearly will prove the violation of the Petitioner's constitutional rights in that the Honorable Judge Elaine W. Dimiceli moved the hearing date without informing Petitioner's Counsel that the hearing had been rescheduled. Counsel for the Petitioner, Mr. DeSalvo had not known of the time of the hearing being moved and the Honorable Judge Elaine W. Dimiceli should have continued this hearing and instead forced the Petitioner into a self-representation mode that violated the Petitioner's constitutional

rights and subject the Petitioner to a grave impediment of representing himself for which the Petitioner could not perform on his own.

**The Constitution of the United States**:

**Amendment VI**. Jury trials for crimes, and procedural rights

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, "and to have the Assistance of Counsel for his defense".

..And the **Louisiana Constitution:**
**§ 13. Rights of the Accused**
**Section 13.**   When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, "his right against self incrimination, his right to the assistance of counsel" and, if indigent, his right to court appointed counsel.   In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. "At each stage of the proceedings, every person is entitled to assistance of counsel of his choice", or appointed by the court if he is indigent and charged with an offense punishable by imprisonment.  The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.

…guarantees that every defendant shall be afforded the right to counsel and for the Honorable Court to hold a hearing without continuing to allow counsel to be present is a clear violation of these constitutional rights and the case should be reversed and remanded and/or an evidentiary hearing ordered for the determination of the record to be presented herein and for the

Honorable Judge Elaine W. Dimiceli to be subpoena to be present for the reason for not allowing Counsel, Mr. DeSalvo to be notified and to answer why the hearing moved without proper procedures?

Sixth Amendment violations that pervade entire criminal prosecution fall within category of constitutional violations that cast so much doubt on fairness of trial process that, as matter of law, they can never be considered harmless. **U.S.C.A. Const. Amend. 6**, 108 S.Ct. 1792, 486 U.S. 249, **Satterwhite v. Texas**, (U.S. Tex. 1988)

Before accepting defendant's waiver of Sixth Amendment right to counsel, trial judge must explicitly make the defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that defendant knows what he is doing and his choice is made with eyes open. U.S.C.A. Const. Amend. 6, 166 F.3d 396, U.S. v. Proctor, (C.A.1 (Me.) 1999)

The prosecutor, Mr. Dohre, readily admitted that by his own admission that Mr. Lacayo's Private Counsel, Frank DeSalvo was at the 22nd Judicial District Court on July 22, 2008, discussing issues concerning the recusal motion that was filed herein. Mr. Dohre also saw and spoke with Mr. DeSalvo prior to the date of July 23, 2008 and could have notified Mr. DeSalvo of the change in the Hearing. Mr. Dohre went on to state on, (pg. 114, 4-27. TT) that he could not remember anything that occurred the previous date and time. If something occurs the previous day we are well aware that one could remember what had occurred the previous date and time. Mr. Dohre violated the Petitioner's Constitutional Rights by failing to have or allow counsel for the Petitioner to be made present during the hearing that was held on July 23, 2008. Mr. Dohre stated in open court that he didn't know if Mr. DeSalvo knew of the time change twice and then to also made statements more than once again that Mr. Dohre confessed that Mr.

DeSalvo was aware of the time change.  The prosecutor Mr. Dohre has clearly committed acts that constitute egregious misconduct.

Therefore, Mr. Lacayo contends the fact his hired attorney was not present due to:

g.   The Docket Time being changed

h.   never informed of that change constitutes the Court's prejudice and bias against Mr. Lacayo, and

i.   unfair Non-Hearing on July 22, 2008, and also without his private counsel or Mr. Lacayo present on the Non-Hearing of July 22, 2008

j.   and the illegal arranging of the hearing without proper procedure to reschedule for a continuance

k.   and changing of the time two dockets earlier on the date of July 23, 2008

**l.   WHICH CAUSED A VIOLATION OF THE ATTORNEY AND CLIENT PRIVILEGE BY COMMITTING A FATAL HIGH CRIME WITH THE COURT, THE CLERK OF COURTS AND THE PROSECUTOR?**

Mr. Lacayo was never given the fundamental disadvantages to the self-representation clause of representing himself.  The prosecutor and/or the court intentionally moved the hearing from one date to the other to have Mr. Lacayo forced to represent the Motion he had presented during the hearing.  Mr. Lacayo is not an attorney of law or never has gone before any criminal law classes and has not had any training in this field and was never informed by the prosecutor that if he represented himself he would be facing the possibility of losing a lot of constitutional rights that could be afforded to him if the proper objections and motion to move are made during these hearings.  Instead, the trial court allowed this hearing to be moved by the prosecutor and by the prosecutor readily admitting talking to Mr. DeSalvo the day before in that he could have then informed Mr. DeSalvo of the hearing being changed violated the Petitioner's constitutional rights and subject Mr. Lacayo to represent himself without being informed of the right to self-incrimination.

The Clerk even admits in open court on (pg. 114; 29-30, TT) that Mr. DeSalvo was notified of the hearing date that had been rescheduled several time by the Honorable Judge Childress and the Clerk states it was for July 22, 2008 and not for July 23, 2008. Therefore the hearing that was held on July 23, 2008 was a clear violation of Mr. Lacayo's constitutional rights to the **VI and XIV Amendment of the United States Constitution and the Louisiana Constitution of 1974, Article 1 Section 13, and 16**, whereas the 22 Judicial District Court and/or the prosecutor committed prosecutorial misconduct in the Mr. Lacayo's case. The only way Mr. DeSalvo showed up on the 23rd of July was the fact Mr. DeSalvo had extra sensory perception and just happened to be in the courthouse. The Honorable Judge Elaine W. Dimiceli never appointed Mr. Lacayo counsel for the hearing, once Mr. Lacayo appeared before the Honorable Court for the hearing, the Court should have at that point and time continued the hearing until counsel, Mr. DeSalvo could be notified and brought forth to the court or appointed counsel to stand in on the pro-se motion. Even though the motion filed herein was a pro-se motion Mr. Lacayo is still guaranteed the right to counsel under the **VI, XIV, Amendment to the Untied States Constitution** and the Honorable Court violated these rights by allowing the prosecutor to proceed and the hearing to be held and to not fully advise Mr. Lacayo of the dangers of self-representation.

The Trial Court deliberately moved the hearing on the Motion to Recuse and also Mr. Dohre deliberately informs the Trial Court he knew nothing of informing Mr. DeSalvo, or could not recall much when speaking with him the previous day and made contradictory statements and completely showed up at the **ILLEGAL** hearing. The Prosecutor Mr. Dohre committed prosecutorial misconduct against the Petitioner, Mr. Lacayo.

Prosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute egregious misconduct. **U.S.C.A. Const. Amend. 14**, 322 F.3d 171, **Miranda v. Bennett,** (C.A.2 (N.Y.) 2003), **Donnelly v. DeChristoforo**, 416 U.S. 637, 647-48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

Prosecutorial misconduct is not, in itself, sufficient to constitute constitutional error, even when that conduct is alleged to be both deliberate and pervasive; prosecutorial misconduct only becomes constitutional error when its impact distracts trier of fact, and thus raises doubts as to fairness of trial, 307 F.3d 36, **Marshall v. Hendricks**, (C.A.3 (N.J.) 2002), even though there was no juries involved within the Recusal hearing. IT HAD BECOME A TOTALLY UNLAWFUL ACTS COMMITTED AND CONSPIRACY CRIME AGAINST MR. LACAYO'S CASE, WHICH IS UNACCEPTABLE CONDUCT OF ANY JUDICIAL PRACTICE.

The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor; the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused. **U.S.C.A. Const. Amend. 14**, 110 So.3d 1029, 2011-2799 La. 1/29/13, **State v. Ortiz**, (La. 2013).

Moreover, the Trial Court lacked subject matter and personal jurisdiction over the case when the court moved the hearing illegally and therefore moving the hearing caused the court without jurisdiction and violated the Petitioner's constitutional rights to a fair an impartial trial were violated.

Subject matter jurisdiction is a threshold issue as a judgment rendered by a court that has no jurisdiction over the subject matter of the action or proceeding is void. **LSA-C.C.P. art. 3**.

2013 WL 1952195, 2012-1636 La.App. 1 Cir. 5/13/13, **Iberia Bank v. Live Oak Circle Development, L.L.C.**, (La.App. 1 Cir. 2013)

In reviewing a claim of prosecutorial misconduct, Court of Appeals reviews the claim to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. **U.S.C.A. Const. Amend. 5**.

Therefore, due to the prosecutorial misconduct by Mr. Dohre, and the lack of subject matter jurisdiction the Petitioner was prejudiced by the deeds of The Clerk of Court, the Trial Court or the private attorney, Mr. DeSalvo, by the participation and knowingly knew of the illegal acts of moving of the hearing unlawfully. Now, this case warrants a Federal Criminal Investigation and an evidentiary hearing in this case for the facts presented herein.

**CLAIM #2**

**CONVICTION AND SENTENCE OBTAINED IN VIOLATION OF THE UNITED STATES CONSTITUTION AMENDMENT V, VI, XIV, AND THE LOUISIANA CONSTITUTION OF 1974 ARTICLE 1 §13, 15, §16. "DOUBLE JEOPARDY"**

The trial court violated the Petitioner's constitutional rights under the V, VI, XIV amendment to the United States Constitution and the La. Constitution of 1974, Article 1, Section 13, 15, and §16 by inducing the Motion for Mistrial by counsel to be entered and for a move to enter the mistrial without allowing the Petitioner the right to retain counsel during trial proceeding. Mr. Lacayo, argued and tried at several points during trial to have his attorney, Mr. Farmer and Mr. Daigle removed from his case and to have another counsel appointed, Main Part of Appeal Records: (93, pg 23; 5-32: 94; pg. 24; 1-32: 95; pg. 25; 1-32: 96; pg. 26; 1-5: 96; pg.

26; 6-32: <u>97</u>; pg. 21; 1-12). **Attention:** Judge Raymond Childress issued the protective order and he was the 1st Judge and partially into the second trial.

The State mentioned, "The Honorable Judge Raymond S. Childress moved the Trial Court for and declared a mistrial; therefore, the mistrial was based off the fact that Mr. Lacayo had clear intentions of wanting to exercise his constitutional right by firing his attorney(s) the self-hired attorney(s)."

(1) Yet, the trial court went further through the first part of the proceedings    by informing Mr. Lacayo to basically go with his counsel present.

(2) The Trial Court also never allowed Mr. Lacayo the opportunity to fully have appointed and/or hire another attorney for there was clear conflict with the attorney that was hired to advise Mr. Lacayo which direction to go on the mistrial issues.

(3) DOUBLE JEOPARDY ATTACHED IN THIS CASE WHEN THE TRIAL COURT ALLOWED A MISTRIAL TO BE DECLARED BASED OFF THE FACT OF THE COERCIVENESS OF THE TRIAL COURT AND THE FACT THAT ESTRANGE COUNSEL MOVED FOR THE MISTRIAL AND THIS WAS THE ONLY FACT THAT INITIATED THE MISTRIAL TO BEGIN WITH.

However, if a mistrial is brought about with the consent of the defendant, double jeopardy bars re-prosecution when the circumstances promoting the mistrial were attributable to the prosecutorial or Judicial overreaching or through collaboration of Illegal Conspiracy, Outrageous, Overt, Illegal Misconduct by the Trial Court, The Prosecutor, and the Private Attorney(s).

As when private attorney failed to assist his client to either agree or disagree to the mistrial, shows a clear violation to the right to counsel of the right to effective assistance of

counsel due to the double jeopardy issue. Mr. Lacayo was left without assistance when the mistrial was presented and not knowing what his other option was to the issues at hand or if he was to agree or disagree to his best interest with the court's decision or not. Mr. Lacayo did not consent to the mistrial or was never given legal representation to advise Mr. Lacayo of his rights to order an automatic stay following "Order" of a mistrial under **La. C. Cr. P. Art. 775.1**.

THE INEFFECTIVE ASSISTANCE OF COUNSEL GOES FURTHER TO SHOW THAT COUNSEL(S) FOR THE PETITIONER, MR. MARION FARMER, AND MR. FRED DAIGLE VIOLATED THE PETITIONER'S CONSTITUTIONAL RIGHTS IN THAT IN THE 1ST TRIAL, BOTH ATTORNEYS' FAILED TO GIVE NOTICE OF APPEAL. BY FAILING TO DO SO ABANDON THE PETITIONER'S APPEAL RIGHTS AND VIOLATED THE PETITIONER'S CONSTITUTIONAL RIGHTS, THE RIGHT TO JUDICIAL REVIEW OF HIS TRIAL, AND THE SECOND TRIAL ATTORNEY MR. FRANK G. DESALVO FAILURE TO SUBMIT A MOTION TO QUASH THE INDICTMENT BASED OFF THE DOUBLE JEOPARDY ISSUE.

Without consent being given to the mistrial and the Trial Court moving for a mistrial and Mr. Lacayo's intentions that he was firing his attorney(s) and therefore they move for a mistrial without his consent, double jeopardy attached and therefore Mr. Lacayo could not be prosecuted a second time for the Trial Court error in moving for a mistrial based on the statement made by the attorney(s) and failing to gain consent form the Petitioner.

The Twenty-Second Judicial District Court stated, "As to the Double Jeopardy, La. C. Cr. P. Art. 591, provides that Jeopardy, does not attach where a mistrial had been legally ordered. Petitioner argues that he did not consent to the action by the Trial Court. However, stated in the

31

state rebuttals "It was Petitioner's outbursts in the Jury's presence, which caused his attorney to request the mistrial."

While there is, some verisimilitude to the court rebuttals but the Trial Court failed to state the whole truth of the matter and it still veered and circumvented the main issue that has really caused the mistrial. Thus making a violation of La. C. Cr. P. Art. 511 and 515, and a violation of Due process either way to clarify, Mr. Lacayo did not know after relieving his counsel the second time in open court, "If" it was in his best interest to agree or disagree to the mistrial due to the fact the Trial Court withholding advice or proper legal counseling through never receiving a "NEUTRAL APPOINTED COUNSEL OR INDEPENDENT/STANDBY COUNSEL," or that Mr. Lacayo waived any such right when Judge Childress failed to offer assistance through court-appointed counsel to exacerbate matters, both attorneys withheld themselves even though Mr. Lacayo's private counsel Mr. Marion Farmer stated falsely that Attorney Fred Daigle could assist and because of the trust factor became a conflict of interest for Mr. Lacayo, that is he would not and also withholding of Mr. Lacayo's constitutional rights to assistance of counsel and right to counsel of choice and right to effective assistance of counsel and fair and impartial first trial.

Next, the Trial Court states that Judge Childress again excused the Jury and advised Petitioner of his choices; continue with Farmer's representation or represent himself. Petitioner rejected both options and the Trial Court granted Farmer's request for a mistrial due to the possible effect on the jury as a result of Petitioner's outbursts and removal from the courtroom. The mistrial was legally ordered and therefore, Petitioner's second claim is without merit. After the mistrial, Petitioner retained Frank Desalvo.

AS SEEN ABOVE THE TRIAL COURT HAS TOTALLY ADMITTED THAT THE "ONLY CHOICES MR. LACAYO HAD WAS TO CONTINUE WITH THE CONFLICT OF INTEREST ATTORNEY MR. MARION FARMER AS LEGAL REPRESENTATION OR FOR MR. LACAYO TO REPRESENT HIMSELF AS LEGAL REPRESENTATION.

Mr. Lacayo will show through demonstrating that the "First" Trial Court was in error for accepting the attorney's (Farmer) stipulation of a mistrial, whereas Mr. Farmer made a decision without his client's awareness or willy-nilly decision too. Thus the Private Attorney was already terminated by his client. Mr. Lacayo, the second time in "Open Court."

In Addition, on the other hand when the court had not released Attorney Farmer at that precise moment, by allowing Mr. Farmer to stipulate on his own behalf and "Not" on his client's, Mr. Ghazir G. Lacayo's, request, has clearly demonstrated that the Trial Court still allowed Mr. Farmer to represent Mr. Lacayo due to the court "Not Only" entertaining Private Counsel's, Farmer's, stipulation, nevertheless, the court granted his stipulation of the mistrial, as a result, INSTEAD OF PERMITTING THE PROSECUTOR, MR. JACK HOFFSTADT, TO MOVE FOR A MISTRIAL "FIRST" AND THEN COUNTER ATTACK AND/OR OBJECT ON THE GROUNDS OF DOUBLE JEOPARDY ISSUES. AS TO FURTHER STATE THAT THE COURT IS TO DISMISS THE CHARGE THAT WAS CURRENTLY ON TRIAL, BASED UPON THE VIOLATION OF THE FUNDAMENTAL CONSTITUTIONAL "RIGHT TO THE COUNSEL OF CHOICE" AND MOST IMPORTANTLY THE "RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL" THAT HAD ALREADY BEEN VIOLATED THE "FIRST" TIME IT WAS REQUESTED BY MR. GHAZIR G. LACAYO. Plus, the other Constitutional violation of withholding a "fair" and "impartial" trial was jeopardized too with a partial and bias Judge, Prosecutor and Private Attorney, Mr. Marion B. Farmer, OR HIS ONLY OTHER

OPTION WAS TO MOVE ON THE BEHALF OF HIS CLIENT BECAUSE OF BEING "FIRED" IN OPEN COURT, THE (SECOND) TIME, OF HIS SERVICES. IN FACT, MR. LACAYO'S ATTORNEY, MARION B. FARMER, WAS TO PETITION THE COURT TO MOVE ON HIS CLIENT'S STIPULATION TO TERMINATE HIMSELF AND THAT THE JUDGE WOULD ALLOW MR. FARMER TO BE RELEASED OF HIS OWN OBLIGATION TO SATISFY MR. LACAYO'S STIPULATION TO FIRE HIS OWN ATTORNEY ON THESE GROUNDS WOULD HAVE BEEN THE APPROPRIATE DEFENSE. The moment Judge Childress denied Mr. Lacayo's right to "Counsel of Choice" or "Effective Assistance of Counsel" the "first" time when requested by Mr. Lacayo, Judge Childress was no longer an impartial Judge and Mr. Farmer assumed the role of his client's adversary and also became involved deeper into the pit of the corruption of the "A.K.A. ST. SLAMMANY" Judicial System's Illegal Practices!

See also; **HAMPSTER vs. OHIO**, 128 F. 3d. 322, 327-28 (6th Cir. 1967) (abuse of discretion when Judge declared a mistrial because simple corrective instruction would have sufficiently protected against juror bias.) 96; 26-28, 97; 28-32 and 98; 1-7

Moreover, it was Judge, Raymond S. Childress who had "Granted" a mistrial upon the counsel's request, not the stipulation of Mr. Lacayo's as stated falsely by the Judge, Childress, on the verbatim records; 102, 2-17 Pg. 102

(**Attention**: Honorable Judge Raymond S. Childress issued the Protective Order)

(2) **THE COURT**:
(3) All right, here's what the court is going to do.
(4) "Upon the Defendant's Motion, I am granting the mistrial"
(5) because I think that his actions outside, I mean in the
(6) presence in the courtroom in the presence of the jury
(7) have been very prejudicial certainly, if he does not

(8) <u>want Mr. Farmer to represent him, I am not going to</u>

(9) <u>insist that he be represented by Mr. Farmer. So, I'm</u>

(10) <u>"granting the defendant's request for a mistrial" and the</u>

(11) <u>offsets of law that flow from the defendant's request</u>

(12) <u>and "the granting of the mistrial will be as they are."</u>

(13) But you are going to need to advise this court, of

(14) counsel within two weeks from today's date, otherwise

(15) the court will appoint the indigent defender to

(16) represent you and we will proceed to trial as soon as

(17) possible.

Whereby the defendant had <u>not</u> requested a mistrial three (3) distinctive times as proven

on the verbatim records due to Mr. Lacayo not knowing what a mistrial was: 100; 21-23, and

101; 9-10 and 101; 29-32 and pg. 102; 1 pg. 100

(21) **THE DEFENDANT:**

(22) Have to be notified what is a mistrial? I don't

(23) know the law, Your Honor.

Pg. 101

(9) **THE DEFENDANT:**

(10) I don't understand that, Your Honor.

Pg. 101

(29) **THE DEFENDANT:**

(30) <u>"If I had another attorney, I could make a</u>

(31) <u>decision."</u> I don't know how to make a decision on laws

(32) I have no understanding of. "<u>I don't know if I have any</u>

Pg. 102

(1) <u>other options."</u> I don't know anything, Your Honor.

Herein, before all further statements made by or stipulated through counsel to move for a

mistrial ought to have been made moot. Even "If" the Trial Court believed there was a

probability that Mr. Lacayo agreed to the mistrial the Petitioner may raise double jeopardy issue to the second trial, either way under;

See; **OR. vs. KENNEDY,** 456 U. S. 661, 670 (1982) (Where Government conduct intended to "goad" defendant in to moving for mistrial, defendant may raise double jeopardy, to the second trial.)

Thus, the prejudiced action of the Trial Court for declaring a mistrial when it was not "Manifest Necessity" and it requires <u>Automatic Reversal</u> of Mr. Lacayo's Mistrial and now 2nd Trial <u>Conviction.</u>

Indeed, the general improprieties occurring in State proceedings are cognizable when it creates a fundamental unfairness that violated Mr. Lacayo's Fourteenth United States Amendment to Due Process and Louisiana Constitution Art. 1 Section 16, Right to a fair trial and proper assistance of counsel and counsel of choice. Thus, the court recognized that in an unusual case, a deliberate and especially egregious trial error...might so infect the integrity of the proceedings as to <u>Warrant Habeas Relief.</u>

<u>Moreover,</u> the Judge had hastily declared a "Mistrial" not recognizing the "Double Jeopardy" effect the ruling imposed, as well as given a prejudiced effect of a mistrial on the defendant (Mr. Lacayo) who preferred to proceed with other option; 101: 32 and 102; Mr. Lacayo, stated **ABOVE,** especially since the jurors were impaneled and sworn; 84; 10-32 and 85; the Court stated below;

Pg. 84

(10) **THE COURT:**

(11) "<u>would you swear the jurors in, please, Ma'am</u>"

(12) **THE COURT:**

(13) Okay, I will begin the questioning and I will

36

(14) state off by answering the questions I'm about to

(15) present for each of you. My name is Ray Childress, I'm

(16) from the Folsom area, I am, as you may have already

(17) guessed, my occupation is I'm a Judge, I practice law

(18) obviously before I became a Judge. I am married and my

(19) wife and I have the yours, mine and ours configuration

(20) of five kids and three grandkids. And my wife is a

(21) homemaker and I've resided in St. Tammany Parish since

(22) 1981, but I was born and raised in Bogalusa and

(23) Washington Parish, so I'm basically from this area my

(24) entire life.

(25) So that's the hard question that I will be posing

(26) to each of you here at the beginning. All right?

**(27) (Voire Dire Examination of Panel one Jurors**

**(28) regarding personal identification information.)**

(29) **THE COURT**:

(30) "Now, that wasn't so hard was it? Okay, good." Now

(31) at this time I'd ask the attorneys to introduce

(32) themselves to you and "present to you a list of

Pg. 85

(1) prospective witnesses."

See; **STATE vs. PACHECO**, 434, F. 3d. 106, 116 (1st Cir. 2006) (Jeopardy attached when jury

impanel and sworn.)

See Also; **U.S. vs. PADDLE,** 105, F. 3d. 813, 816 (2nd Cir. 1997) (Jeopardy attached when jury

impaneled and sworn though case ended in mistrial after parties agree to plea bargain.)

**CRIST vs. BRETZ**, 437, U. S., 28, 29 (1978) **DOWNUM vs. U. S.,** 372, U. S., 734, 737-38

(1963) (Jeopardy attached when jury impaneled and sworn even though jury discharged before

trial.)

The 22nd Judicial District Court granted a mistrial; 102; 2-17, thus, the ruling of a mistrial, a fundamental error, restricting Mr. Lacayo of fundamental fairness of Due Process of law as applied to Judicial Procedure. Therefore, "retrial is now barred" due to trial court had abused its discretion in granting a mistrial when "manifest necessity" does not apply and defendant's action had not constituted a valid waiver of his double jeopardy claim.

See; **UNITED STATES vs. DIXON,** 913, F. 3d. 1395 (8th Cir. 1990)

**UNITED STATES vs. DINITZ**, 424, U. S., S. Ct. 47, L. 2d. 267, (1976)

**UNITED STATES vs. JOHN,** 400, U. S. 470, 91, S. Ct. 547 (1971)

However, even "If" a mistrial was brought about with the consent or action of the defendant, double jeopardy bars re-prosecution when the circumstances promoting the Mistrial were "Attributable" to the Prosecutorial or Judicial overreaching or through a collaboration of Illegal Conspiracy of Outrageous, Overt Illegal Misconduct by The Trial Court, The Prosecutor and The Private Attorneys. Further, the State Circuit Court has extended the exception for double jeopardy challenge will be rejected in the "absence of manifest necessity" unless the defendant consents. Consent may be implied in some circumstances as of the case laws below:

See; **U. S. vs. DIPETRO,** 936, F. 2d. 6, 11, (1st Cir. 1991) (Consent implied because defendant failed to object to Sua Sponte declaration of mistrial despite ample opportunity.)

**CAMDEN vs. CIRCUIT COURT,** 892, F. 2d. 610, 616 (7th Cir. 1989) (Consent implied because defendant failed to object Sua Sponte declaration of mistrial despite ample opportunity.)

**U. S. vs. HERANDEZ-GUARDADO,** 228, F. 3d. 1017, 1030 (9th Cir. 2000) (consent implied because defendant failed to object to court's declaration of mistrial.)

Moreover, see under **OLANO,** 507, U. S. at 732-33

See e.g., **U. S. vs. MORGAN**, 384, F. 3d. 1, 8 (1st Cir. 2004) (under plain error review, error will be corrected only if clear or obvious.)

*So, when the Private Attorney failed to assist his client to either agree or disagree to the mistrial, shows violation to the right to counsel or right to effective assistance of counsel due to the double jeopardy issue and THE FAILURE TO ISSUE MR. LACAYO WITH A PUBLIC INDIGENT ATTORNEY OR INDEPENDENT/ STANDBY COUNSEL DUE TO THE TREACHEROUS ACTS AND BREAKDOWN OF THE COMMUNICATION CAUSING A CONFLICT OF INTEREST. His Private Attorneys, both Mr. Marion B. Farmer or Mr. Fred Daigle, failed to assist his client with any additional disputes was left to those who were perpetrating to make believe they were not using improper pressure. Yet, Mr. Lacayo had to depend on himself to the best of his ability, consequently, was left without any assistance to Mr. Lacayo afterward when the mistrial was presented and not knowing what his "other options" were to the issues at hand or if he was to agree or disagree to his best interest with the court decision or not. So, within these case laws, confirms that Mr. Lacayo did not consent to the forced mistrial.

See; **U. S. vs. COMBS,** 222, F. 3d. 353, 359 (7th Cir. 2000) (Consent Not implied by silence or "ambiguous" statements of defendant when asked to consent to the mistrial following defense counsel misconduct.)

See; **SATTERWHITE vs. TEX.,** U. S. 249, 259 (1988) (Pervasive denial of counsel can never be considered harmless error.)

**BLANKENSHIP vs. JOHNSON,** 118, F., 3d. 312, 318 (5th Cir. 1997) (Conflict of interest affected performance because counsel "took no action" on behalf of defendant.)

Mr. Lacayo previously attempted to adamantly petition the court the first time for a new

counsel. But the state further denied all request as stated on the verbatim records.

Pg. 89

**THE COURT:**

(8) it is pretty late in the game to tell me that. You

Pg. 92

(16) **THE COURT:**

(17) I don't know what else there is for us to discuss


Pg. 93

(7) **THE COURT:**

(8) Well, as far as this court is concerned, it's too

(9) late for that, we've already set the jury in place and

(10) we've already started this trial I'm not in a

(11) position to let you change horses here in the middle of

(12) them. So you need to confer with Mr. Farmer and

(13) discuss this with him. "I'm confident he's going to

(14) give you a vigorous defense in this case to the best of

(15) his abilities, and you know, we're going to have to go

(16) from there"

(17) **THE DEFENDANT:**

(18) If I put this on the record since you're my

(19) attorney now, that's in front of everybody, do I stand

(20) and they can cross-examine me right now?

(21) **THE COURT:**

(22) No, I think you need to confer with Mr. Farmer

(23) without all of us present here, because I'm really

(24) afraid that you're putting yourself in a bad spot

(25) unnecessarily "if there is some issue between you and

(26) Mr. Farmer that the two of y'all need to resolve," we

(27) will all excuse ourselves from this room and you and

(28) your attorney can confer; but as I said, this matter

(29) has been set for trial, it's been the number one case

(30) on this docket since December 18th when we had our

(31) pre-trial. Any of these issues that you might want

(32) to bring up should have been brought up a long time

Pg. 94

(1) Ago. All right?

See; **U. S. vs. GONZALEZ-LOPEZ,** 548, U. S., 140, 147-148 (2006) (Right to choose counsel violated even <u>if erroneously appointed counsel is effective because choice and quality of representation are distinct right.)</u>

See also: **U. S. vs. SANTOS,** 201, F. 3d. 953, 958, (7th Cir. 2000) (Right to counsel violated by arbitrary denial continuance because denial rendered defendant unable to "<u>procure counsel of choice</u>" despite defendant's ability to hire another competent attorney.)

* Thus, making a violation of <u>Art. 514</u>, Due Process either way to clarify, Mr. Lacayo did not know after relieving his counsel the second time in open court "<u>If</u>" it was in his best interest to agree or disagree to the mistrial due to the court withholding advice through never receiving a "<u>NEUTRAL APPOINTED COUNSEL OR INDEPENDENT/STANDBY COUNSEL</u>" or **MR. LACAYO WAIVED ANY SUCH RIGHT FOR JUDGE CHILDRESS FAILED TO OFFER ASSISTANCE THROUGH COURT-APPOINTED COUNSEL** to exacerbate matters, both attorneys withheld themselves even though Mr. Lacayo's Private Counsel. Mr. Farmer, stated falsely that Attorney <u>Fred Daigle</u> could assist, but actually did not because of trust factor became a conflict of interest for Mr. Lacayo and is a denial of Due Process of his Constitutional rights to counsel and a denial of a fair and impartial first trial.

**OLANO** 507, U. S. at 732-33;

See; e.g. **U. S. vs. MORGAN,** Supra,

See; **U. S. vs. SCULL,** 321, F. 3d. 1270, 1276, (10th Cir. 2003) (plain error review,

because outrageous government conduct not raised by defense at trial.)

Furthermore, as was stated on the verbatim records; the Judge,

Childress, once again used machination tactics by falsely stating quote on quote; Pg. 99; 13-27

Pg. 99

(13) **THE COURT:**

(14) All right, let's go on the record. First and

(15) foremost, Mr. Lacayo, I went out of my way to come back

(16) here and speak to you, and give you the opportunity to

(17) speak to the court "and at No Time- you indicate that

(18) you were Not happy with Mr. Farmer." but I let you

(19) confer with him and there was discussion as to your

(20) possible sentence and I explained to you what I would

(21) do.

(22) "At that point you DID NOT indicate to me that you

(23) wanted to discharge Mr. Farmer." I don't understand why

(24) you feel it necessary to wait and to be back in the

(25) presence of the jury in order to do so. I make that

(26) comment. But, I guess I need to question you first; is

(27) it your intention to represent yourself today?

Pg. 99

(28) **THE DEFENDANT:**

(29) No. hire an attorney that I feel will represent

(30) me to the fullest of his ability and Farmer is not

(31) doing it.

However, the Judge, Childress, was indeed being "untruthful" when he deluded by

stating "and at No Time-you indicate that you were Not happy with Mr. Farmer, and at that point

you Did Not indicate to me that you wanted to discharge Mr. Farmer." It seems ludicrous for him

to say that when in fact Mr. Lacayo previously had consistently and relentlessly tried to terminate his Private Attorney, and also to exasperate matters in the beginning of trial, Judge Childress lead the defense attorney Mr. Farmer, identically, just like the Preliminary matters, (pg. 71; 11-15;24-28), the Judge, Childress, effectively slip-shod and manipulated by overtly questioning what direction the Prosecutor, Hoffstadt ought to have handled or how he should prosecute his case by stating on the verbatim records was improper and bias due to the fact it is Not his "job or concern" to determine, whom, when and how the Prosecutor should prosecute. The Judge, Childress, should only act as a "neutral referee or umpire" for he now violated the Cannon Code of Judicial Protocol.

Pg. 77

(31) **THE COURT:**

(32) Noted, bring the jury, please, "speaking of the

Pg. 78

(1) other companion case, I realize it's All misdemeanors

(2) why am I not just trying that at the same time if all

(3) the facts are going to be the same?"

As we can see here it is the District Attorney "under Art. 61" has full power and duties to subject the supervision of the Attorney General as provided of the "article 62," the District Attorney has entire charge and control of every criminal prosecution instituted or pending in his District, and determines whom, when and how he shall prosecute.

Furthermore, when the Trial Court Ordered the mistrial it was inappropriate to have a bias Judge, and especially, not for the reason of The Client's Private Attorney's (Farmer) assessment of the "abrupt" announcement to terminate the services of Mr. Lacayo's private lawyers in open court and especially Not the stipulation of Mr. Lacayo's request, because Mr. Lacayo had not requested or agree nor disagree but gave an ambiguous and equivocal answer as

43

stated on the records to the mistrial, to reiterate it was the Trial Court who had "Granted" a mistrial upon counsel's stipulation once again the court in error for accepting the Attorney's (Farmer) stipulation of a mistrial because counsel was already "terminated."

96; 26-27

Therefore, any further statement made or stipulated by the counsel after getting terminated, the procedures are to be made moot. Pg. 97; 28-33 and 98; 1-7

Pg. 97

(28) **MR. FARMER:**
(29) I understand. I think the court has several
(30) possibilities, if that is what he wants to do to have
(31) Mr. Daigle here to assist him answering questions and
(32) pointing out things to him. "I have serious
Pg. 98
(1) doubts whether the guy is totally mentally insane at
(2) this point. I know we have had lunacies and he was
(3) found competent. I am not certain about that. I feel
(4) I have to move for a mistrial:" and in connection with
(5) the outburst and that is highly prejudicial, had to be
(6) grabbed by one of the bailiffs and taken out of the
(7) courtroom, and "I move for a mistrial."

Furthermore, indeed, the Private Attorney, Marion B. Farmer, had no right to make any pejorative assessment or qualification that his client might be mentally insane! It was inconceivable and incomprehensible to fathom as he stated it on the verbatim records opposing his supposed client, as a result, Attorney Marion B. Farmer stated "I move for a mistrial," had adamantly focused on moving for a mistrial, and blatantly neglected to protect his client's right to the "Appeal Process." Nevertheless, had failed to preserve and uphold any appeal rights within

the 22nd Judicial Courtroom on the behalf of his client, <u>Mr. Ghazir G. Lacayo.</u> Upon the "<u>Condition Precedent</u>" as to the mistrial now has provided to prove Ineffective Assistance of Counsel and also his Private Attorney had further stated; "With the outburst, and that is highly prejudicial, had to be grabbed by one of the bailiff and taken out of the Courtroom," Counsel Farmer continued to discredit his client's competency and reliability. Yet, Mr. Lacayo was left to deal with the repercussions due to the trials of unlawful wrongdoing of the co-conspirators, as according to the pernicious tragedy of their notorious and infamous acts of the informal statue called "<u>Little Rico</u>" henceforth became a total utter fiasco of the Illegal Acts of Malpractice and Fraudulent Misrepresentation. When further notified of his Counsel Farmer's request to the mistrial by the 22nd Judicial District Court, Mr. Lacayo had then stated below of the Counsel Farmer's stipulation to the mistrial.

Pg. 100

(21) **THE DEFENDANT:**

(22) Have to be notified what is a mistrial? I don't

(23) know the law, Your Honor.


Pg. 101

(29) **THE DEFENDANT:**

(30) "<u>If I had another Attorney,</u>" <u>I would make a</u>

(31) <u>decision. I don't know how to make a decision on laws</u>

(32) "<u>I have no understanding of I don't know if I have any</u>

Pg. 102

(1) <u>other options. I don't know anything.</u>" Your Honor

Pg. 103

(20) **THE DEFENDANT:**

(21) I don't know what my legal rights are.

(22) **THE COURT:**

45

(23) well, you're going to have to go hire yourself

(24) another lawyer. Get him out of here.

See; **RAMIREZ-BURGOS vs. U. S.,** 313, F. 3d., 23, 24 (1st Cir. 2002) (If conditions for plain error are met, court may exercise its discretion to correct error not raised at trial.)

See; **U. S. vs. COMB,** 222, F., 353, 359 (7th Cir. 2000) (consent not implied by silence or "ambiguous" statements of defendant "when asked to consent to mistrial following defense counsel's misconduct.")

However, if the court decides that Mr. Lacayo did object the abuse of discretion because Judges declare mistrial over defendant objection without considering alternatives such as curative jury instruction.

See; **GILLIAM vs. FOSTER,** 61, F., 3d., 1070, 1080 (4th Cir. 1995)

Furthermore, under case; **BIGBY vs. LOCK**, 340, F., 3d., 259, 267 (5th Cir. 2003) (Adjudication before a biased trial falls within the very limited class of cases that represent a structural error subject to automatic reversal.)

It has been proven that the Judge, Childress, serving as Judge over the case, should have been "unquestionably disqualified" because it has also shown he committed with insurmountable corroborated evidence of bias and prejudicial with illegal acts of conspiracy against Mr. Ghazir G. Lacayo. In any case, this criminal case should have moved the jurors with instruction to disregard any statement made by Mr. Lacayo and "ORDER" for a assistance of counsel to NOT violate the DOUBLE JEOPARDY issue or Mr. Lacayo could retain another private attorney to be ready for trial or be appointed an indigent public defender as counsel if Mr. Lacayo could not afford one or "INDEPENDENT/STANDBY" COUNSEL AND TO ENQUIRE IF MR. LACAYO WOULD LIKE TO WAIVE THOSE RIGHTS TO A COURT APPOINTED ATTORNEY TO ASSIST ON FURTHER DISPUTE," either was, under this case law;

See; **SMITH vs. LOCKHART**, 923, F., 3d., 1314, 1321,(8th Cir.) (Right to counsel by court is refusal to appoint substitute counsel after defendant cited of disinterest with appointed counsel and "explained inability to communicate with counsel."

See; **U. S. vs. TORIBIO-LUGE,** 376, F., 3d., 33, 39 (1st Cir. 2004) (No manifest necessity because judge did not adequately explore viable alternatives to a mistrial.)

Moreover, in finding, back to the lack of "manifest necessity" the Judge gave absolutely "No Consideration" to the alternative and acted in discharging the jury. Thus, the court concluded in the case.

See; **UNITED STATES vs. JOHN,** 400, U. S. at 470, 91, S. Ct., 547 (1971)

Nevertheless, under **U. S. vs. BARTON**, 257, F. 3d., 433 (5th Cir. 2001) (A conviction can only be reversed to "avoid a manifest miscarriage of Justice" under plain error analysis.) When the Trial Court accepted the defense counsel's move for a mistrial, while Mr. Lacayo was deprived of any assistance to determine If he needed to agree or disagree because of the double jeopardy issue or given any other option or "GIVEN ANY ASSISTANCE THROUGH A PUBLIC APPOINTED COUNSEL OR INDEPENDENT/STANDBY COUNSEL," as here, a trial court Judge, Childress, simply made no effort to exercise sound discretion to Sua Sponte declaration of a mistrial, a re-prosecution would violate the Double Jeopardy provision of the Louisiana Constitution 1 Sec. 16, and United States Fifth, Sixth, Eighth and Fourteenth Amendments. The Trial Court errored by not considering other alternatives.

See; **U. S. vs. RIVERA**, 384, F., 3d., 49, 58-59 (3rd Cir. 2004)

However, the error would have been avoided and resolved with other viable options. Thereby, the Trial Court failed to seek other alternatives to further demonstrate regardless if Mr. Lacayo had received a new counsel for the second trial due to the fact that the violation of the

"first trial recorded records brought on the chain or sequence of events." "Indeed, Double Jeopardy clause bars the re-prosecution when presented with provocative of bad faith conduct by a Bias Judge, the Prosecutor and the Private Attorneys."

Under; **BRECHT vs. ABRAHANSON,** 507, U. S. 619, 623 (1993) (Under this standard, Habeas relief is automatically granted for Constitutionally significant trial errors granted only when the error or influence in determining substantial influence, the passage of the "anti-terrorism and effective Death Penalty" the "Brecht" standard of substantial and injurious effect. "Brecht" remains the correct standard of reviews in assessing the prejudicial impact of Federal Constitution error in a criminal trial in State court.

See; **FRY vs. PLILER,** 551, U. S. 1123, 119-120 (2007)

In keeping with the wrongdoing had shown in two areas in the record that it reveals the evidence and shows that the Judge Childress committed "untruthful" statement that violated the cannon code of Judicial conduct by stating for the record in the "Judge's Chamber" and also being notified in the "open court" that day of trial on Jan. 9, 2008. But, stated he knew "Nothing" about this defendant's (Mr. Lacayo's) background during a brief discussion in his chambers regarding a plea offer and The Protective Order during the first trial dealing with Mr. Lacayo's case as through the Prosecutor Jack Hoffstadt and his Private Counsel, Marion B. Farmer. In the beginning just prior to the Judge stating on the verbatim Record, 73, 18-29.

Liljeberg vs Health Serus Acquisition Corp., 486 U.S. 847, 967-70 (1998) (harmless error analysis inapplicable when judges overlook circumstances which should have disqualified them from hearing case.) (1st and half of the 2nd Trial Judge Raymond S. Childress).

Pg. 73

## (18) **HOFFSTADT:**

(19) We have one, your honor, that dealt with the

(20) "Protective order that was issued by this court on April

(21) The 26th." "We previously agreed the Protective Order in

(22) that it was issued by This Court to the defendant

(23) Lacayo

And then a few minutes later in the star chambers proceedings within the Judge's chambers of

the District Judge Raymond S. Childress has stated:

Pg. 94; 9-29

(12) I would have to order

(13) a pre-sentence investigation  I KNOW "NOTHING" OF HIS (Mr. Lacayo)

(14) BACKGROUND, LIKE I KNOW "NOTHING," about the background of

(15) all the defendants that come in here, okay.

See; **HUGHES vs. U.S.,** 258, F., 3d 435, 463 (6th Cir. 2001) (presence of bias Judge is structural

defect that defies harmless error analysis.)

It is apparent from the above testimony it appears in the brief discussion within the

Judge's chambers regarding Mr. Lacayo's plea offer, that the District Judge (Childress) had

some reservation(s) on the plea offer, and without due consideration given to the issuance of the

protective order by him in April 2006, the Judge still "insisted" on a pre-sentencing investigation

report claiming he knew "Nothing" of this defendant's (Mr. Lacayo) background. It is,

respectfully submitted that the courts should "decline" to accept the statement of District Judge

as a valid reason for not accepting Mr. Lacayo's plea offer and proceed with the "Boykin"

process. When in "truth" the Judge was sufficiently aware of Mr. Lacayo's background when in

fact he issued the "Protective Order" against Mr. Lacayo on April 26, 2006. Indeed it would be

fair to say that Judge Childress was being "untruthful" in his assessment of the plea offer made

by Mr. Lacayo. The Cannon Code of Judicial Conduct regulated the "conduct" of Judicial

officers presiding over criminal and civil matters that Judge Childress also further "issued" and

"arrest warrant" against the defendant while Mr. Lacayo awaited trial within the Parish Jail pertaining to the matters of his estranged spouse at the time, on either August 17, 2006 or September 12, 2006, warrant # 323786, 2006-11492 or 2006-11658. In addition, Mr. Lacayo had two (2) different private hired Attorneys: **Marion B. Farmer (Criminal) and Craig P. Hart (Divorce Civil Matters)**

And never once did these two (2) attorneys assist Mr. Lacayo to be present for these civil matters. It has also been five (5) years when Mr. Lacayo sent his own Motion to Quash due to the fact of the Statue of limitation on the **"warrant."** Therefore, Judge **William J. Burris,** division "E", on July 26, 2011 was presented and **"granted"** on August 1, 2011, his request without any assistance of his hired attorneys proves ineffective assistance of counsel and also proves conspiracy to commit an illegal act against their client, Mr. Lacayo and the court of the Twenty-Second Judicial District within the State of Louisiana and these Judicial Attorneys are charged with maintaining courtroom protocol and withholding State, Federal and Constitutional Law of the United States and the State of Louisiana (1974) in the administrate of Justice. Plus, these State Judges are required to maintain the high standard of "integrity" and "impartiality" as well as, "fairness" during the course of their daily courtroom operations. Needless to say that the District Judge's (Childress) conduct does not fall within the guidelines described above, the circumstances and background of the instant case calls for Judge Childress "Recusal" to have had a right to a "fair" trial in this case was "Jeopardized" with Judge Childress presiding. Herewith, Mr. Lacayo demonstrates, he had also petitioned to the court several times during just after the jurors were sworn in and impaneled that the retained counsel of Mr. Lacayo had for representation create a complete breakdown of communication and the trust factor to such an extent as a conflict of interest which had led to an apparently "unjust" verdict. Although the

conflict of interest was apparent and in plain view of the false and misleading representation. So, when Mr. Lacayo knew that the others were not acting under a "mistaken impression." For example, the usual elements of a claim for fraud are; (1) A false representation by the Attorney (2) knowledge by the Attorney of the falsity (3) Intent by the Attorney to induce some conduct by Mr. Lacayo (4) Reasonable reliance by Mr. Lacayo (5) Resulting damage to Mr. Lacayo. **(Appeal Record pgs. 76; 26-32, pg. 77, 1-32**

Moreover, Judge Childress also issued a Protective Order against Mr. Lacayo two months prior to the incident. Thereby, the defense attorney should have recused the Judge or the Judge Childress should have recused himself from this case. However, the Judge over this case has now substantially prejudiced Mr. Lacayo's ability to present a meaningful defense. For example, during the commencement of the first trial a "brief" discussion was taken-up in the Judge's chambers when the star-chamber proceeding began regarding Mr. Lacayo's "Dissatisfaction" with his private counsel (Farmer) and that a fair opportunity to obtain other counsel was requested by Mr. Lacayo. The District Judge denied Petitioner's due process of law and the Judge fiendishly foist and compelled by forcing Mr. Lacayo to proceed to trial with a defense attorney who was not functioning as the Counsel Guaranteed by the 6th Amendment of the Constitution. Herein, it was one of the numerous crucial issues besides pretending to tell the truth by lying about why Mr. Lacayo was terminating him (Mr. Farmer) in the beginning of the first trial. Yet, during the arguments against the prosecutor (Hoffstadt) when the Res Gestae "Things done" was being submitted into evidence. The private defense attorney (Farmer) did not object to the Res Gestae his absent or refusal to object and being nonchalant to the case at hand went ahead and stated, Pg. 76, 26-32 and Pg. 77;

Pg. 76

(26) **MR. HOFFSTADT:**

(27) The only other issue Mr. Farmer had made an

(28) objection to was the fact that the immediate hot

(29) pursuit, Although it's <u>definitely Not 404 either</u>

(30) it's part of the Res Gestae, the pursuit of Mr. Lacayo

(31) of his wife through the vehicle and the subsequent

(32) pummeling seconds after he rammed the Volvo I think

Pg. 77

(1) you made objections to that, also.

(2) **MR. FARMER:**

(3) <u>"I have Not made an objection to that."</u>

(4) **THE COURT:**

(5) All right, fine.

As you can see, the defense counsel overtly allowed it to be submitted into evidence without any defense. Mr. Lacayo had to remonstrate, fulminate and urge his attorney to object to the Res Gestae and mainly for the Protective Order due to it falling under the grounds of "<u>being an accident.</u>" The counsel, Farmer, failed to argue or present that without any witnesses that had seen the after incident would not have been able to present at the trial to dispute or test the validity of the Prosecutor's star witnesses statements because it was bias, unfair, and partial to allow witnesses to testify about the after incident and it was also disadvantage to Mr. Lacayo's case due to the inadequate notice of time to have subpoenaed other potential witnesses especially including <u>the "E.M.T.'s"</u> to verify Mrs. Stephanie B. Lacayo's and other star witnesses statements or affidavit. Pg. 77, 6-32;

Pg. 77

**(6) MR. FARMER:**

(7) Judge, "<u>my client</u>" just pointed out something to me

(8) "<u>He said we should object</u>" <u>to that</u>, <u>because if it</u>

(9) <u>was an accident it's under that act</u>; <u>so, therefore, we</u>

(10) <u>object to that evidence coming in</u>.

**(11) THE COURT:**

(12) I think Hoffstadt already made his argument

(13) (The defendant confers with Mr. Farmer)

**(14) MR. FARMER:**

(15) Judge, insofar as we object to any evidence about

(16) the incident after the collision, because it was in

(17) fact an accident and there was no bodily harm done to

(18) her and that's a portion of our defense in this case.

**(19) MR. HOFFSTADT:**

(20) so the chasing her in the car and beating the hell

(21) out of her was an accident?

(Mr. Farmer statement) I've already stated my

(22) position

**(23) THE COURT:**

(24) It would appear to me that the state's argument

(25) that this would be part of the Res Gestae of the entire

(26) incident would be persuasive to this court and I will

(27) allow them to present testimony relative to that. All

(28) right?

**(29) MR. FARMER:**

(30) Note our objection to that ruling, Judge.

**(31) THE COURT:**

(32) Noted, Bring the jury, please.

However, Mr. Lacayo would like to clarify on pg. 70; number (13) there is missing transcripts of additional arguments and not only that is abnormal, unusual, odd, irregular or extraordinary in this case for a client to interject during the trial proceeding especially when having a hired attorney. In fact, it's the attorney duties to be loyal to his client (Mr. Lacayo) and provide adequate services of effective assistance of legal representation Not to be urged by his client during the first trial to object or refuse to file his own Motion to Quash on Hearsay statement or either failed to submit a Motion in Limine "At The Threshold," to exclude the Protective Order.

See; **STOIA vs. U.S.** 22 F. 3d 766, 769 (7th Cir. 1994) (conflict of interest affected performance because evidence that counsel with presumed conflict of interest developed questionable defense strategy failed to file motion and failed at last minute to appear at trial.

Therefore, the Trial Court ought to have allowed counsel to withdraw regardless of the issue when Mr. Lacayo petitioned the first time to relieve his private counsel to retain another counsel, which would have been a rational discretion without violation Petitioner's Sixth Amendment Right to Due Process or the Fourteenth Amendment of Procedural and Substantial Due "Process of Art. 515" shall not deprive defendant of the right to engage other counsel of the assurance of the Fifth Amendment guaranty of due process.

See; **WHEAT vs. UNITED STATES,** 486, U. S., 153, 108, S. Ct. 1692, 100, L. Ed. 2d. 140, (1998)

In addition, let the record prove that Mr. Lacayo also refused to be "sworn in" during the argument of changing for another attorney for his representation. 88, 14-27 and 92; 18-20 and 92; 21-32 and 93; 1-6.

Pg. 88

(14) **THE COURT:**

(15) Good swear him in

(16) **THE CLERK:**

(17) Raise your right hand, sir

(18) **MR. FARMER:**

(19) **"Raise your right hand"**

(20) **THE CLERK:**

(21) hold on one minute, sir. I am going to swear you

(22) In

(23) **DEFENDANT:**

(24) Right, but I would like to have another attorney

(25) here before I make any statement, because I don't feel

(26) as though he is representing me and any statement I

(27) make is not appropriate

As everybody can see the private counsel, Marion B. Farmer, never once was concerned "if" his client, Mr. Lacayo, would have been sworn in due to his previous record that the Prosecutor would have been able to present it to the jurors at the first trial. Instead, he urged his client with the Trial Court and the Clerk of Court to raise his right hand to be sworn in, but Mr. Lacayo insistently refused to be sworn in and persistently continued to petition the Trial Court to relieve his attorney of his duties.

Pg. 92

(18) **THE DEFENDANT:**

(19) I need, I need to have another attorney. I don't

(20) I can't be sworn in and not have an attorney

Pg. 93

(5) **THE DEFENDANT:**

(6) Well, I'm going to need another attorney

Furthermore, to reiterate and resolve any disputes before the jurors were sworn in, Mr. Lacayo had insisted upon that he would like to make a statement to the Judge through his private attorney, Marion B. Farmer, had verified this in the Judge's Chamber on the first time Mr. Lacayo requested his counsel to be relieved of his services on the verbatim records above and records below as stated; 87, 27-32 and 88; 1-13.

Pg. 87

(27) **MR. FARMER:**

(28) Yes, yes what happened was when the , when the

(29) court was calling the jurors up to the box. Mr. Lacayo

(30) mentioned to me that "he would like to make a statement

(31) at that time to the court," and "I explained that it

(32) couldn't be done at that time," that the Judge was doing

Pg. 88

(1) certain things and when the Judge finished questioning

(2) the jurors, "than I would," I would talk to you about,

(3) allowing the possibility, but it would have to be done

(4) back there and not in front of the jurors at this stage

(5) so I asked him what did he want to say, what was

(6) the gist of it, and he said he would say it later, so

(7) now, I guess, he wants to make a statement and say to

(8) the court what he wanted to say out in the courtroom

(9) and I think your Honor can decide where he can go from

(10) there I don't know what the statement is, is that

(11) correct Mr. Lacayo

(12) **THE DEFENDANT:**

(13) Yes, sir

Indeed "If" his defense counsel would have interjected at the precise moment when Attorney Marion B. Farmer was told by his client (Mr. Lacayo), the private counsel could have prevented any Double Jeopardy issue that the Trial Court had made later on by pronouncing a mistrial due to the fact that the attorney, Farmer, waited for the jurors to be impaneled and sworn in before he decided to address these issues, knowing of the sure probability of his services being terminated.

Thereupon, Mr. Lacayo, had insisted upon he would like to have another attorney in Judge Raymond S. Childress' Chamber the "first" time before the court, absent from the jurors.

Pg. 88

(23) **THE DEFENDANT:**
(24) Right, but I would like to have another attorney
(25) here before I make any statement, because I don't feel
(26) as though he is representing me and any statement I
(27) make is not appropriate.

Pg. 90

(27) **THE DEFENDANT:**
(28) But if I speak up I don't know what goes against
(29) that and what comes against me. I don't know each
(30) legal procedure. "I have to have an attorney that I
(31) feel appropriate with"


Pg. 92
(18) **THE DEFENDANT:**
(19) "I need, I need to have another attorney." I can't
(20) I can't be sworn in and "Not have an attorney."

Nevertheless, the Trial Court is in error because it failed or refused to halt the proceeding and allow Mr. Lacayo to retain a new counsel, or to be appointed a public defender "if" he could not afford one or ought to have moved with another Counsel the "first" time Mr. Lacayo

petitioned for a new counsel INCLUDING THE RIGHT TO COURT-APPOINTED COUNSEL AND THAT HE WAIVED SUCH RIGHT DUE TO **"LA. C. CR. P. ART. 514"** HIS RIGHTS WERE IGNORED WHEN MR. LACAYO RELIEVED HIS ATTORNEYS OF THEIR DUTIES THE SECOND TIME AROUND.

See; **POWELL vs. ALABAMA,** 287 U. S., 45, 53, S. Ct., 55, 77 L. Ed., 158, (1932) (recognized due process rights to the assistance of appointed or retained counsel, those rights in the context of a proceeding that would be subjected to the sixth amendment.)

See; **U.S. vs. SANTOS,** 201, F. 3d. 953, 958 (7th Cir. 2000) (right to counsel violated by court's arbitrary denial of continuance because such denial rendered defendant unable to "procure counsel of his choice" despite the fact that he was able to hire another competent attorney.)

Thereupon, now rather than the Judge allowing Mr. Lacayo to relieve or terminate his attorney. The Judge Raymond S. Childress had within moments later resumed the jury selection.

Pg. 95
(51) **THE COURT:**
(52) Fine, then let's resume jury selection. All
Pg. 96
(1) Right?
(2) (End of Proceedings in chambers.)
(3) (Court is reconvened in open court, jury panel one
(4) Being present, the defendant and all counsel being
(5) present)

See; **U.S. vs. ISOM,** 88, F. 3d. 920, 923-24, (11th Cir. 1996) (per curiam) (Jeopardy attached when original jury impaneled and sworn regardless of second jury selection.)

Thereafter, while the jurors were being reseated, Mr. Lacayo invoked his Constitutional Rights to Counsel of **"Choice"** or Right to an Effective Assistance of Counsel" since the Judge

would not allow him the first time, Mr. Lacayo repeatedly stated this time in "open court" he was

relieving or terminating his attorney of his duties.

Pg. 96
(13) **THE DEFENDANT:**

(14) Your Honor, I'd like to make a statement

(15) **THE COURT:**

(16) wait, wait, wait, wait-

(17) **THE DEFENDANT:**

(18) I want to fire my attorney

(19) **THE COURT:**

(20) wait, wait, Don't say another word

(21) **THE DEFENDANT:**

(22) I'd like to relieve my attorney

(23) **THE COURT:**

(24) Do Not Say another word. You will not be speaking

(25) **THE DEFENDANT:**

(27) My attorney is being relieved of his service for

(28) several reasons.

(29) **THE COURT:**

(30) No, No

(31) **THE DEFENDANT:**

(32) The right to have-

Pg. 97

(1) **THE COURT:**

(2) No, No

(3) **THE DEFENDANT:**

(4) The right to have

(5) **THE COURT:**

(6) Take him out please, now

(7) (The Defendant is escorted from the courtroom by

(8) The Bailiffs.)

THEREBY, LET IT ALSO BE REMINDED, SINCE IT WOULD HAVE NEVER AFFECTED THE JURORS DUE TO MR. LACAYO'S REFUSAL TO BE SWORN IN AND HE ALSO WAS A NON-TESTIFYING WITNESS. THE TRIAL COURT COULD HAVE PROCEEDED WITH A JUROR'S INSTRUCTION TO RESOLVE THE DILEMMA.

See; **U.S. vs. MELIUS,** 11223, F. 3d. 1134, 1137. (8th Cir. 1997) (Jeopardy attached when jury impaneled and sworn though mistrial declared when non-testifying witness had contact with jurors during deliberations.)

Nevertheless, Mr. Lacayo (Petitioner) has openly revealed, and unleashed Pandora's box of St. Tammany's criminal activities as a result provided to prove overwhelmingly with insurmountable evidence of Nonfeasance, Misfeasance and Malfeasance through the Public Official, the Judges, the Prosecutors and defense Attorneys causing nocuous through intentional inflection of mental distress and pain and suffering by cruel and unusual punishment that had a chilling effect in an eggshell skull rule to Mr. Lacayo who never received a fair and impartial first and second (déjà vu') trials on all fours by committing outrageous, overt abuse of process and power by the Judges, the Prosecutors and the Private Attorneys with fraudulent misrepresentation and obstruction of Justice by rigging and railroading Mr. Lacayo into a conviction and constantly was an eye opening extravaganza to the rickety, torturous and totalitarian eyesore of corruption to the highest degree of factitious façade throughout Mr. Lacayo civil, first and second criminal trial.

See; **PARKER vs. CONNERS STEEL Co.,** 855, F., 3d., 1510 (11th Cir. 1998) (briefly quoted, "Whether an objective disinterest lay observer fully informed of the facts...would entertain a significant doubt about the Judge's impartiality.")

HOWEVER, IF MR. LACAYO WOULD HAVE RECEIVED A "NEUTRAL APPOINTED COUNSEL INDEPENDENT/STANDBY COUNSEL COULD HAVE CHANGED THE WHOLE OUTCOME TO WHICH DIRECTION MR. LACAYO WOULD HAVE WENT AND FAILURE TO INFORM MR. LACAYO'S OF OTHER OPTIONS INCLUDING THE RIGHT TO PETITION FOR **LA. C. CR. P. ART. 775.1, AUTOMATIC STAY FOLLOWING ORDER OF MISTRIAL.**

Therefore, this mistrial was improper and illegally "ordered" and therefore, Petitioner's second claim of Double Jeopardy is valid on the face of the record that was correctly petition for a Federal Criminal Investigation and an evidentiary hearing as a result of the substantial evidence with merits beyond Mr. Lacayo's weight of the evidence for the **FEDERAL COURT** ought to vacate and overturn the first mistrial and second trial conviction.

The trial court violated the Petitioner's constitutional rights under the VI amendment to the United States Constitution and the Constitution of 1974, La. Article 1, Section 13, 15, and 16 by inducing the Motion for Mistrial by estrange counsels to be entered and for a move to enter the mistrial without allowing the Petitioner the right to retain counsel during trial proceeding or with the Petitioner's consent. Mr. Lacayo, argued and tried at several points during trial to have his attorney, Mr. Farmer and Mr. Daigle removed from his case and to have another counsel appointed, Main Part of Appeal Records: (93, pg 23; 5-32: 94; pg. 24; 1-32: 95; pg. 25; 1-32: 96; pg. 26; 1-5: 96; pg. 26; 6-32: 97; pg. 21; 1-12).

**Louisiana Code of Criminal Procedure Art. 591.** Double jeopardy; definition

No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of **Article 775** or ordered with the express consent of the defendant.

The State mentioned; "The Honorable Judge Raymond S. Childress moved the court for and declared a mistrial; therefore the mistrial was based off the fact that Mr. Lacayo had clear intentions of wanting to exercise his constitutional right by firing his attorney(s) the self hired attorney(s)." The trial court went further through the first part of the proceedings by informing Mr. Lacayo basically he had to go with counsel present.   THE TRIAL COURT NEVER ALLOWED MR. LACAYO THE OPPORTUNITY TO FULLY HAVE APPOINTED AND/OR HIRE ANOTHER ATTORNEY FOR THERE WAS CLEAR CONFLICT WITH THE ATTORNEY THAT WAS HIRED TO ADVISE MR. LACAYO WHICH DIRECTION TO GO ON THE MISTRIAL ISSUES.   Double Jeopardy attached in this case when the trial court allowed a mistrial to be declared based off the fact of the coerciveness of the trial court and the fact that estrange counsels moved for the mistrial and this was the only fact that initiated the mistrial to begin with.

However, if a mistrial is brought about with the consent of the defendant, double jeopardy bars re-prosecution when the circumstances promoting the mistrial were attributable to the prosecutorial or judicial overreaching or through collaboration of Illegal Conspiracy, Outrageous, Overt, Illegal Misconduct by the Court, the Prosecutor, and the Private Attorney(s).

As when private attorney failed to assist his client to either agree or disagree to the mistrial, shows a clear violation to the right to counsel of the right to effective assistance of counsel due to the double jeopardy issue.  Mr. Lacayo was left without assistance when the

mistrial was presented and not knowing what his other option was to the issues at hand or if he was to agree or disagree to his best interest with the court's decision or not. **MR. LACAYO DID NOT CONSENT TO THE MISTRIAL.**

Due to no consent being given to the mistrial and the trial court moving for a mistrial and Mr. Lacayo's intentions that he was firing his attorney(s) and therefore they move for a mistrial without his consent, and without Mr. Lacayo waiving any such rights as neutral appointed counsels or independent/stand-by counsel for Judge Childress deliberately neglected to offer assistance at the appropriate time for a court appointed counsel caused double jeopardy attached and therefore Mr. Lacayo could not be prosecuted a second time for the trial court error in moving for a mistrial based on the statement made by the attorney(s) and failing to gain consent form the Petitioner.

United States Supreme Court has held in 102 S.Ct. 2083, 456 U.S. 667, **Oregon v. Kennedy**, (U.S. Or. 1982)"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."

This language would seem to follow the rule of **United States v. Tateo**, supra, 377 U.S. at 468; n. 3, 84 S.Ct. at 1590 n. 3, in limiting the exception to cases of governmental actions intended to provoke mistrial requests. But immediately following the quoted language we went on to say:

"[The Double Jeopardy Clause] bars retrials where 'bad-faith conduct by judge or prosecutor,' threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." **United States v. Dinitz**, 424 U.S., at 611, 96 S.Ct. at 1081.

The language just quoted would seem to broaden the test from one of intent to provoke a motion for a mistrial to a more generalized standard of "bad faith conduct" or "harassment" on the part of the JUDGE OR PROSECUTOR or especially your own PRIVATE ATTORNEYS.

It was upon this language that the Oregon Court of Appeals apparently relied in concluding that the prosecutor's colloquy with the expert witness in this case amount to "overreaching."

The difficulty with the more general standards which would permit a broader exception than one merely based on intent is that they offer virtually no standards for their application. Every act on the part of a rational prosecutor during a trial is designed to "prejudice" the defendant by placing before the judge or jury evidence leading to a finding of his guilt. Given the complexity of the rules of evidence, it will be a rare trial of any complexity in which some proffered evidence [456 U.S. 675] by the prosecutor or by the defendant's attorney will not be found objectionable by the trial court. Most such objections are undoubtedly curable by simply refusing to allow the proffered evidence to be admitted, or in the case of a particular line of inquiry taken by counsel with a witness, by an admonition to desist from a particular line of inquiry.

More serious infractions on the part of THE COURT, THE PROSECUTOR and PRIVATE ATTORNEYS may provoke a motion for mistrial on the part of the defendant, and may in the view of the trial court warrant the granting of such a motion. The "overreaching" standard applied by the court below and urged today by Justice Stevens, however, would add another classification of prosecutorial error, one requiring dismissal of the indictment, but without supplying any standard by which to assess that error.

By contrast, a standard that examines the intent of THE COURT, THE PROSECUTOR and PRIVATE ATTORNEYS, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system. When it is remembered that resolution of double jeopardy questions by state trial courts are reviewable not only within the state court system, but in THE FEDERAL COURT SYSTEM ON HABEAS CORPUS as well, the desirability of an easily applied principle is apparent.

Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, [456 U.S. 676] therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's ambiguous answer for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." **United States v. Scott**, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where THE COURT, THE PROSECUTOR and PRIVATE ATTORNEYS prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." **United States v. Dinitz**, supra, 424 U.S., at 609, 96 S.Ct. at 1080. Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

MR. LACAYO WAS ALSO LEFT WITHOUT ASSISTANCE WHEN THE MISTRIAL WAS
PRESENTED AND WHICH FAILED TO ADVISE HIM THE RIGHT TO ORDER
LOUISIANA CODE OF CRIMINAL PROCEDURE ARTICLE 775.1, AUTOMATIC STAY
FOLLOWING ORDER OF MISTRIAL.

In addition, the 2nd trial attorney Frank G. DeSalvo failure to submit a MOTION TO
QUASH THE INDICTMENT BASED OFF THE DOUBLE JEOPARDY ISSUE, the Ineffective
Assistance of Counsel goes further to show that counsel(s) for the Petitioner, Mr. Marion
Farmer, and Mr. Fred Daigle violated the Petitioner's constitutional rights in that in the 1ST
**TRIAL BOTH ATTORNEYS' FAILED TO GIVE NOTICE OF APPEAL.** By failing to do
so abandoned the Petitioner's Appeal rights and violated the Petitioner's Constitutional Rights
and the right to Judicial review of his trial.

Mr. Lacayo has met the two-prong test in supra Strickland v Washington, counsel for the
Petitioner prejudice Mr. Lacayo, and his performance was well below the standard of ethical
conduct.

Therefore, the Petitioner was protected under the double jeopardy standard and
ineffective assistance of counsel claims and the Petitioner should not have been retried for he
never gave consent to the mistrial and therefore a clear violation of the Double Jeopardy Clause.

**CLAIM #3**

**IN VIOLATION OF A FAIR AND IMPARTIAL 2ND TRIAL AND CONVICTION AND
SENTENCE OBTAINED IN VIOLATION OF THE UNITED STATES CONSTITUTION
AMENDMENT V, VI, XIV, AND THE LOUISIANA CONSTITUTION OF 1974
ARTICLE 1 §13 AND §16. "INEFFECTIVE ASSISTANCE OF COUNSEL".**

(I) In the Introduction of the 2nd Trial, Attorney Mr. DeSalvo had even assisted the prosecuting attorney in the admittance of Mr. DeSalvo's irrelevant photo of the location. During Direct Cross Examination of the State's witness (Sergeant Kevin Simon) the prosecutor (Karen G. Middleton) questioned the officer concerning photographs taken by Attorney Frank G. DeSalvo of the location (rec. 562, 19-32). Officer Simon testified as following to the prosecution of the questioning of the prosecutor, "...and I'm looking at it now, (Exhibit 2) Which I believe Counsel has no objection going into evidence in this case" Counsel, Mr. DeSalvo stated, "I have none. In fact I blew it up". Counsel for the Petitioner assisted the prosecution in the admittance of the daytime photo and not only did not object to the irrelevant photo but instead it gave an opportunity for the prosecutor Ms. Middleton, to establish the witness's statement that she wanted to make to the jury. The Petitioner verifies that Officer Simon testified (specifically) to that area of the place of the incident was "Dark". The prosecutor succeeded to cover up Officer Simon's statement that "It was Dark" in the area of June 2006. When the prosecutor re-questioned Officer Simon as the word being "Dark", Prosecutor Middleton stated, "so is that the car as it appeared when you pulled into the parking lot that day?, Officer Simon replied, "Yes Mam, Prosecutor then stated, "and again I'm going to ask that you take a look at Number 5 and tell us what it is that depicted in that Photograph? Officer Simon stated, "the front part here is my police unit that's Mr. Lacayo's truck, and that's Ms. Lacayo's vehicle, this car you showed me here, Prosecutor Middleton stated, "So when you are referring to the truck belonging to Mr. Lacayo you were referred to the "<u>Black</u> or <u>Dark</u>" as it appears vehicle in the right side of that photograph is that correct, Officer Simon stated, "Yes".

The prosecutor accomplished to alter and conceal the true meaning of Officer Simon's statement. Mr. DeSalvo violated the Petitioner's constitutional rights by failing to object to the

questioning of the prosecutor for leading the witness in his statements. Instead Attorney, Mr. DeSalvo allowed this testimony to take place without him re-questioning or cross-examine the Officer. In addition, the Prosecutor committed prosecutor misconduct by deliberately sabotaging Mr. Lacayo's Case when she changed the photos from (Exhibit 2) to number 5 to further accomplishes to alter and conceal the true meaning of Officer Simon's statement of being dark of the night of the incident through acts of collusion.

Mr. DeSalvo's failure to object and re-cross-examine the officer and his performance in this case prejudice the Petitioner and warrant a new trial in this case. By failing to do so abandon the Petitioner's Appeal rights and violated the Petitioner's Constitutional Rights, the right to Judicial Review of his trial, and the second Trial Attorney Mr. Frank G. DeSalvo failure to submit a Motion to Quash the Indictment based off the Double Jeopardy issue violates the right to the effective assistance of counsel claims.

During direct examination of State's witness (Sergeant Kevin Simon) the Prosecutor (Karen G. Middleton) questioned the Officer about the photographs taken of the location (rec. 562; 19-32) Officer Simon testified as following to the questioning of the Prosecutor:

**BY PROSECUTOR (MIDDLETON)** (rec. 562; 19-32):
(19) ... and I'm looking now at ("Exhibit 2")
(20) Which I believe Counsel has no objection to it
(21) going directly into evidence in this case.

**BY COUNSEL (DESALVO):**
(23) I have none. In fact, "I Blew It Up"

**BY PROSECUTOR (MIDDLETON):**
(25) could you tell us what is "Depicted" in (26) that Photograph?

**BY OFFICER (SIMON):**
(27) It is the front of the Daiquiri and Company

**BY PROSECUTOR (MIDDLETON):**

68

(29) and is that how it appeared in June of 2006?

**BY OFFICER (SIMON):**
(31) other than being <u>DARK</u>, I was
(32) there, yes, ma'am (rec. 562; 19-32)

Mr. Lacayo clarifies that Officer Simon testified (specifically) that the area of the place of the incident was "DARK". The Prosecutor succeeded to "COVER UP" Officer Simon's statement that "IT was DARK" in the area of June 2006. (night of incident) by Re-questioning the Officer Simon.

The Private Attorney, <u>Frank G. DeSalvo</u>, surely assisted the Prosecutor, Middleton, to cleverly act out her plan by allowing her to use another Photograph "Exhibit 5" of the issue about being DARK without objecting to it, because it was not the Photo as "Exhibit 2" when re-questioning Officer Simon was referring to the word being "DARK".

**BY PROSECUTOR (MIDDLETON):** (rec. 564; 3-18)
(3) so is that the car as it appeared when
(4) you pulled into the parking lot that day?

**BY OFFICER (SIMON):**
(5) "YES", ma'am

**BY PROSECUTOR (MIDDLETON):**
(6) (and <u>"again" I'm going to ask that you</u>)
(7) take a look at (Number "5") and tell us what it
(8) is that is <u>"depicted"</u> in that Photograph?

**BY OFFICER (SIMON):**
(9) the front part here is my police unit
(10) that's Mr. Lacayo's truck, and that's
(11) Ms. Lacayo's vehicle, this car that you showed
(12) me here
**BY PROSECUTOR (MIDDLETON):**
(13) so when you referred to the "truck"
(14) belonging to Mr. Lacayo you were referred to
(15) the "BLACK" or "DARK" <u>as it appears</u>, vehicle in
(16) the right side of that Photograph is that
(17) correct

69

**BY OFFICER (SIMON):**
(18) "YES"

However, the Prosecutor accomplished to alter and conceal the "TRUE" meaning of Officer Simon's statement. When she asked Officer Simon the second time later that he was referring to the truck being "BLACK" OR "DARK". Mr. Lacayo demonstrates that Officer Simon testified that the area of the place of the Incident was "DARK". It also provides to prove Ineffective Assistance of Counsel. When Attorney DeSalvo neglected to adjust or arrange the Prosecutor from redirecting and leading Officer Simon to change his "TRUE" meaning of his statement has caused a "Miscarriage of Justice" and to provide Mr. Lacayo with Ineffective Assistance of Counsel. Besides, the Prosecutor, Ms. Middleton, has succeeded to bring about the bamboozling of the jurors into believing something different from its original intent and to further receive an Illegal Prosecutorial Tactical Advantage that the Officer was speaking about Mr. Lacayo's truck and not of the "DARK" of the NIGHT of the incident.

Therefore, Mr. Lacayo shows that the Trial Prosecutor LED the witness to recant his earlier testimony describing the condition of the Appearance of the (being DARK) by changing the line of questioning to the description of Lacayo's vehicle (being DARK), Mr. Lacayo verifies that his Private Counsel was deficient by his failure to not "OBJECT" and "CROSS-EXAMINE" Officer Simon on what he referred to when he testified using the word DARK where the altercation took place. Defense Counsel's default performance was so deficient so as to DENY Lacayo a "FAIR TRIAL", defense Counsel's deficient performance has greatly prejudiced Mr. Lacayo's defense, it would have been more likely than unlikely that the jury would have believed the testimony of the Officer's first statement, by recanting his statement has provided to prove wrong doing on the part of the Prosecutor when she committed "Subornation of Perjury" by

Officer Simon's false swearing or perjury as to the agreement with the re-questioning. Larrison Rule, a principle holding that if a government witness is discovered to have given false testimony that contributed in some way to the decision to convict a defendant, then that defendant may be entitled to a new trial (*Larrison v. United States*, **1928**). It is blatantly obvious that Officer Simon was describing a Daytime photograph of the Daiquiri and Company that the defense counsel provided a <u>Blown-Up Version</u> of a photo of the location that the Prosecutor submitted into evidence, when Officer Simon stated: "Other than it being <u>DARK</u>, when I was there, "YES", ma'am."

> (1) Argumentative Question, a question that asks a fact witness to agree with an inference or conclusion favorable to the lawyer's case rather than merely eliciting facts, <u>"this is improper.</u>"
>
> (2) Compound Question, a combination of two or more question into one: for example, "Did she speed through a red light?" Instead of "Did she go through a red light? Was she speeding?" "<u>Compound questions can be confusing and misleading, and are therefore objectionable.</u>"
>
> (3) Leading Question, a question phrased so as to suggest the desired answer. Except for routine preliminary questions intended to introduce a topic, this is generally forbidden in direct examination but allowed in cross examination and in examining a hostile witness. Example: "What color was the light?" is non-leading: <u>"The light was red, wasn't it? is leading: "Was the light red? might be either, depending on the context.</u>"

However, the Prosecutor accomplished to alter and conceal the "True" meaning of Officer Simon's statement. (Argumentative Question) When Ms. Middleton inquest the witness

the second time on a somewhat different but in the identical similar phrase type of question, whether he was referring to the truck being "BLACK or DARK," as it appears, she asked the question in a way that the witness is led to agree with the inference that she has made in order to obscure the fact that Officer Simon had clarified the area of the place of the incident was "DARK," in addition further causing the violation of (Compound Question) by using the word "or" used to indicate an alternative between the words black and dark, when addressing the re-questioning within one-solid single statement proves sufficient continuous evidence of unlawful (Leading Question) tactics and also literally committing a threefold premeditated illicit flim-flam acts by leading the witness in the question using "BLACK or DARK," instead of just simply asking "What color was Mr. Lacayo's truck?" Thus, Ineffective Assistance of Counsel when Attorney DeSalvo neglected to adjust or rearrange the Prosecutor from redirecting and leading Officer Simon to change his dispose "TRUE" meaning of his statement, has caused a "Miscarriage of Justice." Besides, the Prosecutor, Ms. Middleton, has succeeded to bring the bamboozling of the jurors into believing something different from its original intent and to further receive an Illegal Prosecutorial Tactical Advantage that the Officer was speaking about Mr. Lacayo's truck and not of the "DARK "of the NIGHT of the Incident.

Therefore, when the Prosecutor, Ms. Middleton, within minutes or seconds later premeditated and deliberately acted out and received an Illegal Prosecutorial Tactical Advantage without private counsel's, "Mr. DeSalvo, Objection or Re-questioning" of Officer Kevin Simon answer. Besides, the defense counsel assisted to bring to LIGHT the wrong doing by bringing The Day Time Photo to the Trial Court which the Prosecutor submitted into evidence that has made it "CLEAR" of the UNLAWFUL ACTS and the Constitutional violations of the 1 sec. 16 committed by the Prosecutor, Ms. Middleton, against the defendant Mr. Lacayo. Moreover, Mr.

72

Lacayo's Truck cannot change shades of color to "LIGHT" or be referred to a "LIGHT BLACK" Truck. The only reasonable conclusion would be the description of Officer Simon was referring to the difference of the day to the night of the incident. It literally shows a colorful description of what happens when people orchestrate an illegal act. This issued caused a bias and unfair trial due to Ms. Middleton changing and circumventing the photos from Exhibit "2" to Exhibit "5" and by leading the witness, because Officer Simon never mentioned the defendant's truck when he referred to the statement of being "DARK" on Exhibit "2" and also there was not a BLACK or DARK TRUCK in the Exhibit "2" photograph. Besides, Officer Simon surely was not speaking about Mr. Lacayo's truck when referring to the statement that he previously made of being "DARK" as now the Prosecutor, Ms. Middleton, is re-questioning in another form. (Argumentative and Compound Question)  Because Officer Simon never mentioned the truck being DARK or BLACK when discussing Exhibit "5" until she LED Officer Simon to agree that's what he meant by using the work "DARK" to the description of the truck when he never mentioned anything of being BLACK or DARK at the time he was being re-questioned about Exhibit "5" until she LED the witness and when she mentioned it herself. Let it be emphasized that this is not an accidental usage of a different photo, as one might say; this is (100) percent sabotage attack of an Illegal Procedure and partial trial stemming from a day time photo that had to be "submitted into evidence that was not an actual photo of the night of the Incident." See; **RAMIREZ-BURGES vs. U.S.** 313 F.3d. 23, 29 (1st Cir. 2002); **U.S. vs. ACKINSON**, 297 U.S. 157 (1936); **U.S. vs. SCULL**, 321 F.3d 1270, 1276 (10th Cir. 2003)(plain error review because outrageous government conduct not raised by defense at trial.); **U.S. vs. BARTON**, 257 F.3d 433, 439 (5th Cir. 2001)(A conviction can only be reversed to "Avoid a Manifest Miscarriage of Justice" under plain error analysis.); **ARIZ vs. FULMINATE**, 499 U.S. 279, 307-09

(1991)(Trial error is "error which occurred during the presentation of the case to the jury and which may therefore be quantitatively assessed in the context of the evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.)

Furthermore, this is Obvious Unfair Trial And Plain Error And Misconduct on the Prosecutor to prejudice the jurors with wrongful information or statements of the use of Illegal underhanded method that infected the integrity of the proceeding. See **MANSON vs. MITCHELL**, 320 F.3d. 604, 635 (6th Cir. 2003)(the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant)(quoting **SIMPSON vs. JAMES**, 238 F.3d 399, 409 (6th Cir. 2000).

Therein, although the Prosecutor had other witnesses questioned about the issue of being DARK at the Incident to accomplish to further Cover-Up Officer Simon's statement. When in fact all she had to do was simply ask Officer Simon if he could see "clearly" enough in the DARK the night of Incident. Instead of going through all of the Illegality of leading the witness and circumventing by changing photos has now caused an unfair trial and Miscarriage of Justice. See **MIRANDA vs. BENNETT**, 322 F.3d. 171, 180 (2d Cir. 2003)(Prosecutorial Misconduct cannot give rise to a constitutional claim unless the Prosecutor's acts constitute egregious misconduct)(quoting **DONNELLY vs. DECHRISOFORO**, 416 U.S. 637, 647-48 (1974); **MARSHALL vs. HENDRICKS**, 307 F.3d 36, 64 (3d Cir. 2002)(the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the Prosecutor)(quoting **SMITH vs. PHILLIPS**, 455 U.S. 209, 219 (1982); **U.S. vs. SCHEETZ**, 293 F.3d 175, 185 (4th Cir. 2002)(due process analysis in Prosecutorial Misconduct cases turns on fairness of trial, not culpability of Prosecutor).

In respect to the 6th Amendment violation by both private defense attorney Frank G. DeSalvo for not objecting and deliberately failing to cross examine Officer Kevin Simon by correcting the issues of "perjury." See **TOWER vs. GLOVER**, 467 U.S. 914-20 (1984)(Appointed counsel who conspires with state officials to deprive his client of constitution Rights found to have "Acted" under the color of State law.) Plus, Appellate Counsel Lieu T. Vo Clark for not addressing this on her appeal brief, we must base them on Ineffective Assistance of Counsel, I humbly petition your Honorable Court to review. See **DELGADO vs. LEWIS**, 223 F.3d. 976, 980-82 (9th Cir. 2000)(counsel's failure to raise any arguable issue in appellate was Ineffective Assistance) and Supreme Court of the United States **LUIS MARIANO MARTINEZ**, Petitioner vs. **CHARLES L. RYAN**, Director Arizona Department of Corrections No. 10-1001 Argued Oct. 4, 2011; Decided March 20, 2012.

However, in another case *Coleman*, counsel's alleged error was on appeal from an initial-review collateral proceeding. Thus, his claim had been addressed by the state habeas trial court. This makes a key difference between initial-review collateral proceedings and other proceedings. Here, where the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise the ineffective-assistance claim, the collateral proceeding is the equivalent of a prisoner's direct appeal as to that *1312 claim because the state habeas court decides the claims merits, no other court has addressed the claim, and defendants "are generally ill equipped to represent themselves" where they have no brief from counsel (On the first trial appeal), and no court opinion addressing their claim. **HALBERT vs. MICHIGAN**, 545 U.S. 605, 617, 125 S.Ct. 2582, 165 L.Ed.2d 552. An Attorney's errors during an appeal on direct review may provide cause to excuse a procedural default. For if the Attorney appointed by the state is ineffective, the prisoner has been denied fair process and the opportunity to comply with the state's procedures

and obtain an adjudication on the merits of his claim. Without adequate representation on an initial-review collateral proceeding, a prisoner will have similar difficulties vindicating a substantial ineffective assistance at trial claim. The same would be true if the state did not appoint an attorney for the initial-review collateral proceeding. A prisoner's inability to present an ineffective assistance claim is of particular concern because the right to effective trial counsel is a bedrock principle in this nation's justice system.

Allowing a federal habeas court to hear a claim of ineffective assistance at trial when an attorney errors (or an attorney's absence) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that a collateral proceeding, if undertaken with no counsel or ineffective counsel, may not have been sufficient to endure that proper consideration was given to a substantial claim. It thus follows that, when a state requires a prisoner to raise a claim of ineffective assistance at trial on a collateral proceeding a prisoner may establish cause for a procedural default of such claim in two circumstances. Where the state court "did not" appoint counsel in the initial-review collateral proceeding for an ineffective assistance at trial claim, exactly similar to Mr. Lacayo's "first" trial no one was issued as an appellate attorney to his right to counsel within the appeal process. And where appoint counsel in the initial-review collateral proceeding, where that claim should have been raised, was ineffective under **STRICKLAND vs. WASHINGTON**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Whereas Appellate counsel Lieu T. Vo Clark withheld vital information of ineffective assistance at trial counsel claims, on the second trial issues, plus to overcome the default, a prisoner must also demonstrate that the underlying ineffective assistance at trial claim is substantial. Most jurisdictions have procedures to ensure counsel is appointed for substantial ineffective assistance claims. It is likely that such attorney's are qualified to perform, and do

76

perform, according to prevailing professional norms. And where that is so, states may enforce a procedural default in federal habeas proceedings. Pp. 1315-1319.

The Petitioner believes there are exceptions to rule of the holdings: **THE SUPREME COURT JUSTICE KENNEDY HELD THAT:**

(1) Inadequate assistance of counsel at initial-review collateral proceedings "may" establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.

(2) Antiterrorism and Effective Death Penalty Act (AEDPA) did not bar Petitioner from using ineffective assistance of his post-conviction attorney to establish cause for his procedural default, and

(3) Remand was required whether Petitioner's underlying Ineffective Assistance of Counsel claim was substantial and whether Petitioner was prejudiced.

The Twenty-Second Judicial District Court also stated, "The First Circuit Court of Appeal had addressed Ineffective Assistance of Counsel Claims before on Appeal, which is rarely done."

However, those claims are more appropriate with a post-conviction relief application since it is more equipped for the required attorney's response as to an investigation within an evidentiary hearing.

FURTHERMORE, THE **"AMENDED"** POST-CONVICTION RELIEF APPLICATION HAD DIFFERENT ISSUES OF VIOLATIONS THAT WERE NOT LITIGATED ON APPEAL, AND SINCE NO ONE OBJECTED TO THE LEADING OF THE WITNESS AT THE APPROPRIATE TIME BECAME MORE APPLICABLE WITHIN A POST CONVICTION RELIEF.

As an example the assumption that the Twenty-Second Judicial district Court thinks it can make a defense for Attorney Frank G. Desalvo is absurd as seen in the preposterous argument as stated below:

"A review of his experience and performance at trial demonstrates that he was ready, willingly, and able to launch an adequate defense given the over whelming evidence put forth by the State.

The Petitioner is now declaring how come the Trial Court can make a ridiculous and ludicrous evaluation on behalf of attorney Frank G. Desalvo when Mr. Lacayo's hired attorney Desalvo had admitted and/or confessed since he had no opportunity to go through the pro se motions with his client Mr. Lacayo as stated below on the appeal records pages 373 thru 375.

Page 373

(25) Mr. DeSalvo
(26) "Mr. Lacayo is "CORRECT" in what he
(27) does tell me, your honor, that he filed
(28) these motions and "He HAS NOT HAD the
(29) opportunity to go through them with me."
(30) So I have reviewed them, though, at my
(31) office, but I'm NOT SURE what he would
(32) want to argue which is beyond what's
Pg. 374
(1) contained in the Motions".
(2) I understand his request for a
(3) CHANGE OF VENUE, that issue, I believe
(4) normally goes to the ability to select and
(5) not select a jury.
(6) THE COURT
(7) Absolutely

(8) MR. DESALVO

(9) "But I DON'T KNOW what arguments Mr.

(10) Lacayo would like to make beyond that. I

(11) know that there are a lot of other things in

(12) the motion that - -"

(13) THE COURT

(14) Well, I can just - - and let's go

(15) ahead and address The Motion for Change of

(16) Venue that is before me right now, and I

(17) will address that.

(18) The only way that it would be

(19) appropriate in my eyes and the

(20) circumstances in this case to CHANGE VENUE

(21) is if we could not select a fair and

(22) impartial jury to hear the case. The only

(23) way for the court to determine wherever we

(24) can select a fair and impartial jury is to

(25) try and select one.

(26) So therefore, I am going to deny at

(27) this time the motion. I'm going to deny

(28) - -

(29) MR. LACAYO:

(30) This is not only - -

(31) THE COURT:

(32) Mr. Lacayo, let me complete what I'm

Pg. 375

(1) saying.

(2) MR. LACAYO:

(3) "We never had time to discuss this,

(4) Your Honor."

Indeed the Attorney Frank Desalvo <u>did not</u> even request the Trial Court for a proper recess to be able to discuss the issues with his client. It is incomprehensible to fathom as a result was not fully prepared to represent the sufficient presentation of facts that Mr. Lacayo's motions was submitted, one year before the second trial from the date of this Motion Hearing, <u>May 15, 2009</u>.

Mr. DeSalvo, attorney for the Petitioner violated Petitioner's constitutional rights under the Sixth amendment to the United States Constitution in that Counsel filed a Motion to Withdraw as Counsel, (which was never discovered, but counsel had informed the court of its filing), and counsel never brought forth and addressed the motions that had been presented to the Honorable Court through hearings and after the 2nd trial. Mr. DeSalvo had clear intentions of withdrawing from Mr. Lacayo's case, but Mr. DeSalvo was paid to represent Mr. Lacayo to the fullest of his ability, and it is to be reminded that counsel was there to represent Mr. Lacayo and any and all pleadings filed on behalf of Mr. Lacayo would in fact be those of Mr. DeSalvo, Mr. DeSalvo was in fact ineffective for trying to withdraw from the case prior to Mr. Lacayo to appear before the trial court. The Honorable Judge Crain of the 22nd Judicial District Court granted a Motion filed by Mr. Lacayo to have Mr. DeSalvo retained as counsel due to the fact there was no way possible that within the time frame that was set by the Honorable Court that Mr. Lacayo could hire another attorney and have his case reviewed and prepared for trial. Thus it became apparent that Mr. DeSalvo intentions was to relieve himself of his duties, and would have not refunded the money to Mr. Lacayo and left him empty handed by preparing and having to administer justice on his own. By counsel admitting before the Trial Court he had filed the Motion to Withdraw as Counsel and the Court allowing counsel to remain on the case by granting the Petitioner's Motion only gives great weight that Mr. DeSalvo's heart was not in this

case and he was not prepared to defend the Client in trial. The only thing he wanted was to dump this caseload on someone else instead of doing what he is governed to do according to the Cannon Laws that attorneys are subject to. Several of these Cannon laws were broken by Mr. DeSalvo revealing his intentions of not wanting to be part of this case, and by stating a Motion to Withdraw was entered and Attorney DeSalvo and Judge Crain enter into chambers and discuss the matter without informing his client as to not only his intentions but also of the fact he was not prepared for this trial and really could care less if the Petitioner was found guilty or not guilty. Mr. DeSalvo failed to appear at several hearing that were to be held: (See also; 398; 7-16)

a. March 25, 2008 – Hon. Raymond S. Childress, Div. "A" – Advised Counsel of Court Date

b. July 22, 2008 – Non-Hearing – Hon. Elaine W. DiMiceli, Div. "F" – Motion of Recusal of Judge Raymond Childress

c. July 23, 2008 - Hon. Elaine W. DiMiceli, Div. "F" – Motion of Recusal of Judge Raymond Childress

d. August 6, 2009 – Hon. Judge William J. Crain – Div. "G" – Sentencing Hearing

e. September 28, 2009 - Hon. Judge William J. Crain – Div. "G" – Sentencing and Multiple Bill Arraignment

f. October 12, 2009 – Hon. Martin E. Coady – Div. "F" – Motion of Recusal of Judge William J. Crain

g. October 13, 2009 - Hon. Martin E. Coady – Div. "F" - Motion of Recusal of Judge William J. Crain

h. November 20, 2009 - Hon. Judge William J. Crain – Div. "G" – Multiple Offender Arraignment

Moreover, notice client Mr. Lacayo would have released his attorney, Mr. DeSalvo, of his services if he could have received a portion of the refund back, or have enough time to be able to have another attorney. The statements below were stated three days before the 2nd trial on May 15, 2009. **(SEE ALSO; 398, 17-16) MR. LACAYO:** (18) Now, **I would have released him** (19) **before if we would have has enough time.** (20) But he brought it to the last minute (21) which I couldn't have receive my money to (22) which be able to hire another, because (23) there were things, "**All these motions** (24) **should have been addressed that wasn't** (25) **addressed"** (26) So on actuality, I was not happy with his representation, but I decided (27) you know; **(AT THIS MOMENT)** that I had to go (28) with him.

Subsequently, Mr. Lacayo not only informed the Trial Court of his dissatisfaction with his attorney; Mr. Lacayo also revealed to the Trial Court his constant problem with the attorney through the Trial Court by written letters Pg. 169-170 and several motions including Pg. 280-28, and verbally within actual Trial Court hearing before and after the 2nd trial, however; this information is so vitally important to the Trial Court to know the reason why Mr. Lacayo submitted into the court records a Motion to Continue with hired counsel, Pg. 161-162, which also provided to prove the illegal removal of the Trial Court documents of **"The Motion to Withdraw As Counsel"** and it has support the confirmation of the information of the unabridged illegality of tampering and altering with document of records and transcripts and to reiterate by wrongfully discarding the filed Motion to Withdraw as Counsel, that attorney DeSalvo submitted.

However, take a very special notice by focusing in their statement on the verbatim record on May 15, 2009, at motion hearing that has proven the verities of the unequivocal factual confession of their illegal overt acts. **(SEE ALSO; 398; 7-16) FRANK DESALVO:** (8) I

"**HAD**" filed a motion thinking that he (9) wanted me to withdraw (10) **THE COURT:** (11) I know and "**WE ADDRESSED**" that at ----. (12) **MR. DESALVO:** (13) I was incorrect in interpreting what (14) he told me. (15) **THE COURT:** (16) that's fine.

**Atley vs. AWT**, 191 F. 3d 865, 875, (8th Cir. 1999) (Failure to make inquiry into potential confliction in representation at trial level deprived defendant of right to counsel, an error to which harmless error standard does not apply.)

In addition, these statements show some unlawful activities between Judge Crain and private Attorney, DeSalvo. Moreover, notice on the number eleven (11) they are missing words at the end of the sentence. Also, to reiterate there is "**NO RECORD**" of this "**MOTION TO WITHDRAW AS COUNSEL**" that counsel DeSalvo had admitted to filing and also Judge William J. Crain reconfirmed that they had a discussion that ensured about the issues relating to the motion at a previous time without his client or without any proper conference or discussion to withdraw or deny or grant the motion to withdraw counsel out of the proceeding in proper procedure in OPEN court properly, now it is as though the Motion to Withdraw as Counsel never existed. YET, UNTIL MR. LACAYO STATED SPONTANEOUSLY BEFORE THE JUDGE AND HIS PRIVATE ATTORNEY ADMITTED ON THE RECORD THAT MR. LACAYO QUOTED THAT STATEMENT BELOW: (Pg. 397; 25-32) (25) **THE COURT:** (26) Motion to Continue with hired (27) counsel, I'm going to allow him to (28) continue with hired counsel, (29) **MR. LACAYO:** (30) can I address one thing, Your Honor? (31) The only reason I put this motion in was (32) because Frank DeSalvo wanted to be. (Pg. 398; 1-6) (1) Released off the case for whatever reason (2) he felt. I didn't want this (3) **THE COURT:** (4) that's fine (5) **MR. LACAYO:** (6) all I wanted was ---

83

After the court and private attorney admitted to the Motion to Withdraw was submitted in the court records. Then Mr. Lacayo stated on the records that he quoted:

(pg. 398; 17-19) (17) **MR. LACAYO: (18) Now, I would have released him (19) before if we would have had enough time.**

The reason Mr. Lacayo gave addition explanation was he decided at the time to go with Mr. DeSalvo, so since they were double teaming and confusing him, subsequently, then Mr. Lacayo pell-mell explained something to try to bring them out to defend themselves on the records, because he knew they were doing something illegal by trying to avoid that Motion to Withdraw as Counsel as a result they accidently forgot that they had illegally discarded the motion entirely from the record to deny Mr. Lacayo the Constitutional Rights to withdraw as counsel. The Judge Crain and the Private Counsel DeSalvo had then confessed within seconds later and tried to make a defense to protect themselves eventually left themselves WIDE OPEN stating that the Motion to Withdraw as Counsel, had been submitted from the defense attorney Mr. DeSalvo, and received by the Judge, Crain. Therefore it had become "**A TOTAL CONFESSION OF JUDGMENT ON THEIR OWN VOLUNTARY CONFESSION**" when mapped out through their own esoteric collusion consequently due to the three opponents the Judge William J. Crain, the Prosecutor Karen Middleton and his Private Attorney Frank G. DeSalvo.

Moreover, while also the Trial Court not knowingly verified through their rebuttals that had confirmed to the participation of the "ILLEGALITY OF THE DISCARDING OF THE MOTION TO WITHDRAW AS COUNSEL". "In fact, when addressing the truthfulness of the Attorney's desire that he <u>DID NOT</u> want to represent Mr. Lacayo and <u>SOUGHT TO</u>

84

WITHDRAW", the Court inadvertently released the evidence against themselves through the removal of the Motion to Withdraw out of the Records, by their own", CONFESSION OF JUDGMENT, that there was supposed to be a Motion to Withdraw as Counsel submitted by counsel Frank G. Desalvo into the 22nd Judicial District Court.

Once again the Trial Court had continued to try to make a defense for Attorney DeSalvo's reasoning for providing denial of representation or failure to provide his client with a rightful and adequate protection when he intentionally failed to show up to the court on the initial date of non-continuance hearing on July 22, 2008, that Judge Childress signed off on May 15, 2008, and that divulge the real evidence on the back of the first recusal Motion and the proof of the "Minutes" that the continuance hearing of July 1, 2008 shown the date moved to July 22, 2008, and the "Illegal Hearing" altogether has reestablished the credibility's of Mr. Lacayo's presentation of facts are exactly as the material and recommendation of substantial evidence that proves that Rule 2.1 C.R. Rule 3.1 is valid rebuttals to use due to the substantial weight of the evidence against Mr. Lacayo's hired attorney Mr. Frank G. Desalvo.

The Petitioner indicates that the manifestation of the court's assessment to the lawyer Desalvo had reasonably conclusion that most of the pro-se motions had no merit is crazy and insane to believe.

The Trial Court also stated that the Petitioner asserted that Desalvo actually assisted the State in not objecting to photographic evidence being presented. The Trial Court also stated the "photos" were those of the "scene" and their admission did not prejudice Petitioner.

**THE PETITIONER WILL CLARIFY "OPENLY" THAT THE PHOTO BEING DISCUSSED WAS NOT OF THE ACTUAL "SCENE" OR "DATE" OR "TIME" OF THE "INCIDENT".** It was of the location taken by Desalvo himself and not by investigating

officers and of the noon hours of the day as a result did prejudice the Petitioner's case because the Officer Kevin Simon committed perjury when lead by the Assistant District Attorney, Mrs. Karen G. Middleton as she wrongfully guided the testimony of the Officer without the Private Attorney's objection to the leading testimony and while doing it she changed photos to make her pre-mediated plan to underhandedly execute the obscuring of the previous statement **"Dark"** of the night of the incident, which obviously could have changed the minds of the jurors to the credibleness of the other alleged witnesses statement gave a false notion that the witnesses were able to see clearly the night of the "accident", it had relentlessly violated Mr. Lacayo's case of a "Fair and impartial second trial which unfairly orchestrated the trial proceeding and contaminated the whole second case. Lets not forget with assistance of Mr. Lacayo's own attorney without his help could have never happen since Mr. Lacayo's defense lawyer Desalvo actually assisted the State when providing his own unfit "<u>photos</u>" and did not object to the irrelevant depiction of the location now being present by the prosecutor and through Mr. DeSalvo's own consciousness failed to object or cross-examine after the prosecutor lead Officer Simon's statement and which has now back fired on their whole plan to get away with those Monstrosity of Illegal Acts.

Lastly, the Trial Court has stated; "Petitioner alleges that Farmer and his associate Fred Daigle were Ineffective in failing to give Notice of Appeal"

Mr. Ghazir Lacayo was denied effective assistance of counsel in that trial counsels, Mr. Marion B. Farmer and Mr. Fred Daigle failed to either give Notice of Intent to Appeal or to perfect an appeal on behalf of Mr. Lacayo or advise Mr. Lacayo of his rights to appeal during the 1st trial thus effectively abandoning Mr. Lacayo's appellate rights because *1317 where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a

claim of ineffective assistance at trial, the collateral proceedings is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim. This is because the state habeas court :looks to the merits of the clai[m]" of ineffective assistance, no other court has addressed the new claims of two first trial attorneys and one second trial attorney Double Jeopardy issues, failure to give notice of intent to appeal on first trial issue and failure to object leading of the witness on the second trial and allowing irrelevant photo of a different day or time of the location: defendants pursuing first-tier review … are generally ill equipped to represent themselves because they do not have brief from counsel or an opinion of the court addressing their claim of error. **HALBERT V. MICHIGAN,** 545 U.S. 605, 617, 125 S.Ct. 2582, 162 L.Ed. 2d 552 (2005): See **Douglas,** 372 U.S., at 357-358, 83 S.Ct. 814.

[s] As Coleman recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the state's procedures and obtain an adjudication on the merits of his claims. See, 501 U.S. at 754, 11 S.Ct. 2546; **Evitts v. Lucey,** 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed. 2d 821 (1985); **Douglas** supra. at 357-358, 83 S.Ct. 814. Without help of an adequate attorney, a prisoner will have similar difficulties vindicating a substantial ineffective assistance of trial counsel claim. Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective assistance of trial counsel claim in an initial-review collateral proceeding cannot rely on a court opinion or the prior work of an attorney addressing that claim. **Halbert,** 545 U.S. at 619, 125 S.Ct. 2582. To present a claim of ineffective assistance at trial in accordance with the state's procedures, then a prisoner likely needs an effective attorney. (1) The

same could be true if the State did not appoint an attorney to assist the prisoner in his initial-review collateral proceedings. The prisoner, underlearned in the law, "may not comply with the state's procedural rules or may misapprehend the substantive details of federal constitutional law." Ct., e.g. Id. At 620-621, 125 S.Ct. 2582 (describing the educational background of the prison population) While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often on evidence outside the trial record.

[6] [7] A prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel. The right to the effective assistance of counsel at trial is a bedrock principle in our justice system. It is deemed as an "obvious truth" the idea that "any person hauled into court, which is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." **Gideon v. Wainwright**, 372 U.S. 335, 344, 83 S.Ct. 792 , 9 L.Ed. 2d 799 (1963). Indeed, the right to counsel is the foundation for our adversary system. Defense counsel tests the prosecutor's case to ensure that the proceedings serve the function of adjudicating guilt or innocence, while protecting the rights of the person charged. See, e.g. **Powell vs. Alabama**, 287 U.S. 45, 68-69, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ("[the defendant] requires the guiding hand of counsel at every step in the proceeding against him. Without it, though he not being guilty, he faces the danger of conviction because he does not know how to establish his innocence"). Effective trial counsel preserves claims to be considered on appeal, see e.g. *1318 Fed. Rules Crim. Proc. 52 (b), and in federal habeas proceedings, **Edward vs. Carpenter**, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed 2d 518 (2000). This is not to imply the State acted with any impropriety by reserving the claim of ineffective assistance for collateral proceeding. See **Mason vs. United States**, 538 U.S. 500, 505, 123

S.Ct. 1690, 155 L.Ed 2d 714 (2003). Ineffective assistance claims often depend on evidence outside the trial record. Denied appeal, <u>without evidentiary hearings, may not be as effective as other proceedings for developing the factual basis for the claim</u>. Ibid. Abbreviated deadlines to expand the record on direct appeal may not allow adequate time for an attorney to investigate the ineffective assistance claim. See Primus, Structural Reform in Criminal Defense, 92 **Cornell** L. Rev. 679, 689, and n. 57 (2004) (most rules give between <u>5</u> and <u>30</u> days from the time of conviction to file a request for deferring consideration of ineffective assistance of trial counsel claims until the collateral review stage, but this decision is not without consequences for the State's ability to assert a procedural default in later proceedings. By deliberately choosing to move that ineffectiveness claims outside of the direct appeal process, <u>where counsel is constitutionally guaranteed</u>, the State significantly diminishes prisoner's ability to file such counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for procedural default.

[8][9][10] The rule for when a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of the court's discretion. **McClesky vs. Zant** 499 U.S. 467, 490, 11 S.Ct. 1454, 113 L.Ed. 2d 517 (1991); see also **Colman**, supra. At 730-731, 11 S.Ct. 2546; **Sykes**, 433 U.S. at 83, 87 S.Ct. 2497; **Reed vs. Ross**, 468 U.S. 1, 9, 104 S.Ct. 1901, 82 L.Ed. 1 (1984); **Fay vs. Noia**, 372 U.S. 391, 430, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963), overruled in part by **Sykes**, supra. These rules reflect an equitable judgment that only where a prisoner is <u>impeded</u> or <u>observed</u> in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default. See, e.g., **Stricker vs. Greene**, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed. 2d 286 (1999); **Reed**, supra, at 16, 104 S.Ct. 2901. Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an

attorney errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding, (1) If undertaken without assistance on appeal on first trial counsel or (2) with ineffective assistance on appeal on second trial counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From that it follows that, with a State requires a prisoner to raise an ineffective assistance of trial counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective assistance claim in two circumstances. The first is where the State courts did not appoint counsel in Mr. Lacayo's case, in the initial-review collateral proceeding for a claim of ineffective assistance at the 1st trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective within the 2nd trial and appellate counsel Liew T. Vo Clark was ineffective assistance. Under the standards of **Strickland vs. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit,  ct. *1319 **Miller-El vs. Cockrell**, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed. 2d 931 (2003) (describing standards for certificates of appealability to issues.) Most jurisdictions have in place procedures to ensure counsel is appointed for substantial ineffective assistance claims.  Some states, including Arizona, appoint counsel in every first collateral proceeding. See, e.g. Alaska at 18, 85, 100 (c) (2010): Ariz. Rule Crim. Proc. 32.4 (c) (2) (2011); Conn. Gen. Stat. sec. 51-296 (A) (2011); Me. Rules Crim. Proc. 69, 70 (c) (2010); N.C. Gen. Stat. An sec. 7A-451 (A) (2) (2009); N.J. Ct. Rule 3:22-6 (b) (2012); R.I. Gen. Laws sec. 10-9, 1-5 (Lexis 1997); Tenn. Code Ann. sec. 8-14-205 (2011).  Some States appoint counsel if the claims require an evidentiary hearing, as claims of ineffective assistance often do.  See, e.g. Ky. Rule Crim. Proc. 11.42 (s) (2011); LA.

Code of Crim. Proc. Ann. Art. 930.7 (c) (west 2008); Mich. Rule Crim. Proc. 5.505 (A) (2011);

S.C. Rule Civ. Pro. 71.1 (d) (2011).  Other States appoint counsel if the claims have some merit

to them or the State habeas trial court deems the record worthy of further development.  See, e.g.

Ark. Rule Crim. Proc. 37.3 (b) (2011); Colo. Rule Crim. Proc. 61 (e) (1) (2011); Indiana Rule

Post-Conviction Remedies Proc. 1, sec. 9 (A) (Rev. 2011); Kan. Stat. Ann. 22-4506 (2007);

N.M. Dist. Ct. Rule Crim. Proc. 5-802 (2011); Hust vs. State, 147 Idaho 682, 683-684, 214 P. 3d

668, 669-670 (2009)' Hardin vs. Arkansas 350 Ark 299, 301, 86 S. W. 3d 384, 385 (2002) (per

curiam); Jensen vs. State, 20004 NP 200, 13, 688 N.W. 2d 374, 378; Wu vs. United States, 798

A. 2d 1083, 1089 (D.C. 2002); Kostal vs. People, 167 Colo. 317, 447 P. 2d 536 (1968).  It is

likely that most of the Attorneys appointed by the courts are qualified to perform, and do

perform, according to prevailing professional norms, and where that is so, the States may enforce

a procedural default in federal habeas proceedings.

See; **STRICKLAND vs. WASHINGTON**, 466 U.S. 668 (1984)

The law is just as well settled that there is a Constitutional Right in Louisiana for an

appeal.  This right can only be waived by the defendant himself.  **STATE vs. MARCELL** 320

So 2d 195 (LA. 1975).  Further, any waiver of such right must be an informed one.  **ARRASITA

vs. UNITED STATES** 455 f. 2D 736 (C.A. 5 1974).  Finally, an Attorney must advise his client

of his appellate rights.  **LUMPKIN vs. SMITH,** 439 f. 2D. 1084 (C.A. 5 1971).

As mentioned above, both first trial counsels failed to give "either written or oral notice

of intent to file an appeal," nor did counsels perfect an appeal on Mr. Lacayo's behalf due to the

Double Jeopardy Issues, nor did Counsels, Mr. Marion Farmer or Fred Daigle, advise their client

of his Appellate Rights.  Failure to pursue appeal from a Criminal Mistrial through the **La. C.

Cr. Pro. Art. 775.1, "Automatic Stay following order of a mistrial,"** amounts to ineffective

assistance. **STATE vs. BIENEMY**, 483 So 2d 1105 (LA. App. 4th Cir. 1986) **STATE vs. SIMMONS**, 390 So 2d 504 (LA. 1980).

However, resuming back to Court rebuttals statement that they stated;

> "He failed to indicate what issue should have been appealed given that a mistrial had been granted."

The Trial Court is still treading water by trying to evade the main issues when reverting back to or putting so much emphasis on the ineffectiveness and that a mistrial had been granted is not the main issues and the Trial Court also concluded:

> "If Mr. Lacayo argument relates to the grant of the mistrial and that Petitioner suffered no prejudice in that Mr. Lacayo did not wish to represent himself at trial and Mr. Lacayo asked for additional time to retain other counsel. The granting of the mistrial gave Petitioner the relief Mr. Lacayo sought."

CONSEQUENTLY, THE TRIAL COURT HAS UNCEASINGLY AVOIDED THE ABANDONMENT ISSUE AND WITHOUT NEUTRAL COUNSEL ADVISEMENT AND PROPER LEGAL REPRESENTATION AND TWO EGREGIOUS PROSECUTORIAL MISCONDUCT ON THE, "**AMENDED**" POST-CONVICTION RELIEF APPLICATION THAT WAS ADDRESSED ON ONE AND THREE CLAIMS AND NUMBER THREE CLAIM IS "TITLED"

> "IN VIOLATION OF FAIR AND IMPARTIAL 2ND TRIAL AND CONVICTION AND SENTENCE OBTAINED IN VIOLATION OF THE UNITED STATES CONSTITUTION AMENDMENT VI, XIV, AND THE

LOUISIANA CONSTITUTION OF 1974 ARTICLE 1 §13 AND §16
"INEFFECTIVE COUNSEL".

As we can see the 22nd Judicial District Court intentionally "only" reviewed (1) thru (4) claims and the third claim on the original post conviction relief it was completely devoid of the supplemental presentation of facts included within each grounds (1) thru (4) issues and added two important additional grounds five and six. Furthermore, the claim two issues "also" addressed the Judicial Review of his first trial based of the Double Jeopardy Issues and Marion B. Farmer and Fred Daigle violated the Petitioner's Constitutional Rights, and Egregious Prosecutorial Misconduct violates under case law; **MANSON vs. MITCHELL**, 360, F. 635, (6th Cir. 2003) (The Prosecutor may not use improper methods calculated to produce a wrongful conviction when the use of such method "So it effects the trial with unfairness as to make resulting conviction a denial of Due Process. It will justify a reversal of the conviction) and when Lawyers co-conspire to illegally sabotage their own clients first and second trial proceedings violates under case law, See; **TOWER vs. GLOVER**, 476 U.S. 914-20 (1984) (Appointed or Private Counsel who conspires with the State Officials to deprive of his client's Constitutional Right to have "acted" under Color of State Law.)

Under Color of State Law of improper conduct by a State Official and under the Civil Right Act of 1871, anyone who has been deprived Federal Civil Rights under Color of State Law may sue the wrongdoer.

Mr. Lacayo has provided beyond reasonable doubt through Legal Laws that Mr. Lacayo is entitled for his **"AMENDED"** Post-Conviction Relief "be granted and remanded back to the 22nd Judicial District Court for an evidentiary hearing" on the "Ineffective Assistance" by

vacating and overturning Mr. Lacayo's 2nd trial "on the PROSECUTORIAL EGREGIOUS MISCONDUCT violation on the FAIRNESS OF THE TRIAL PROCEEDINGS.

Thereof, now Mr. Lacayo has provided to prove the Prosecutor's acts constitute egregious misconduct of Insurmountable evidence of Malfeasance in the Public Offense, on the Prosecutor, the Police, and Mr. Lacayo's Defense Counsel, <u>Frank G. DeSalvo</u>, by conspiring to cause Cruel and Unusual Punishment to Mr. Lacayo when he was never given "a <u>Fair</u> and <u>Impartial Trial</u>" that violated the equal protection – 14th Amendment Constitutional Right and committing Prosecutor Misconduct, Police Officer "Perjury," Ineffective Assistance of Counsel with Fraudulent Misrepresentation and INTENTIONAL OBSTRUCTION OF JUSTICE by conspiring to remove the motion to withdraw from counsel from the court's records!

Wherefore Premises Considered, Petitioner herein PRAYS that this **FEDERAL COURT** ought to find in favor of the Petitioner and issue appropriate remedial relief.


I. United States Supreme Court has held in 104 S.Ct. 2052, 466 U.S. 668, **Strickland v. Washington**, (U.S. Fla. 1984), A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components:  first, defendant must show that counsel's performance was deficient, requiring showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment and, second, defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is unreliable.

**United States Constitution Amendment VI**. Jury trials for crimes, and procedural rights

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

Mr. DeSalvo, attorney for the Petitioner violated Petitioner's constitutional rights under the Sixth amendment to the United States Constitution in that Counsel filed a Motion to Withdraw as Counsel, (which was never discovered, but counsel had informed the court of its filing), and counsel never brought forth and addressed the motions that had been presented to the Honorable Court through hearings and after the 2nd trial. Mr. DeSalvo had clear intentions of withdrawing from Mr. Lacayo's case, but Mr. DeSalvo was paid to represent Mr. Lacayo to the fullest of his ability, and it is to be reminded that counsel was there to represent Mr. Lacayo and any and all pleadings filed on behalf of Mr. Lacayo would in fact be those of Mr. DeSalvo, Mr. DeSalvo was in fact ineffective for trying to withdraw from the case prior to Mr. Lacayo to appear before the trial court. The Honorable Judge Crain of the 22nd Judicial District Court granted a Motion filed by Mr. Lacayo to have Mr. DeSalvo retained as counsel due to the fact there was no way possible that within the time frame that was set by the Honorable Court that Mr. Lacayo could hire another attorney and have his case reviewed and prepared for trial. Thus it became apparent that Mr. DeSalvo intentions was to relieve himself of his duties, and would have refunded the money to Mr. Lacayo and left him empty handed by preparing and having to administer justice on his own. By counsel admitting before the court that there was a Motion to Withdraw as Counsel from the case and the Court allowing counsel to remain on the case by

granting the Petitioner's Motion only gives great weight that Mr. DeSalvo's heart was not in this case and he was not prepared to defend the Petitioner in trial. The only thing he wanted was to dump this case load on someone else instead of doing what he is governed to do according to the Cannon Laws that attorneys are subject to. Several of these Cannon laws were broken by Mr. DeSalvo revealing his intentions when submitting the Motion to Withdraw as Counsel, and by stating a Motion to Withdraw was entered and Judge Crain enter into his chambers and discuss the matter without informing his client as to not only his intentions but also of the fact he was not prepared for this trial and really could care less if the Petitioner was found guilty or not guilty. Mr. DeSalvo failed to appear at several hearing that was to be held:

1. March 25, 2008 – Hon. Raymond S. Childress, Div. "A" – Advised Counsel of Court Date

2. July 22, 2008 – Non-Hearing – Hon. Elaine W. DiMiceli, Div. "F" – Motion of Recusal of Judge Raymond Childress

3. July 23, 2008 - Hon. Elaine W. DiMiceli, Div. "F" – Motion of Recusal of Judge Raymond Childress

4. August 6, 2009 – Hon. Judge William J. Crain – Div. "G" – Sentencing Hearing

5. September 28, 2009 - Hon. Judge William J. Crain – Div. "G" – Sentencing and Multiple Bill Arraignment

6. October 12, 2009 – Hon. Martin E. Coady – Div. "F" – Motion of Recusal of Judge William J. Crain

7. October 13, 2009 - Hon. Martin E. Coady – Div. "F" - Motion of Recusal of Judge William J. Crain

8. November 20, 2009 - Hon. Judge William J. Crain – Div. "G" – Multiple Offender Arraignment

Mr. DeSalvo even went further when he appeared before the court May 15, 2009, (pg. 375, 17-27-32, pg. 376, 18, 1-32, pg. 377 19, 1-19, pg. 377 19, 19-32, pg. 379, 380, 381, 382, 383, 384)   These clearly show that the court was addressing the "**CHANGE OF VENUE MOTION**" and a Oral Motion to Quash the Indictment based off the illegal hearing and the fact that the judge denied the Motion to Recuse between Judge Childress and Judge DiMiceli. Mr. DeSalvo danced around the entire issue and STILL NEVER ADDRESSED THE FACT OF THE CHANGE OF THE HEARINGS FROM JULY 22, 2008 TO JULY 23, 2008 AND MOVING IT TWO DOCKETS EARLIER IN THE MORNING OF JULY 23, 2008. Furthermore the Honorable Judge Crain and Mr. DeSalvo in the issue of criminal conspiracy dealing with the moving of pertinent records, the Motion to Withdraw as Counsel". Withholding this vital part of the record clearly is sufficient for proving that counsel wanted nothing more from this case but to withdraw, instead through the coercion of the Judge and the plan to work together Mr. DeSalvo cahoots a plan to work with the court an have the Petitioner convicted and multiple billed. To gather even further a Motion to Recuse the Honorable Judge William J. Crain was entered and heard by the Honorable Judge Martin E, Coady.

When the Petitioner was billed as a multiple offender, the Petitioner appeared before the Honorable Judge William J. Crain the same Judge who the recusal was filed against. The Petitioner was subject to an enhancement of his sentence before a Judge that held a vendetta against him for the filing of this Motion and was in cahoots with his Attorney DeSalvo by removing the Motion to Withdraw as Counsel illegally and the court has **NO** record of the Motion to Withdraw as Counsel. Counsel knew this and allowed this to take place. Counsel performance prejudice the Petitioner and Petitioner was handed over to the court by his attorney for prosecution and sentence without clear representation therefore violating the Petitioner's

Constitutional Rights under the **VI, XIV Amendment to the United States Constitution and the Constitution of 1974, La. Article 1 Section 13, AND 16**.

II. Mr. DeSalvo even assisted the prosecuting attorney in the admittance of irrelevant photo of the location. During Direct Cross Examination of the State's witness (Sergeant Kevin Simon) the prosecutor (Karen G. Middleton) questioned the officer concerning photographs taken by Attorney Frank DeSalvo of the location (rec. 562, 19-32). Officer Simon testified as following to the prosecution of the questioning of the prosecutor, "…and I'm looking at it now, (Exhibit 2) Which I believe Counsel has no objection going into evidence in this case" Counsel, Mr. DeSalvo stated, "I have none. In fact I blew it up". Counsel for the Petitioner assisted the prosecution in the admittance of the daytime photo and not only did not object to the irrelevant photo. The Petitioner verifies that Officer Simon testified (specifically) that the area of the place of the incident was "Dark". The prosecutor succeeded to cover up Officer Simon's statement the "It was Dark" in the area of June 2006. When the prosecutor re-questioned Officer Simon as the word being "Dark", Prosecutor Middleton stated, "so is that the car as it appeared when you pulled into the parking lot that day?, Officer Simon replied, "Yes Mam", Prosecutor then stated, "and again I'm going to ask that you take a look at Number 5 and tell us what it is that depicted in that Photograph? Officer Simon stated, "the front part here is my police unit that's Mr. Lacayo's truck, and that's Ms. Lacayo's vehicle, this car you showed me here, Prosecutor Middleton stated, "So when you are referring to the truck belonging to Mr. Lacayo you were referred to the "Black or Dark" as it appears vehicle in the right side of that photograph is that correct, Officer Simon stated, "Yes". The prosecutor accomplished to alter and conceal the true meaning of Officer Simon's statement. Mr. Desalvo violated the Petitioner's constitutional rights by failing to object to the questioning of the prosecutor by leading the witness in his

statements.  Instead Attorney, Mr. DeSalvo allowed this testimony to take place without re-questioning or cross-examine the Officer.

SIMILARLY, IF COUNSEL ENTIRELY FAILS TO SUBJECT THE PROSECUTION'S CASE TO MEANINGFUL ADVERSARIAL TESTING, THEN THERE HAS BEEN A DENIAL OF SIXTH AMENDMENT RIGHTS THAT MAKES THE ADVERSARY PROCESS ITSELF PRESUMPTIVELY UNRELIABLE.  NO SPECIFIC SHOWING OF PREJUDICE WAS REQUIRED IN **DAVIS V. ALASKA**, 415 U.S. 308, 94 S.CT. 1105, 39 L.ED.2D 347 (1974), BECAUSE THE PETITIONER HAD BEEN "DENIED THE RIGHT OF EFFECTIVE CROSS-EXAMINATION" WHICH " 'WOULD BE CONSTITUTIONAL ERROR OF THE FIRST MAGNITUDE AND NO AMOUNT OF SHOWING OF WANT OF PREJUDICE WOULD CURE IT.' " ID., AT 318, 94 S.CT., AT 1111 (CITING **SMITH V. ILLINOIS**, 390 U.S. 129, 131, 88 S.CT. 748, 749, 19 L.ED.2D 956 (1968), AND **BROOKHART V. JANIS**, 384 U.S. 1, 3, 86 S.CT. 1245, 1246, 16 L.ED.2D 314 (1966),  (FN26) 104 S.CT. 2039, 466 U.S. 648, **U.S. V. CRONIC**, (U.S. OKLA. 1984).

Mr. DeSalvo's failure to object and re-cross-examine the officer and his performance in this case prejudice the Petitioner and warrant a new trial in this case.  The Ineffective Assistance of Counsel goes further to show that counsel(s) from the first and second trials for the Petitioner yet by failing to do so abandoned the Petitioner's Appeal rights and violated the Petitioner's Constitutional Rights and the right to Judicial review of his trials, in addition the 2nd trial attorney Frank G. DeSalvo failure to submit a Motion to Quash the Indictment based off the Double Jeopardy issue violates the right to Effective Assistance of Counsel Claims.

Mr. Lacayo has met the two-prong test in supra Strickland v Washington, counsels for the Petitioner prejudice Mr. Lacayo, and his performance was well below the standard of ethical conduct.

Furthermore the 2nd trial prosecutor, Ms. Karen Middleton deliberately orchestrated the cover-up by concealing the true meaning of being dark the night of the incident when leading the Officer Simon as to Ms. Middleton re-questioning in another form as a result of her changing the photos from Exhibit 2 and 5.

The prosecutor Ms. Middleton committed prosecutorial misconduct against the Petitioner when that conduct is alleged to be both deliberate and persuasive and "when it's impact distracts trier of fact, and thus raises doubts as to fairness of trial," 307 F. 3d 36, Marshall v. Hendricks, C. C. A. 3 (N.J.) (2002).

Prosecutorial misconduct cannot give rise to a constitutional claim, "unless the prosecutor's acts constitute egregious misconduct," **U.S.A. Const. Amend. 14**, 322 F. 3d, **Miranda v. Bennett**, (C.A. N.Y.)(2003), **Donnelly v. DeChristifiano**, 416 U.S. 637, 647-48, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).

In reviewing a claim of prosecutorial misconduct, Court of Appeals reviews the claim to determine whether the trial conduct so infected the trial with unfairness as to the make the resulting conviction a denial of due process.

U.S.A. Const. Amend. 5 therefore due to the prosecutorial misconduct by Ms. Middleton and 1st and 2nd trial deliberate misrepresentation.   Petitioner's case warrants an evidentiary hearing in this case for the facts presented herein.

**CLAIM #4**

## LA. C. CR. P. ART. 854, NEWLY DISCOVERED EVIDENCE; NECESSARY ALLEGATIONS, ACTUAL INNOCENCE OF THE PETITIONER, MR. LACAYO.

The Petitioner hereby invokes the authority of the claim of actual innocence that the Petitioner had attached hereto to this Application for Post-Conviction Relief an Affidavit that has been signed by Robert David Tate that clearly shows the Petitioner was set up and had no intent to the crime for which he was convicted of. The Affiant, Robert Tate states he was at the Daiquiri Shop with Ms. Lacayo and his girlfriend Nina Teano. He was invited to a businesses meeting with Ms. Lacayo and some of her close friends, her friends were David Richardson, Angel Doe, Steven Doe, Toney Doe, and John Doe. Steven was an insurance broker, Toney was a Slidell Police Officer, and David Richardson was and is the bartender. Angel is with the Clerk of Court at the time. Ms. Lacayo gave the statement in front of witnesses that when she was in court with her husband of thirteen years she had stated so many lies and that she thanked God for Toney who took care of the real witnesses to what had actually happened. Robert Tate then asked Ms. Lacayo what do you mean, and then Toney stepped up and stated no one actually saw what really happened except the parties across the street of the bar at the time of the incident. Then David stated, "Yeah" I knew the Detectives at the Police Department and that if they would assist Ms. Lacayo in having her husband, Mr. Lacayo locked up they would receive a nice size bar-tab.

Mr. Lacayo was set up by his spouse and her associates. The Petitioner claimed all along that he was actually innocent of the crime for which he is currently incarcerated for and this Affidavit entered into the record will prove that Mr. Lacayo was framed for a crime that he never intended to cause the accident. Ms. Lacayo lied in her testimonies and other parties involved assisted her in covering up the crime and to place Mr. Lacayo in prison, this was their

intentions and therefore the evidence was concealed and the testimonies given were fabricated in Mr. Lacayo's case and Mr. Lacayo was the victim in a plot to rid him of his freedom.

In contrast to the actual innocence claim asserted in Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203--that the execution of an innocent person convicted in an error-free trial violates the Eighth Amendment--Schlup's claim is accompanied by an assertion of constitutional error at trial: the ineffectiveness of his counsel and the withholding of evidence by the prosecution. As such, his conviction may not be entitled to the same degree of respect as one that is the product of an error-free trial, and his evidence of innocence need carry less of a burden. In Herrera, the evidence of innocence would have had to be strong enough to make the execution "constitutionally intolerable" even if the conviction was the product of a fair trial, while here the evidence must establish sufficient doubt about Schlup's guilt to justify the conclusion that his execution would be a miscarriage of justice unless his conviction was the product of a fair trial.

The Petitioner has produced evidence that has proven the prosecution withheld critical evidence and the allege Victim in this case, Ms. Lacayo had committed perjury and also concealed evidence and witnesses therefore depriving the Petitioner of a fair and impartial trial and therefore this actual innocence claim should be reversed and remanded for an evidentiary hearing.

The Trial Court has stated: in support of Mr. Lacayo fourth claim, Petitioner offer. The affidavit of Robert David Tate for the proposition that "witness perjured themselves at trial". The Trial Court also stated; that they have received the affidavit and finds that other than a mention of a meeting amongst friends and a statement Tate made to Stephanie Lacayo at that meeting the rest of affidavit is hearsay and therefore inadmissible.

Criminal Evidence Article 801; Definition A. (1) (2) B. C. D.

D. Statements which are NOT hearsay.  A statement is NOT hearsay if C.E. Art 801, (1) (a) (b) (2) (a) (b) (c) (3) (a) (b) (c) (4) (E).

The Petitioner will continue to reveal under these Louisiana Criminal Evidence Laws however, it permits through the affidavit by Contractor Robert David Tate that he had apparently came forward to notify the Court of the criminal conspiracy crimes, the fact that Mr. Tate could have been involved through the possibility of being an ACCESSORY AFTER THE FACT "If" Mr. Tate would NOT have brought this to LIGHT by his affidavit.  The Louisiana Laws asserts clearly aiding and abetting in its commission by accessories after the fact is any person who after the commission of a felony shall harbor, CONCEAL, or "AID TO THE OFFENDER" knowing or having reasonable ground to believe that they have committed the felony, and with the intent that they may avoid or escape from arrest, trial, conviction, or punishment.

As the **FEDERAL COURT** can obviously understand how it is vitally important for Mr. Tate to bring forth the real testimony and material audiotape that is stated in his sworn affidavit since it had become Mr. Tate's responsibility to inform the Trial Court of the culprits who had committed the Criminal Conspiracy and Hate Crimes Violation, whether Mr. Tate DID NOT directly commit the act constituting the offense and could have become a principal violation of the Louisiana State Laws for, "If", Mr. Tate DID NOT come forward he would have subjected himself to become involved into the criminal conspiracy and hate crimes due to Accessories After the Fact permitted under Louisiana Law, R.S. 14:24, 25, and 26, Principals, **ACCESSORIES AFTER THE FACT,** Criminal Conspiracy, so the rest of C.E. Art. 801, (1) (a) (b) (2) (a) (b) (c) (3) (a) (b) (c) (4) (E), allows the pertinent information of statement and

material evidence to be brought forward within an Evidentiary Hearing and/or Contradictory Hearing on the Newly Discovered Evidence and Criminal Evidence Laws.

### C.E. 802, Hearsay Rule

Hearsay is NOT admissible EXCEPT as otherwise provided by this Code or other Legislation.

As the **FEDERAL COURT** can re-review the affidavit of Robert David Tate clearly shows by documentary of real and material evidence of any of the numerous exceptions to the hearsay is deemed "**ADMISSIBLE**" usually because the circumstances under which the hearsay assertion was made are thought to provide reasonable assurance of its reliability, especially as shown on the affidavit through business transaction and business recorded records.

The affidavit reveals that Robert David Tate as a building contractor admitted to the discussion of building a house on a piece of property that was being owner financed through the landlord and about the estimation of cost to start the project of a custom home for Mrs. Lacayo and through obviously customary business practice for the purpose of proof of the existing agreement as a consequence the contractor Tate had heard and obtain the conversational recordings OF THE ALLEGED VICTIM SAYING HOW SHE LIED IN COURT.

Thereafter, the business conversation transformed, as stated by the contractor Tate that a "weird" conversation started, when Mrs. Lacayo open up by bragging as she barefaced divulge how she had lied several times at the courthouse to get her ex-husband convicted of a crime that Mr. Lacayo did not commit, and that the TWENTY SECOND JUDICIAL DISTRICT PROSECUTOR, Mrs. Karen G. Middleton had assisted Mrs. Stephanie Lacayo in the many lies about what had happen.

In addition to Mrs. Lacayo statements of guilt as there were at least five other friends of Mrs. Stephanie Lacayo who had also admitted to there involvement that they had assisted Mrs. Lacayo in her premeditated plan of the completion of their criminal offenses.

This monumental event was thoroughly caught on audiotape, and had now became a complaint to the Trial Court and is acceptable under the Louisiana Code Criminal Procedure Article; **854 Newly Discovered Evidence; Necessary Allegations.**

This Trial Court is also required by laws through, **C.E. Art. 801-806,** that the Court can accept this sworn affidavit and statement with the audio tape recordings into the Court for an Evidentiary Hearing and/or Contradictory Hearing.

The contractor's statements and audiotape evidence is **"ADMISSIBLE"** because it also states through the Criminal Evidence **Article; 803, Hearsay EXCEPTIONS; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declaring is available as a witness:

### (6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.

A memorandum, report, record, or data compilation, **IN ANY FORM,** including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, <u>a person with knowledge, if made and kept in the course of a regularly conducted business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness,</u> unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable, <u>unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under</u>

which the statement would not be excluded by the hearsay rule. The term "business" as used in this paragraph includes, Business, institution, association, 'profession' occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803 (8) (b) shall not qualify as an exception to the hearsay rule under this paragraph and including under;

**(7) ABSENCE OF ENTRY IN RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.**

Evidence that a matter is not included in the memoranda, reports, records, or data compilation, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved unless the sources of information or other circumstances indicate lack of trustworthiness.

(8) **Public Records and Reports.** (a) Records, Reports, Statements, or data compilations, IN ANY FORM, of a public office or agency setting forth:

(i)     Its regularly conducted and regularly recorded activities,

(ii)    Matters deserved pursuant to duty imposed by law and as to which there was a duty to report,

(iii)   Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.

(17)   **Market reports, commercial publications**. Market quotations, tabulations, lists, directories, are other published compilations, generally used and relied upon by the public or <u>by persons in particular occupations.</u>

In circumstance under which the statement or recording in any form would be excluded by the hearsay rule under **Art. 803. Hearsay exceptions; availability of declarant immaterial**

(8) **Public Records and Reports.**

(a) Records, Reports, <u>Statements</u>, or data compilations, <u>IN ANY FORM</u>, of public office or agency setting forth:

(b) Except as specifically provided otherwise by Legislation, the following are excluded from this exception to the hearsay rule: (i), (ii), (iii),

(iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation on which the present proceeding is based or an investigation into a similar occurrence or occurrences.

Since the Authority have been notified of the issues its now warrants a thorough investigation and possibly a state indictment charges against all the culprits who were involve and/or participated including the Assistant District Attorney due to the whole criminal conspiracy offenses that Mrs. Lacayo's friends had help orchestrated through numerous criminals acts.

The TWENTY-SECOND JUDICIAL DISTRICT COURT had received substantial documentary of real and material evidence against all the culprits who were involved in the conspiracy criminal offenses. Mr. Ghazir G. Lacayo also provided through his: Motion for Petitioner's Response the discussion after the **"ILLEGAL SENTENCE"** presentation of facts and the **La.C.Cr.P Art. 854**, dealing with the Contractor Tate's affidavit, and within Mr. Lacayo

**"AMENDED" UNIFORM APPLICATION POST CONVICTION RELIEF** that completely, replaced the original Post Conviction and that stated additional supplementary facts one thru four claims and change the claim four titled to the **La.C.Cr.P Art.854,** Newly Discover Evidence; necessary allegations, Actual Innocence of the Petitioner, Mr. Lacayo. The Trial Court still denied the merits under the hearsay ground even though the affidavit was sworn namely by a contractor in business within the St. Tammany Parish. YET, THE TRIAL COURT HAS IGNORED THE VIOLATION AT HAND OF THE CRIMINAL CONSPIRACY LAWS COMING FROM THE NOTORIOUS COURTHOUSE KNOW TO BE EXORBITANTLY HARD ON CRIME, and persisted to purposely deny the Hearsay Exceptional Rules of the Louisiana Laws.

Therefore, everyone listed on the affidavit is accepted for evidence under, **Art. 805, HEARSAY WITHIN HEARSAY**. Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements confirms with an exception to the hearsay rule provided by Legislation.

MOST IMPORTANTLY IT IS THE RESPONSIBILITIES OF THE 22ND JUDICIAL DISTRICT COURT TO SUBMIT THE SWORN AFFIDAVIT DUE TO THE EVIDENCE OF CRIMINALITY TO THE FORMER DISTRICT ATTORNEY OFFICE WALTER P. REED AND, SHERIFF RODNEY JACK STRAIN AND LOCAL POLICE DEPARTMENT FOR FURTHER INVESTIGATION INTO THE CRIMINAL OFFENSES THAT VIOLATES LOUISIANA STATE AND FEDERAL LAWS.

So, that is why there are so many reasons Mr. Lacayo's requisitioning for a Evidentiary Hearing is valid on the face of the records, and the case ought to be return to the 22nd Judicial District Court with an **"ORDER DEMANDING"** for an **"EVIDENTIARY HEARING"** on

The Interest of Justice through both documented Petitioners: Motion for Petitioner's Response, and the complete issues on the <u>one</u> thru <u>six</u> claims from the **"AMENDED" UNIFORM APPLICATION POST CONVICTION RELIEF** so that the Trial Court and  prosecutor and those listed on the affidavit can try defending themselves by attacking and/or supporting the creditability of the declarant and under **Criminal Evidence Art. 806.**

**CLAIM #5 AND 6**

**5. IN VIOLATION OF THE UNITED STATES CONSTITUTION, AMENDMENT V, VI, XIV, AND LOUISIANA CONSTITUTION OF 1974, ARTICLE 1 §13 AND 16, "PETITIONER FORCED TO RETAIN COUNSEL - NOT ENROLLED TO THE PETITIONER'S CASE, OR WITH PETITIONER'S LAWYER, OR NONE AT ALL".**

**6. IN VIOLATION OF A "FAIR AND IMPARTIAL 1ST AND 2ND TRIAL" AND EQUAL PROTECTION VIOLATION CAUSED THE CONVICTION AND SENTENCE OBTAINED IN VIOLATION OF THE UNITED STATES CONSTITUTION AMENDMENT V, VI, XIV, AND THE LOUISIANA CONSTITUTION OF 1974 ARTICLE 1 §13 AND §16. "BIAS JUDGES, FAILURE TO RECUSE THEMSELVES" .**

- August 6, 2009, Victim Impact Statement, pgs. 742-747, 764-767

- September 28, 2009, felony sentencing and multiple bill arraignment, court ordered this matter continued without date pending the Motion to Recuse (pro se) to be heard in Division F, Appeal record (p. 851)

- October 12, 2009, assignment for Motion to Recuse, Court ordered this matter continued to October 13, 2009, Appeal Record (p. 852)

- October 13, 2009, Motion to recuse; pgs. 770-774, and court at his time ordered this matter assigned for hearing on November 3, 2009, Appeal Record (p. 853)

- November 3, 2009, Hearing for Motion to Recuse, pgs. 1-11 and Motion to Recuse hearing heard, Appeal Record (p.854)

- November 20, 2009, hearing for Multiple Offender Bill, pgs. 777-786, state appointed counsel of record is completely fabricated, had **NO** counsel. The prosecutor was imitating as the State Appointed Counsel on record.

- December 3, 2009, Hearing for Multiple Bill Sentencing, pgs. 790-797, 812-814

- December 4, 2009 – Hearing for Sentencing – pgs. 821-823, 826-831, 836-837

"In the case of Mr. Lacayo's sentencing hearing on August 6, 2009, but the court forced a most likely current or previous New Orleans prosecutor to assist in the case as a state-appointed public defender upon Mr. Lacayo. In spite of his objection and thoroughly against Mr. Lacayo's right to counsel of choice.  Although the fill in defender Mr. Peter A. Irerandi objected to the hearing because of the absence of Mr. Lacayo's private attorney Frank G. DeSalvo. "The record clearly showed Mr. Lacayo was not present at the initial start of the hearing to inform Mr. Lacayo what was going on between the court and this unknown fill-in defender", and to Mr. Lacayo's awareness is that it's just another way to blindside the defendant of not knowing what was going on to hopefully cause Mr. Lacayo to be confused to the wrongful proceeding.  Let's be reminded that Mr. Lacayo was never introduced to this unknown fill-in defender when Mr. Lacayo was brought into the courtroom and without his knowledge who or what was going on as the court started the alleged victim impact statement.  That, Mr. Lacayo absolutely noticed they were deliberately sabotaging his sentencing hearing causing an unfair and partial hearing without his hired attorney and the two main character witnesses against the alleged victim. Mr. Lacayo's understanding to why Judge William J. Crain, Prosecutor Nick F. Noriea, fill-in-defender Peter A. Irerandi and his hired attorney Frank G. DeSalvo had concocted the illegal acts of collision was to prevent Mr. Lacayo's rights to have the character witnesses against the alleged victim and by the time the habitual hearings on December 3, 2009 to December 4, 2009 continued to

overload Mr. Lacayo with other issues as the Trial Court had previously done before on May 15, 2009, Motion Hearing.

Furthermore, the Honorable "Martin E. Coady", also proceeded to try to whitewash their unlawful acts of collusion in a different Motion to recuse the Judge William Crain after the 2nd trial on the date of Sept. 28, 2009, Oct. 12, 2009, Oct. 13, 2009 & Nov. 3, 2009.  The conspirator's tried to **WITHHOLD THE PROPER LEGAL ASSISTANCE**, of his rights to private attorney, but this time Mr. Lacayo caught on to their ILLEGAL ACTS OF CONSPIRACY, until Mr. Lacayo submitted pre-written motion to have a right to assistance of counsel, knowing full well they would probably try to make him litigate the motion himself. The Honorable Judge Coady stopped furthering their illegal acts, subsequently, Mr. DeSalvo refuse to litigate his clients Motion to Recuse Judge Crain within Judge Coady's courtroom, because of the collaboration between the Honorable Judge Crain and private Attorney DeSalvo for discarding and removing the Motion to Withdraw as Counsel proves with the assistance of Judge Crain's connection and non-records.

Although, there was not any unlawful moving as the Motion to Recuse the judge on July 22, 2008 and July 23, 2008 hearings.  Yet, the second recusal hearing in Judge Martin E. Coady courtroom still attempted clearly and it's evident of the attempts to hinder and obstruct any and all legal rights a citizen is entitled too.  In addition, Mr. DeSalvo had exacerbated and exasperated matter when he failed to show up three times on the second Motion to Recuse as a result of the Judge, the Prosecutor and Mr. Lacayo's private attorney participated in the "UNLAWFUL ACTS OF INCHOATE CRIMES".  The listed EIGHT TAINTED HEARINGS within Claims V and other hearings consistently show their modus operandi of constitutional violation that caused INEFFECTIVE ASSISTANCE OF COUNSEL by refusing to do his

111

client's Motion to Recuse Judge William J. Crain and/or litigating other Motions with insufficient defense, and the Honorable Judge Crain on other proceedings to force an unwanted state appointed counsel in place of private counsel, or refuse to change for new counsel, or denied counsel altogether.   This is why Mr. Lacayo had to present himself and put pro se motions without his attorney's assistance because the counsel of record, Frank G. DeSalvo was involved in the corruption of the whole entire court proceedings.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: <u>Judge William J. Crain, Prosecutor Nick F. Noriea, fill-in-defender Peter A. Irerandi, Attorney Frank G. DeSalvo and Judge Martin E. Coady,</u> **MOST IMPORTANTLY, BAILIFF TYSON SONNIER.**

Furthermore, The Common Law Rule, succinctly state in R. vs. Woodward [1944] K. B. 118, 119, [1944] 1 All E. R. 159, 160, has evidently always been that "<u>No person charges with a criminal offense can have counsel forced upon him against his will.</u>"   See **Halsbury [\*\*2537] Laws of England** p. 1141, pp. 624-625, (4th ed. 1973) **R v Maybury** 11 L. T. R. (N.S.) 566 (Q.B. 1865).

- August 6, 2009, Victim Impact Statement, pgs. 742-747, 764-767
- September 28, 2009, felony sentencing and multiple bill arraignment, court ordered this matter continued without date pending the Motion to Recuse (pro se) to be heard in Division F, Appeal record (p. 851)
- October 12, 2009, assignment for Motion to Recuse, Court ordered this matter continued to October 13, 2009, Appeal Record (p. 852)
- October 13, 2009, Motion to recuse; pgs. 770-774, and court at his time ordered this matter assigned for hearing on November 3, 2009, Appeal Record (p. 853)
- November 3, 2009, Hearing for Motion to Recuse, pgs. 1-11 and Motion to Recuse hearing heard, Appeal Record (p.854)

112

- November 20, 2009, hearing for Multiple Offender Bill, pgs. 777-786, state appointed counsel of record is completely fabricated, had **NO** counsel.  The prosecutor was imitating as the State Appointed Counsel on record.
- December 3, 2007, Hearing for Multiple Bill Sentencing, pgs. 790-797, 812-814
- December 4, 2007 – Hearing for Sentencing – pgs. 821-823, 826-831, 836-837

In sum, there is no evidence that the colonists and farmers ever doubted the right of self-representation or imagined that this right might be considered inferior to the right of assistance of counsel. To the contrary the colonists and the farmers, as well as their English Ancestors, always conceived of the right to counsel as an "assistance" for the accused, to be used an option. In defending himself. The farmers selected in the Sixth Amendment a formula of words that necessarily implies the right of self-incrimination.  That conclusion is supported by centuries of consistent history.

Where right to counsel is conceded by statutory and constitutional provisions of state, accused should be afforded fair opportunity to secure counsel of his own choice **(Code Ala.1923, § 5567;  Const.Ala.1901, § 6).**

Even the intelligent and educated layman has small and sometimes no skill in the science of law.  If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad.  He is unfamiliar with the rules of evidence.  Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible.  He lacks both the skill and knowledge adequately to prepare his defense, even though he has a perfect one.  He requires the guiding hand of counsel at every step in the proceedings against him.  Without it, though he is not guilty, he faces the danger of conviction because he does not know how to establish his innocence.  If that were true of men of intelligence, how much more true is it of the ignorant and

113

illiterate, or those of feeble intellect. <u>"If in any case, civil or criminal, a state or federal court</u> <u>were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it</u> <u>reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore,</u> <u>of due process in the constitutional sense."</u>

Thus, the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." **Anders v. California**, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted--even if defense counsel may have made demonstrable errors the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. As Judge Wyzanski has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." United States ex rel. **Williams v. Twomey**, 510 F.2d 634, 640 (CA7), cert. denied sub nom. **Sielaff v. Williams**, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975).

While the Court of Appeals purported to apply a standard of reasonable competence, it did not indicate that there had been an actual breakdown of the adversarial process during [466 U.S. 658] the trial of this case. Instead, it concluded that the circumstances surrounding the representation of respondent mandated an inference that counsel was unable to discharge his duties.

In our evaluation of that conclusion, we begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has

on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. See **United States v. Valenzuela-Bernal**, 458 U.S. 858, 867-869, 102 S.Ct. 3440, 3446-3447, 73 L.Ed.2d 1193 (1982); **United States v. Morrison**, 449 U.S., at 364-365, 101 S.Ct., at 667-668; Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).  Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, see **Michel v. Louisiana**, 350 U.S. 91, 100-101, 76 S.Ct. 158, 163-164, 100 L.Ed. 83 (1955), the burden rests on the accused to demonstrate a constitutional violation.  There are, however.

[466 U.S. 659] Most obvious, of course, is the complete denial of counsel.  The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.

Also held in 63 S.Ct. 236, 317 U.S. 269, **Adams v. U.S. ex rel. McCann**, (U.S. N.Y. 1942 The right to assistance of counsel and the correlative right to dispense with a lawyer's help. "In the case of Mr. Lacayo's sentencing hearing on August 6, 2009, but the court forced a most likely current or previous New Orleans prosecutor to assist in the case as a state-appointed public defender upon Mr. Lacayo. In spite of his objection and thoroughly against Mr. Lacayo's right to counsel of choice.  Although the fill in defender Mr. Peter A. Irerandi objected to the hearing because of the absence of Mr. Lacayo's private attorney Frank G. DeSalvo. "The record clearly showed Mr. Lacayo was not present at the initial start of the hearing to inform Mr. Lacayo what was going on between the court and this unknown fill-in defender", and to Mr. Lacayo's awareness is that it's just another way to blindside the Petitioner of not knowing what was going on to hopefully cause Mr. Lacayo to be confused to the wrongful proceeding.  Let us be

reminded that Mr. Lacayo was never introduced to this unknown fill-in defender when Mr. Lacayo was brought into the courtroom and without his knowledge who or what was going on as the court started the alleged Victim Impact Statement. Then Mr. Lacayo absolutely noticed they were deliberately sabotaging his sentencing hearing causing an unfair and partial hearing without his hired attorney and the two main character witnesses against the alleged victim as a result to this day the court had not sentenced Mr. Lacayo on the guidelines of one to fifteen years. The Court semi completed bypassing half the sentence part through incorporate the habitual sentence on December 4, 2009 and issued Mr. Lacayo a thirty (30) year sentence. Mr. Lacayo's understanding to why Judge William J. Crain, Prosecutor Nick F. Noriea, fill-in-defender Peter A. Irerandi and his hired attorney Frank G. DeSalvo had concocted the illegal acts of collusion was to prevent Mr. Lacayo's rights to have the character witnesses against the alleged victim just like the 2nd trial and by the time the habitual hearings on December 3, 2009 to December 4, 2009 continued to overload Mr. Lacayo with other issues as the Court had previously done before on May 15, 2009, Motion Hearing.

Moreover, the counsel provisions supplement this design. It speaks of the "Assistance of Counsel", and however expert is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant – not an organ of the state interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an [**2534] assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the

counsel the power to make binding decisions of this strategy in many areas. **Cf. Henry vs. Mississippi**, 379 U.S. 443, 451" **Brookhart vs. Janis**, 384 U.S. 1, 7-8, Fay vs. Noia 372 U.S. 391, 439.  This allocation can only be justified, however, by the defendant's consent, at the [*821] outset, to accept counsel as his Representative. An unwanted counsel "Represents" the defendant only through a tremendous and unacceptable legal fiction.  Unless the accused has acquiesced in such representation, the defense presented is not the defense, guaranteed [***574] him by the Constitution, for, in a very real sense, it is not his defense.  At the same time, the court has found no instance where a colonial court required a defendant in a criminal case to accept as his representative an unwanted lawyer.  Indeed, even where counsel was permitted, the general practice to continue to be self-representation.  Under these circumstances, to accept against his will a state-appointed public defender, the courts deprived him of the constitutional right to conduct his own defense.  Accordingly, the case before us ought to be vacated, and the case is remanded for further proceedings due to the court suggests that thrusting counsel upon the accused against his considered wish violates the logic of the Sixth Amendment because counsel is to be an assistant, not a master for the established principle that the interest of the State in a criminal prosecution, "IS NOT THAT IT SHALL WIN A CASE, BUT THAT JUSTICE SHALL BE DONE." **Berger vs. United States**, 295 U.S. 78, 88 (1935).  See also **Singer vs. United States**, 380 U.S. at 37.

It is held in 95 S.Ct. 2525, 422 U.S. 806, **Faretta v. California**, (U.S. Cal. 1975) that 'the Constitution [422 U.S. 815] does not force a lawyer upon a defendant.' Id., at 279, 63 S.Ct. at 242.  Whether the Constitution forbids a State from forcing a lawyer upon a defendant is a different question.  But the Court in Adams did recognize, albeit in dictum, an affirmative right of self-representation:

However, Hon. Raymond S. Childress, and the Hon. Judge William J. Crain, both were filed against to have themselves recused from the Petitioner's case. July 23, 2008 before the Hon. Elaine W. DiMiceli, Div. "F" a Motion of Recusal of Judge Raymond Childress was filed herein and October 13, 2009 before the Hon. Martin E. Coady of Div. "F" a Motion of Recusal of Judge William J. Crain was filed herein.

The 22nd Judicial District Court failed to have the Judges recused in this matter and to address the Motions that were filed herein. The Judges in the Petitioner's case were biased and prejudicial instead of adhering to the codified Laws of the State of Louisiana and the Cannon Laws of Judicial Conduct the Judges allowed the State to introduce evidence that was insufficient and allowed testimony that was collaborated and in a "nutshell", allowed the State to become vindictive towards the Petitioner and partake in the conspiracy to have the Petitioner prosecuted for a crime for which the Petitioner was actually innocent of. There was no crime committed here BY Mr. Lacayo, the judges collaborated with each other to have the Petitioner remain in the 22nd Judicial District Court by denying the "**CHANGE OF VENUE MOTION**", for if Venue had been granted then the Petitioner would not be here, where he is today, instead all the Judges collaborated to have prosecution initiated upon the Petitioner for freely exercising his rights during trial proceeding and tying to speak during trial and filing pro se Motions only to be shifted from one judge to another judge in the same Judicial District Court with the assistance of Mr. Lacayo's private lawyers unlawful acts of Malfeasance In Office and Obstruction of Justice and also committing "Inchoate Crimes".

The Petitioner's constitutional rights under the Sixth Amendment were clearly violated and the Petitioner's case based on the unfair and partial trials and violating the equal protection

rights through bias of the judge's judgment to the CHANGE OF VENUE should be reversed and the Petitioner released from the Louisiana Department of Corrections.

The Petitioner's case is plain to see for the Docket master of the Trial Court clearly shows that the Petitioner went through several judges in the 22nd Judicial Distinct Court before and after the prosecution was finally handed down and the Petitioner by being denied his right to a, "FAIR AND IMPARTIAL TRIAL", was subject to vindictive prosecution and biased judges working all together for one cause to prosecute the Petitioner, Mr. Lacayo.

The Petitioner's claims of being forced to retain counsel not enrolled to the Petitioner's case, or with Petitioner's lawyer, or none at all that are mentioned within the different hearings and has not been litigated on those grounds on appeal, and with additional dates that attorney Frank G. DeSalvo intentionally failed to show-up to Trial Court to collaborate with the "HIGH CRIME" to sabotage his own client's case is abuse of process clearly presented within Mr. Lacayo's presentation of facts.

The Trial Court states that Petitioner's arguments on his fifth claims are particularly difficult to sort out. The Trial Court made no attempt to investigate or address those issues knowing full well it has shown how bizarre and insane their decision making of how this TWENTY-SECOND JUDICIAL DISTRICT COURT operates out of the boundaries of the State Laws. Moreover, The Court also asserted; Mr. Lacayo apparently faults the Trial Court for appointing counsel at one point trial setting but at the same time argues that he entitled to representation. It is completely true that the Trial Court provided most likely an attorney namely from the state yet denied the right to counsel of choice since Mr. Lacayo had a private hired Counsel Frank G. DeSalvo and the Trial Court also denied Mr. Lacayo right to represent himself by denying Mr. Lacayo to take the stand because of Mr. Lacayo's attorney was not present at the

essential sentencing hearing to bring forth COUNTER IMPACT STATEMENT'S at the alleged Victim Impact Statement's Hearing on AUGUST 6, 2004, PGS. 742-747, 764-767. It is unbelievable for the Trial Court to make false accusation that there is no violation when the records entirely shows that the Trial Court would not allow Mr. Lacayo to take the stand on his own behalf because Mr. Lacayo's lawyer was not present should indicate how wrongfully the Trial Court decision of allowing either the state or a protégé from the law firm of Mr. Lacayo's hired attorney office would still be a denial of Due Process and Improper Assistance of Counsel and a denial to represent himself through the witness stand on an essential hearing.

(1) **Fulminate**, 499 U.S. At 310-311; Also;

(2) **McKaskle vs. Wiggins**, 455 U.S. 168, 177 N. 8 (1984) (denial of right to proceed pro-se not subject to harmless error analysis but requires reversal per se)

(3) **U.S. vs. Betancourt-Arretuche**, 933 F. 2d 89, 94 (1st Cir. 1991) ("denial of the Constitutional Right of Self-Representation constitutes more than harmless error.")

(4) **Wilson vs. Walker**, 204 F. 3d 33, 37 (2nd Cir. 2000) (denial of right to self-representation is not subject to harmless error analysis and thus requires automatic reversal.)

(5) **U.S. vs. Stubbs**, 281 F. 3d. 109. 120-21 (3rd Cir. 2002) (denial of right of self-representation is never subject to harmless error analysis.)

The Trial Court also states, On November 20, 2009, a hearing relative to the Habitual Offender Bill was called. Petitioner's Trial Counsel, Frank DeSalvo was not present and the Court appoint Peter Ierardi to stand and Petitioner asserts that "The prosecutor was imitating as the State Appointed Counsel of Records." Petitioner offers no proof of this assertion, which is false.

The Petitioner declares that this Trial Court and Prosecutors have indicted and convicted people with "ONLY" a sworn affidavit of an accuser but The Trial Court believes it can say since "The Petitioner Offers No Proof of This Assertion," which is false, and most likely the one

who is writing this rebuttals was not even present within The Habitual Offender Arraignment on November 20, 2009 and lets not forget Mr. Lacayo's attorney was once again not present. The Trial Court final analysis states that the Petitioner has failed to establish any prejudice resulted from the Court's appointment that day. The requisitioning would be that The **FEDERAL COURT** how many times can a hired attorney fail to show-up to Trial Court proceedings. For example, the two pre-trial hearings on the non-continuance of July 22, 2008, and the **"ILLEGAL HEARING"** of July 23, 2008, but showed up later after the hearing was over and several others namely on August 6, 2009, September 28, 2009, October 12, 2009, October 13, 2009, and November 20, 2009 and other before the Trial Court can find that the attorney has prejudice his client's pre and /or post trial proceedings or better yet when will the Trial Court issues a contempt of Trial Court charges against the Private Attorney Frank G. DeSalvo since Mr. DeSalvo refused to comply to the Trial Court's direct **"ORDERS"** to show-up as to the requirement to the person served not only to defend but also to produce specified documents or other physical evidence.

Indeed, it was only when Mr. Lacayo figured out that his counsel could be held on contempt charges that Mr. Lacayo invoked the right to petition the Trial Court on November 20,2009, for a CONTEMPT CHARGES on his own private attorney, consequently, the Trial Court had issued the CONTEMPT CHARGES against Counsel Frank G. DeSalvo.

In point of fact, the Trial Court has stated, the Petitioner was not adjudicated as second felony offender until December 4, 2009, when his retained Counsel Frank DeSalvo was present, but on December 3, 2009. THE TRIAL COURT CONTINUOUSLY FAILED TO SHOW HOW MR. LACAYO INVOKE HIS RIGHT TO RELEASE HIS PRIVATE ATTORNEY OF HIS SERVICES DUE TO RECEIVING A CONTEMPT CHARGES FROM THE TRIAL COURT

THAT WAS REQUESTED BY MR. DESALVO OWN CLIENT, MR. GHAZIR G. LACAYO, AS A RESULT DEFINITELY BECAME A CONFLICT OF INTEREST TO REPRESENT HIS CLIENT ANYMORE, and when the Trial Court denied Mr. Lacayo's Rights to Counsel of choice, at any time of the proceedings, that is required by State Laws amount to the violation to a FAIR AND IMPARTIAL HEARINGS and **"INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS."**

On the next day, December 4, 2009, the defense Counsel **OBJECTED** on the behalf of his client as to the requisitioning of yesterday petition is still desired, and wishes to comply to his client request to release himself from any obligation to Mr. Lacayo's case. It was still denied by Judge William J. Crain, yet he was the one who enforced the Contempt Charge in the first place on <u>November 20, 2009,</u> against Counsel DeSalvo through the adamant request of his own client.

So, when the Trial Court says that Petitioner has failed to establish any prejudice resulting from the Court's appointment that day is ludicrous because the violation clearly states the separate time: August 6, 2009, September 28, 2009, October 12, 2009, October 13, 2009, November 3, 2009, December 3, 2009 and December 4, 2009 due to the grounds of Petitioner forced to retain counsel not enrolled to the Petitioner's case, or none at all, or FORCED WITH A CONFLICT OF INTEREST OF LAWYERS!

Furthermore, Mr. Lacayo has shown and provided direct evidence through the **"AMENDED"** POST-CONVICTION RELIEF APPLICATION of supplemental and additional illegal acts committed against Mr. Lacayo when The Honorable "Martin E. Coady," also proceeded to try whitewash their unlawful acts of collusion in a different Motion to Recuse Judge William J. Crain after the 2ⁿᵈ trial on the date of <u>September 28, 2009, October 12, 2009, October13, 2009, and November 3, 2009.</u> The conspirators tried to withhold the assistance of

Legal Representation of His Rights To Private Attorney, but this time Mr. Lacayo caught on to their **"Illegal Acts"** of conspiracy and reveals the violation of the acts of **"INCHOATE CRIMES."**

The Petitioner has examine the records and realizes that his Attorney DeSalvo figured that by not showing up at several of these hearings while the Trial Court was committing these atrocities, Mr. DeSalvo would exculpate and exempt himself from any responsibility in fact Mr. DeSalvo only defense could be that he was not there so he could not know what was going on but the attorney failed to realize some of these unlawful acts only confirms that Counsel DeSalvo intentionally failed to show up on the INITIAL NON-CONTINUANCE-HEARING of July 22, 2008, and by presenting himself on the **"ILLEGAL HEARING"** of July 23, 2008, supposedly late reveals and proves Mr. DeSalvo was involved completely with the **"HORRENDOUS HIGH CRIMES"**. This supports and corroborates with the **"INCHOATE CRIMES"** presentation of facts by not showing up numerous time at these hearing stated previously within Judge "Martin E. Coady" Courtroom and even Judge Elaine W. Dimiceli and Judge William J. Crain Courtroom proves foul play.

Furthermore, the Honorable "Martin E. Coady" also proceeded to try to whitewash their unlawful acts of collusion in a different Motion to Recuse Judge William J. Crain after the 2nd trial on the date September 28, 2009, October 12, 2009, October 13, 2009, November 3, 2009. The conspirators tried to withhold hired legal assistance until Mr. Lacayo caught on their ILLEGAL ACTS OF CONSPIRACY AS THEY STILL COMMITTED INCHOATE CRIMES when trying to withhold counsel from several court proceedings. The eight-listed hearing and other hearings shows their modus operandi by the judges and the prosecutors and Mr. Lacayo's private attorney(s) participate in these illegal acts. This is why Mr. Lacayo had to represent

himself and submit pro se motions without his attorney's assistance because the counsel of record Frank G. DeSalvo was involved in the corruption of the whole entire court proceedings.

'The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms.  They rest on considerations that go to the substance of an accused's position before the law. . . .

'. . . What were contrived as protections for the accused should not be turned into fetters. . . . To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms.

'. . . When the administration of the criminal law . . . is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards . . . is to imprison a man in his privileges and call it the Constitution.' Id., at 279--280, 63 S.Ct. at 241--242.  (Emphasis added).

In other settings as well, the Court has indicated that [422 U.S. 816] a defendant has a constitutionally protected right to represent himself in a criminal trial.  For example, in **Snyder v. Massachusetts**, 291 U.S. 97, 54 S.Ct. 330, 78 L. Ed. 674, the Court held that the, "Confrontation Clause of the Sixth Amendment gives the accused a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence." This right to 'presence' was based upon the premise that the 'defense may be made easier if the accused is permitted to be present at the examination of jurors or, "the summing up of counsel, for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself."' Id., at 106, 54 S.Ct. at 332 (emphasis added). And in **Price v. Johnston**, 334 U.S. 266, 68 S.Ct. 1049, 92 L. Ed. 1356, the Court, in holding

that a convicted person had no absolute right to argue his own appeal, said this holding was in 'sharp contrast' to his 'recognized privilege of conducting his own defense at the trial.' Id., at 285, 68 S.Ct. at 1060.


The United States Court of Appeals has repeatedly held that the right of self-representation is protected by the Bill of Rights. In **United States v. Plattner**, 330 F.2d 271, the Court of Appeals for the Second Circuit emphasized that the Sixth Amendment grants the accused the rights of confrontation, of compulsory process for witnesses in his favor, and of assistance of counsel as minimum procedural requirements in federal criminal prosecutions. The right to the assistance of counsel, the court concluded, was intended to supplement the other rights of the defendant, and not to impair 'the absolute and primary right to conduct one's own defense in propria persona.' Id., at 274. The court found support for its decision in the language of the 1789 federal statute; in the statutes and rules governing criminal procedure, see 28 U.S.C. §1654, and Fed. Rule Crim. Proc. 44; in the many state constitutions that expressly guarantee self-representations [422 U.S. 817] and in this Court's recognition of the right in Adams and Price. On these grounds, the Court of Appeals held that implicit in the Fifth Amendment's guarantee of due process of law, "and implicit also in the Sixth Amendment's guarantee of a right to the assistance of counsel," is 'the right of the accused personally to manage and conduct his own defense in a criminal case.' 330 F.2d, at 274. See also **United States ex rel. Maldonado v. Denno**, 348 F.2d 12, 15 (CA2); **MacKenna v. Ellis**, 263 F.2d 35, 41 (CA5); **United States v. Sternman**, 415 F.2d 1165, 1169--1170 (CA6); **Lowe v. United States**, 418 F.2d 100, 103 (CA7); **United States v. Warner**, 428 F.2d 730, 733 (CA8); **Haslam v. United States**, 431 F.2d

362, 365 (CA9); compare **United States v. Dougherty**, 154 U.S. App. D.C. 76, 86, 473 F.2d 1113, 1123 (intimating right is constitutional but finding it unnecessary to reach issue) with **Brown v. United States**, 105 U.S. App. D.C. 77, 79--80, 264 F.2d 363, 365--366 (plurality opinion stating right is no more than statutory in nature).

This Court's past recognition of the right of self-representation, the federal-court authority holding the right to be of constitutional dimension, and the state constitutions pointing to the right's fundamental nature form a consensus not easily ignored. '(T)he mere fact that a path is a beaten one,' Mr. Justice Jackson once observed, 'is a persuasive reason for following it.' We confront here a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so.

The Court has uniformly found constitutional error without any showing of prejudice when counsel was either <u>totally absent,</u> or <u>prevented from assisting the accused during critical phase of the proceeding.</u> See e.g. **U.S. vs. Mated**, 950 F 2d. 44, 48 N. 8 (1st Cir. 1999) **Powell vs. Ala.**, 287 U. S. 45, 53 (1992), <u>"Right to Attorney of his choice is a basic right to a defendant within the American Judicial System"</u>

The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant--not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an Assistant, but a master; and the right to make a defense is stripped of the

personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. **Cf. Henry v. Mississippi**, 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408; **Brookhart v. Janis**, 384 U.S. 1, 7--8, 86 S.Ct. 1245, 1248--1249, 16 L.Ed.2d 314; **Fay v. Noia**, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837. This allocation can only be justified, however, by the defendant's consent, at the [422 U.S. 821] outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

However, Hon. Raymond S. Childress, and the Hon. Judge William J. Crain, both were filed against to have themselves recused from the Petitioner's case. July 23, 2008 before the Hon. Elaine W. DiMiceli, Div. "F" a Motion of Recusal of Judge Raymond Childress was filed herein and October 13, 2009 before the Hon. Martin E. Coady of Div. "F" a Motion of Recusal of Judge William J. Crain was filed herein.

The 22nd Judicial District Court failed to have the Judges recused in this matter and to address the Motions that were filed herein. The Judges in the Petitioner's case were biased and prejudicial instead of adhering to the codified Laws of the State of Louisiana and the Cannon Laws of Judicial Conduct the Judges allowed the State to introduce evidence that was insufficient and allowed testimony that was collaborated and in a "nutshell", allowed the State to become vindictive towards the Petitioner and partake in the conspiracy to have the Petitioner prosecuted for a crime for which the Petitioner was actually innocent of. There was no crime committed here BY Mr. Lacayo, the judges collaborated with each other to have the Petitioner

remain in the 22nd Judicial District Court by denying the "**CHANGE OF VENUE MOTION**", for if Venue had been granted then the Petitioner would not be here, where he is today, instead all the Judges collaborated to have prosecution initiated upon the Petitioner for freely exercising his rights during trial proceeding and tying to speak during trial and filing pro se Motions only to be shifted from one judge to another judge in the same Judicial District Court with the assistance of Mr. Lacayo's private lawyers unlawful acts of Malfeasance In Office and Obstruction of Justice and also committing "Inchoate Crimes".

The Petitioner's constitutional rights under the Sixth Amendment were clearly violated and the Petitioner's case based on the unfair and partial trials and violating the equal protection rights through bias of the judge's judgment to the CHANGE OF VENUE should be reversed and the Petitioner released from the Louisiana Department of Corrections.

The Petitioner's case is plain to see for the Docket master of the Trial Court clearly shows that the Petitioner went through several judges in the 22nd Judicial Distinct Court before and after the prosecution was finally handed down and the Petitioner by being denied his right to a, "FAIR AND IMPARTIAL TRIAL", was subject to vindictive prosecution and biased judges working all together for one cause to prosecute the Petitioner, Mr. Lacayo.

It is about time The Trial Court understands that the Petitioner has correctly set forth the Long Standing Application of the Recusal Articles when Mr. Lacayo cites *State v. Collins* **228, So. 2d.602, (LA.1974)** as requiring that "For an accused to be entitled to the recusation of a trial judge on the grounds of bias, prejudice and personal interest must be of a substantial nature based on more than mere conclusory allegation."

Here is where the Trial Court goes **"AWRY"** by stating the Petitioner's lengthy brief do nothing more than set forth his conclusions on how his proceedings should have result without

any supporting facts or legal analysis. Let's be reminded that the Petitioner is constrained to only having certain amount of pages on the Post Conviction Relief Application, yet Mr. Lacayo's Memorandum of Law in Support of the Application for Post-Conviction Relief had extensive and exorbitant amount of facts and legal analysis that are systematically intertwine of ONE THRU FOUR CLAIMS THAT SUPPORT FIVE AND SIX CLAIMS of the misappropriated acts of diaphanous collusion that snowballed way out of control.

Mr. Lacayo has not only proven Constitution Violation and how those rights have effect the outcome of each proceedings if thoroughly examine Mr. Lacayo whole **"AMENDED"** POST—CONVICTION ONE THROUGH SIX CLAIMS and the transcripts of the proceedings and if scrutinize the changed titled claims within each grounds as Mr. Lacayo will show right even here within **CLAIM SIX** that the Trial Court willfully ignored the issue of Judge Crain and Attorney DeSalvo collaborated with each other to have the Petitioner remain in the 22nd Judicial District Court by denying "THE CHANGE OF VENUE MOTION," for if VENUE had been granted then the Petitioner would not be here, where he is today, instead all the Judges collaborated to have persecution  initiated upon the Petitioner for freely exercising his rights during trial proceeding and not taking the deal that attorney DeSalvo stated in his letters of **TEN** years or from Mr. Lacayo first  attorney Marion B. Farmer offer of **SEVEN** years before Mr. Lacayo first trial. The Trial Court had an vendetta against Mr. Lacayo for trying to speak and defend himself when no one else would throughout his **FIRST AND SECOND** trial proceedings and for filing pre-se motion only to be shifted from one Judge to another Judge and seeing one Judge protect another Judge and committing one crime for another crime within the 22nd Judicial District Court with the assistance of Mr. Lacayo's private lawyers unlawful acts of obstruction of Justice and Malfeasance in office and even going as far as committing **"INCHOATE CRIME."**

The Trial Court turns a blind eye to the unfair and partial trial proceedings and the violation of the "EQUAL PROTECTION RIGHTS" issues including removing "The Motion to Withdraw as Counsel" illegally from the records that has corroborated when never addressing this Motion Correctly In Open Court within the transcripts to further their ILLEGAL HIGH CRIMES and had been submitted from the defense attorney Mr. DeSalvo and received by Judge Crain. Therefore, it had became "A TOTAL CONFESSION OF JUDGMENT ON THEIR OWN VOLUNTARY CONFESSION" as proven on the claims III and V, and verified by The Trial Court on their own rebuttal had confess this also to this merits, "Petitioner argues that DeSalvo did not want to represent Mr. Lacayo and sought to withdraw,"

The Trial Court also stated, "While THIS MAY BE TRUE."

As one can see, the Trial Court did not want to fully commit to their assessment.

The bulwark of the Trial Court defense has been totally annihilated as they run for cover in many different direction by not answering correctly the merits of Mr. Lacayo's several claims, I, II, III, IV, V, and including VI to the CHANGE OF VENUE MOTION and change titled claims, I, II and especially III and IV, and V claims IN VIOLATION OF THE RIGHT TO A FAIR AND IMPARTIAL TRIAL should have been received a proper verdict of **"GRANT"** to that MOTION OF CHANGE VENUE and others since it stemmed from Judge Elaine W. Dimiceli committed obstruction of Justice by deliberately denying Mr. Lacayo proper access to Court and in violation of Mr. Lacayo's EQUAL PROTECTION RIGHTS when Judge Dimiceli committed Malfeasance In Office and lets not forget all other issues Mr. Lacayo stated on his: MOTION FOR PETITITONER'S RESPONSE and "AMENDED" Post Conviction Relief Application that states the most importantly causing THE MANIFEST VIOLATION OF SUBJECT MATTER AND PERSONAL JURISDICTION issues by committing INVIDIOUS

DISCRIMINATION against Mr. Lacayo through violating the DUE PROCESS, PROCEDURAL, AND SUBSTANTIVE DUE PROCESS, UNDER THE LOUISIANA STATES LAWS AND THE UNITED STATES CONSTITUTIONAL RIGHTS of every American citizen of the United States of America!

If this is not prejudice, then can anything be done to bring THE TWENTY-SECOND JUDICIAL DISTRICT COURT TO JUSTICE? ONE ANSWER

"GOD"

## PRESENTATION OF FACTS AND LAWS SUMMARY

However, the Judge Martin E. Coady and the prosecutor and Mr. Lacayo's private attorney, Mr. DeSalvo participated in the acts of illegal crimes on the date of September 28, 2009, October 12, 2009, October 13, 2009, and November 3, 2009, and to this day the court has not filed "The Motion to Withdraw as Counsel" and without addressing this Motion in open court properly and which has now wangled its way out of the records mysteriously within the 22nd Judicial District Court or any documentation of evidence if this Motion was filed or submitted into the appeal records.

## LA. C.CR.P ART. 701-715, MOTION FOR CONTINUANCE: TIME FOR FILING ILLEGAL RECUSAL HEARING ON JULY 22, 2008 TO JULY 23, 2008

The **"MOTION TO CHANGE THE VENUE"** should have been granted, but having "ALL" the judges being bias and prejudicial cause Mr. Lacayo to have an unfair and partial trial proceeding.

131

(1)The court has <u>denied the proper continuance</u> to the Petitioner and

(2) failure to provide <u>Mr. Lacayo</u> with the rights of the proper procedure of any mandatory summarily and contradictory hearing with adverse party, which provided to prove ineffective assistance of counsel

(3) Either way, the prosecutor or the defense party <u>shall</u> allege specifically the grounds upon which it is based.

(4) Thereby, the court, the prosecutor and the private attorney withheld the Petitioner sufficient appropriate time for the subpoena any of the defense witnesses.

(5) Plus, denied informing Mr. Lacayo of the change of date before the recusal hearing as it dealt with the Motion to recusal Judge <u>Raymond S. Childress,</u> during the proceedings of the section before the actual 2nd trial.

(6) And <u>The Court, The Prosecutor, and His Private Attorney has also denied or failed to provide the defense party at least 7 days for the proper procedure of Article 707 time period between each of the hearing it further showed that they  had orchestrated the abattoir.</u>

(7) Thereupon, the Judge Dimiceli ought to have prior to the hearing on <u>July 23, 2008,</u> in connection with C. Cr. P. Article 715. The next order for procedure was that the Judge <u>Elaine W. Dimiceli</u> is to <u>implement a fixed date</u> upon which the hearing <u>shall</u> proceed, except when <u>both parties ask</u> that no date be set for these above stated reason under the fundamental right of **Louisiana Constitutional Rights: (1 sec. 1, 2, 3, 13, 16, 20, 22, 24, and U.S. Amendment to the Constitution 5, 6, 8, 14, and C. Cr. P. Article 707, 708, 709, 710, 711, 712, 713, 715). <u>State v Buckenburger,</u> 428 so. 2d 966 (La. APP 1st Cir. 1983)**

Indeed, the District Attorney, Special Circumstance of Walter Reed's office and the 22nd Judicial District, Parish of St. Tammany are in constant, questionable practice of violation of ethical or moral code of conduct and violation of legal laws of the State of Louisiana.

Besides, these are more than enough evidence to have the legal right of a **FEDERAL INVESTIGATION INTO THE CURRENT INDICTMENT OF THE FORMER DISTRICT ATTORNEY WALTER P. REED** of the unethical practice of the Judicial Court misconduct of St. Tammany Parish due to the quintessential, vicious, atrocious acts of RACKETEER INFLUENCE and CORRUPT ORGANIZATION ACTS that further shows how this court has maliciously concocted a deliberate schemes to rig and sabotage this case by Ultra Virus, "Beyond The Power" through reckless and wantonness by committing the unabridged criminality of injustice against the citizens of the United States of America.

Moreover, it has also provided the absolute proof of "falsus in omnibus" of insurmountable absolutely clear and convincing numerous acts of Convoluted, Sinister Evidence done by The Court, The Prosecutor, The Private Attorney, "Mr. Frank G. DeSalvo," and all the Cabals.

However, Hon. Raymond S. Childress, and the Hon. Judge William J. Crain, both were filed against to have themselves recused from the Petitioner's case.

July 23, 2008 before the Hon. Elaine W. DiMiceli, Div. "F" a Motion of Recusal of Judge Raymond Childress was filed herein, and October 13, 2009 before the Hon. Martin E. Coady of Div. "F" a Motion of Recusal of Judge William J. Crain was filed herein.

The tantamount duty of a judge is to conduct fair and impartial proceedings. **LSA-C.C.P. art. 151; LSA-C.Cr.P. art. 671**, 32 So.3d 223, 2010-0250 La. 4/5/10, **Covington v. McNeese State University**, (La. 2010).

If a valid ground for recusal exists, a judge shall either recuse himself or refer the motion to another judge. **LSA-C.C.P. art. 154**, 76 So.3d 465, 2010-1114 La.App. 1 Cir. 8/2/11,

**Slaughter v. Board of Sup'rs of Southern University and Agr. and Mechanical College**, (La.App. 1 Cir. 2011).

It is well settled that a trial judge is presumed to be impartial. **State v. Collins**, 288 So.2d 602 (La.1974). For an accused to be entitled to the recusation of a trial judge on the grounds of bias, prejudice and personal interest such bias, prejudice and personal interest must be of a substantial nature based on more than mere conclusory allegations. **State v. Qualls**, 377 So.2d 293 (La.1979), 57 So.3d 597, 2010-864 La.App. 3 Cir. 2/16/11, **State v. Gasaway**, (La.App. 3 Cir. 2011). The Petitioner has accrual proven facts submitted herein.

The 22nd Judicial District Court failed to have the Judges recused in this matter and to address the Motions that were filed herein. The Judges in the Petitioner's case were biased and prejudiced instead of adhering to the codified Laws of the State of Louisiana and the Cannon Laws of Judicial Conduct, the Judges allowed the State to introduce evidence that was insufficient and allowed testimony that was collaborated and in a "nutshell", allowed the State to become vindictive towards the Petitioner and partake in the conspiracy to have the Petitioner prosecuted for a crime for which the Petitioner was actually innocent of. There was no crime committed here by Mr. Lacayo, the judges collaborated with each other to have the Petitioner remain in the 22nd Judicial District Court by denying the "CHANGE OF VENUE MOTION", for if Venue had been granted then the Petitioner would not be here, where he is today, instead all the Judges collaborated to have prosecution initiated upon the Petitioner for freely exercising his rights during trial proceeding and tying to speak during trial and filing pro se Motions only to be shifted from one judge to another judge in the same Judicial District Court with the assistance of Mr. Lacayo's private lawyers unlawful acts of malfeasance in office and obstruction of justice and also committed, "Inchoate Crimes".

1)  Honorable Judge Raymond Childress – 1st trial – and one year into the 2nd trial
2)  Honorable Elaine W. Dimiceli – 2nd trial
3)  Honorable William J. Crain – 2nd trial
4)  Honorable Martin E. Coady – 2nd trial, "Inchoate Crimes"

**Attention:** Judge Raymond Childress issued the Protective Order and was the 1st and partially into the 2nd trial. **Liljeberg vs. Health Serus Acquisition Corp**, 486 U.S. 847, 867-70 (1988) (harmless error analysis inapplicable when Judges overlook circumstances which should have disqualified them from hearing case.)

The Petitioner's constitutional rights under the VI and XIV Amendment were clearly violated and the Petitioner's case based on the bias of the judges should be reversed and the Petitioner released from the Louisiana Department of Corrections.

**Bigby vs. Lock**, 340 F. 3d 259, 267, (5th Cir. 2003), (Adjudication before a biased trial falls within the very limited of a case that represents a structural error subject to automatic reversal) **State v. Buckenburger**, 438 So. 2d 966, (La. App. 1st Cir. 1983).

**Mooney vs. Holohan**, warded 294 U.S. 103

Prima Facie Case Laws on Conspiracy to Scam and Murder:

U.S. Supreme Court case No. 99-1511, Halat vs. United States of America, "Brief for the United States Opposition," May 2000. U.S. Nix vs. Nix, Gillich, Ransom and Sharpe Criminal case S91-00040, in the U.S. District Court for the Southern District of Mississippi. U.S. vs. Roy N.A. Mattina Criminal No. J89-0003 (w), U.S., District Court in Jackson, Mississippi.

The Petitioner's case is plain to see for the Docket master of the Court clearly shows that the Petitioner went through several judges in the 22nd Judicial Distinct Court before and after the prosecution was finally handed down and the Petitioner by being denied his right to **FAIR AND**

**IMPARTIAL TRIALS** was subject to **VINDICTIVE PROSECUTION** and **BIASED JUDGES** working all together for one cause to prosecute the Petitioner, Mr. Lacayo. Including the **APPELLATE COUNSEL LIEU T. VO CLARK** for failure to address these issues on Appeal.

**Delgado vs. Lewis** 223 F. 3d 976, 980-82 (9th Cir. 2000) (Counsel's failure to raise any arguable in Appellate was Ineffective Assistance).

**Massaro vs. U.S.**, 538 U.S. 500, 509 (2003), (This being done does not bar the claim from being brought in later collateral proceedings).

The state prisoner, such as the petitioner, Mr. Ghazir Lacayo, who has been denied rights to assistance of counsel during the 1ST trial as the time required under state law to appeal from the mistrial, 2nd trial conviction, is entitled to a meaningful out of time appeal from conviction, including, the appointment of counsel/independent/ standby counsel to assist him and if not granted such rights, his conviction and sentence is to be vacated if such out of time appeal is refused, the prisoner, on petition for **WRIT OF HABEAS CORPUS** dealing with myriad of issues and especially on the **DOUBLE JEOPARDY** issues on the 1st and 2nd trials, ought to have been discharged from custody, see **ROBINSON V. HENDERSON**, 316 F. Supp. 1241, (Ed. La. 1970) FOR through failure to give either written or oral intent to file appeal, failure to pursue appeal from wrongful judgment, amounts to ineffective assistance, (**STATE V. BIENEMY**, 483 So. 2d. 1105, (La. App. 4th Cir. 1986); **STATE V. SIMMONS**, 390 So. 2d. 504, (La. 1980).

## PRAYER

WHEREFORE Petitioner PRAYS the Honorable Court grant the foregoing Application

for Writ of Habeas Corpus and order an evidentiary hearing before the Trial Court for the facts

presented herein and/or issue appropriate remedial relief for the facts presented herein.


Respectfully submitted,


Ghazir G. Lacayo #306498
Rayburn Corr. Center
27268 HWY 21 N
Angie, Louisiana 70426

## CERTIFICATE OF SERVICE

I, Ghazir Lacayo, do hereby declare under penalty of perjury that the foregoing facts contained herein are true and correct to the best of my knowledge and belief and the foregoing has been forwarded to the District Attorney in and for the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana this __7__ day of __October__, 2015, Angie, Louisiana 70426.

Ghazir Lacayo



US POSTAGE PITNEY BOWES

$ 005.95⁰
ZIP 70429
02 1P
0001393580 OCT 09 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT
STATE OF LOUISIANA
HALE BOGGS BUILDING
500 POYDRAS STREET C151
NEW ORLEANS, LOUISIANA 70130

NOT CENSORED
Not Responsible for Contents

JUL 0 8 2015

RAYBURN CORRECTIONAL CENTER

GHAZIR LACAYO #306498
RAYBURN CORRECTIONAL CENTER
27268 HWY 21 N
ANGIE, LOUISIANA 70426