UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GHAZIR LACAYO** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 15-5190** |
| **SANDY MCCAIN** | **SECTION: "A"(5)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).   For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE** as untimely.

*Procedural History*

Petitioner, Ghazir Lacayo, is a state prisoner incarcerated at the B.B. (Sixty) Rayburn Correctional Center in Angie, Louisiana.   On July 18, 2006, Lacayo was charged by bill of information with aggravated criminal damage to property.[1]   On May 19, 2009, after a two-

---

[1] State Rec., Vol. 1 of 14, Parish of St. Tammany, Bill of Information, R.p. 56.   The State used Adobe Acrobat to superimpose page numbering on the fourteen-volume state court record (referenced on the bottom right as "Page 1 of 2764"), which will be referenced herein as "R.p."   If a particular transcript is referenced, a specific citation to the page in the

day jury trial, he was found guilty as charged.[2]   Following a multiple-offender adjudication, on December 4, 2009, he was sentenced as a second-felony offender to thirty (30) years imprisonment.[3]

On direct appeal, Lacayo's appointed counsel asserted that the trial court erred in allowing other-crimes evidence, the evidence was insufficient to support the conviction, the sentence was excessive and the trial court erred in denying the motion to reconsider sentence.  Lacayo also filed a supplemental *pro se* brief asserting that he was denied his right to due process and equal protection during the course of his pretrial motion hearings and two trials, his appellate counsel incorrectly interpreted and applied the habitual offender statute and his sentence is illegal.   On February 11, 2011, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[4]   On September 30, 2011, the Louisiana Supreme Court denied his application for a writ of certiorari.[5]

On September 3, 2013, Lacayo filed an application for post-conviction relief with the state district court.[6]   In his post-conviction application, he asserted that the trial judge

---

transcript may also be noted in this report.

[2]  State Rec., Vol. 1 of 14, Jury Verdict.

[3]  State Rec., Vol. 2 of 14, Reasons for Judgment (December 15, 2009); *see also* State Rec., Vol. 4 of 14, R.pp. 867-872, Transcript of Sentencing, pp. 12-17.

[4]  *State v. Lacayo*, 2011 WL 2135143 (La. App. 1st Cir. 2/11/11), 57 So.3d 609 (Table).

[5]  *State v. Lacayo*, 2011-KO-0517 (La. 9/30/11), 71 So.3d 281.

[6]  State Rec., Vol. 7 of 14, Uniform Application for Post-Conviction Relief.   The

failed to advise him of the dangers of self-representation at a recusal hearing (that took place prior to the reallottment of his case and trial before a different judge); a second trial placed him twice in jeopardy after the improper grant of a mistrial; ineffective assistance of second retained trial counsel; and actual innocence. In an amended application, he also asserted claims that he was forced to proceed without his retained attorney and to use a stand-in attorney during hearings and that he was denied a fair trial due to judicial bias. On February 6, 2014, the trial court issued a written order and reasons denying relief.[7] On March 12, 2014, Lacayo filed an application for supervisory writs with the Louisiana First Circuit. The court of appeal denied relief on June 16, 2014.[8] On July 23, 2014, he filed a supervisory writ application with the Louisiana Supreme Court. That writ application was denied without reasons on July 31, 2015.[9]

---

application contains an affidavit bearing the date September 3, 2013. However, as the State notes, the application itself was signed and dated by Lacayo on September 18, 2013, which coincides with inmate withdrawal request records showing a withdrawal request on the latter date (State Rec., Vol. 10 of 14, R.p. 1790). The application is stamped as filed with the district court on September 20, 2013. The Court will use the earlier September 3, 2013 date adopted by the State. Lacayo also submitted an amended post-conviction relief application on or about January 27, 2014. State Rec., Vol. 8 of 14, R.p. 1453.

[7] State Rec., Vol. 8 of 14, District Court Order denying relief (February 6, 2014), R.p. 1481.

[8] State Rec., Vol. 9 of 14, Louisiana First Circuit Writ Application No. 2014-KW-0381; *State v. Lacayo*, No. 2014-KW-0381 (La. App. 1st Cir. June 16, 2014).

[9] State Rec., Vol. 11 of 14, Louisiana Supreme Court Writ Application No. 2014-KH-1610; *State v. Lacayo*, 2014-KH-1610 (La. 7/31/15), 174 So.3d 656.

On October 7, 2015, Lacayo filed his federal application for *habeas corpus* relief.[10] In his petition, Lacayo raises the following claims:

(1) The trial court lacked subject matter and personal jurisdiction and the conviction and sentence obtained is in violation of the constitution of the United States Amendments V, VI, VIII, XIV, and the Louisiana Constitution of 1974, Article 1 §1, 2, 3, 13, 16, 20, 22, 24[;] Honorable Judge Elaine W. Dimiceli violated petitioner's rights by not fully advising the petitioner of the right against self-incrimination[;] and in violation of the Louisiana Code of Criminal Procedure article 707-715, motion for continuance, time for filing;

(2) Conviction and sentence obtained in violation of the United States Constitution Amendment V, VI, XIV and the Louisiana Constitution of 1974 article 1 §13, 15, §16, "double jeopardy";

(3) In violation of a fair trial and impartial 2nd trial and conviction and sentence obtained in violation of the United States Constitution Amendment V, VI, XIV, and the Louisiana Constitution of 1974 article 1 §13 and §16, "ineffective assistance of counsel";

(4) La. C. Cr. P. art. 854, newly discovered evidence; necessary allegations,

---

[10] Rec. Doc. 1, 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n. 2 (5th Cir.2003). Petitioner signed his federal application on October 7, 2015. Therefore, his application could not have been placed in the prison mailing system any earlier than that date.

actual innocence of the petitioner, Mr. Lacayo;

(5) In violation of the United States Constitution, Amendment V, VI, XIV, and Louisiana Constitution of 1974, Article 1 §13 and 16, "petitioner forced to retain counsel – not enrolled to the petitioner's case, or with petitioner's lawyer, or none at all";

(6) In violation of a "fair and impartial 1st and 2nd trial" and equal protection violation caused the conviction and sentence obtained in violation of the United States Constitution Amendment V, VI, XIV, and the Louisiana Constitution of 1974 article 1 §13 and §16 "bias judges, failure to recuse themselves."

The State has filed a response, arguing that the federal application is not timely. Lacayo has filed an objection to the State's response.

*Analysis*

Initially, the Court must determine whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir.1997) (citing 28 U.S.C. § 2254(b),(c)). The State submits that the petition is untimely. For the following reasons, the Court agrees and finds the petition to be untimely.

A. *Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs the filing date for this action because Lacayo filed his *habeas* petition after the AEDPA's effective date.   *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).   The AEDPA generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." [11]   With regard to finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment

---

[11] Title 28 U.S.C. § 2244(d) provides additional grounds, which do not apply here:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id*. at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

In this case, Lacayo's conviction became final, for federal limitations purposes, on December 29, 2011, ninety (90) days after the Louisiana Supreme Court completed review of his writ application following direct appeal, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), *cert. denied*, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1). Under a plain reading of the statute, Lacayo then had one year within which to file his federal *habeas* petition, or a deadline of January 2, 2013.[12] He did not file his

---

[12] December 29, 2012 (one year from the date his conviction became final) fell on a

federal *habeas* petition with this Court until October 7, 2015. Thus, his application must be dismissed as untimely, unless that deadline was extended through tolling.

B. *Statutory Tolling*

There is no basis for statutory tolling in this case. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, as the state-court record shows, Lacayo had no such applications pending before the state courts during the applicable one-year period. The one-year federal limitations period continued to run interrupted and expired on January 2, 2013. His state-court application for post-conviction relief was not filed until September 3, 2013, eight months after the one-year federal limitations period had already expired – it therefore could not possibly afford him any tolling benefit. *See Madden v. Thaler*, 521 F. App'x 316, 320 (5th Cir. 2013); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at *4, *aff'd*, 253 F.3d 702 (5th Cir. 2001) (citing *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D.

---

Saturday. That Monday, December 31, was New Year's Eve and the following Tuesday, New Year's Day. Thus, Lacayo had until Wednesday, January 2, 2013 to file his federal application. *See* Fed. R. Civ. P. 6(a)(1)(C) (when computing time, "include the last day of the period, but if the last day is a Saturday ... the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

La. June 27, 2000)).   Simply put, once the federal limitations period expired, "[t]here was nothing to toll."   *Butler v. Cain,* 533 F.3d 314, 318 (5th Cir. 2008); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 265 (5th Cir. 2002) (missing the AEDPA deadline by even a few days nevertheless renders a federal petition untimely).   Because Lacayo had no state applications pending at any time during the one-year limitations period, he clearly is not entitled to any tolling credit pursuant to § 2244(d)(2).

C. *Equitable Tolling*

The United States Supreme Court has held that the AEDPA's statute of limitations is subject to equitable tolling.   *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).   However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."   *Id.* at 2562 (internal quotation marks omitted); *see also Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").   A petitioner bears the burden of proof to establish entitlement to equitable tolling.   *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Lacayo does not assert, much less prove, that any type of extraordinary circumstance prevented him from filing his federal application timely within the one-year limitations period.   In fact, he offers no excuse for his failure to pursue timely *habeas* relief and the record discloses no basis upon which this Court could find that equitable tolling is

warranted.[13] Lacayo cannot establish that an extraordinary circumstance existed or that he pursued his rights diligently, because he did not file his state application for post-conviction relief until one year and eight months after his conviction became final. It is well-settled that mistake, ignorance of the law, and/or a prisoner's *pro se* status do not suffice to justify equitable tolling. *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); s*ee also Tate v. Parker*, 439 F. App'x 375 (5th Cir. 2011) ("The alleged extraordinary circumstances endured by Tate, such as ignorance of the law, lack of knowledge of filing deadlines, a claim of actual innocence, temporary denial of access to research materials or the law library, and inadequacies in the prison law library, are not sufficient to warrant equitable tolling"); *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) ([E]quitable tolling "is not intended for those who sleep on their rights").

Lacayo's arguments address only the diligence requirement and the fact that he filed within the applicable two-year period under state law, pursuant to Louisiana Code of Criminal Procedure article 930.8. His actions do not demonstrate the requisite diligence, however, because he inexplicably waited 20 months after his conviction and sentence

---

[13] Lacayo asserts in his objection to the State's response that he was denied effective assistance of counsel in his pretrial, trial and appellate proceedings. He does not, however, provide any facts to explain how the alleged failures by counsel could possibly have prevented him from complying with the one-year federal statute of limitations.

became final to pursue any relief. Significantly, he fails to offer any reason as to why he was unable to file timely within the one-year federal limitations period. Thus, regardless of the diligence prong, he has not shown that extraordinary circumstances existed that prevented him from timely filing his federal application. Nor would any assertion that he mistakenly relied on the two-year limitations period under state law or lacked instructions as to the federal limitations period suffice to establish the extraordinary circumstances required to justify equitable tolling. *Santinac v. Cain*, Civ. Action No. 06-6260, 2011 WL 765742, at *2 (E.D. La. Feb. 23, 2011) (Zainey, J) (Order and Reasons) (citing *Cooper v. Travis*, No. 08-0021, 2010 WL 3523022, at *2 (E.D. La. Sept. 2, 2010) (Africk, J) (Order and Reasons). Indeed, similar to the facts presented in the instant case, in *Santinac*, petitioner did not file for state post-conviction relief until a year and seven months after his state conviction became final, which was already seven months beyond the time he had to apply for federal *habeas corpus* relief, and this Court held that equitable tolling was not applicable. Likewise, in this case, Lacayo is not entitled to equitable tolling.

D. *Actual Innocence*

Finally, Lacayo claims that the limitations period should be tolled because he is actually innocent of the crime for which he was convicted. In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass... [to excuse] the expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). The Supreme Court has cautioned,

however, that "tenable actual-innocence gateway pleas are rare[.]" *Id.* To succeed on this claim, Lacayo must present a credible claim of actual innocence based on "new reliable evidence... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v.Delo*, 513 U.S. 298, 324, 327 (1995). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *McQuiggin*, 133 S.Ct. at 1936.

Lacayo has not met the rigorous burden of proof imposed under the actual-innocence exception based on the newly proffered evidence. The newly discovered evidence consists of an affidavit by contractor, Robert David Tate dated August 2, 2013.[14] Tate avers that on or about July 21, 2006, he met with the victim and her friends at a bar to discuss a construction project. During the course of that conversation, the victim told him she lied to the District Attorney about the incident and conspired with friends to set up the incident and intentionally provoke Lacayo in order to have him arrested. Lacayo claims this proves he is actually innocent and was "framed for a crime that he never intended to cause the

---

[14] State Rec., Vol. 7 of 14, R.p. 1254.

accident."[15]   Even if, as Lacayo claims, this new evidence could diminish the victim's credibility, the strength of the evidence presented here is not sufficient to undermine confidence in the outcome of trial.   *McQuiggin*, 133 S.Ct. at 1936.

Even if the Court assumes that the evidence is "new" because it was not presented at trial, the evidence does not support a credible claim of actual innocence.   In this case, the newly discovered evidence is insufficient to show that no reasonable juror would have convicted Lacayo for aggravated criminal damage to property had that evidence been presented at trial.   Contrary to his incorrect assumption that he was convicted solely upon the victim's alleged unreliable testimony at trial, the record shows that the victim's testimony regarding the occurrence of the crime was consistent with other evidence presented at trial.

The record facts as succinctly summarized by the Louisiana First Circuit on direct appeal established the following:

> On the night of June 21, 2006, Stephanie Lacayo drove to Daiquiris & Company on Gause Boulevard in Slidell. Stephanie had recently separated from her husband, the defendant. In April of 2006, Stephanie obtained a protective order against the defendant, ordering the defendant, among other things, not to contact, abuse, harass, follow, or threaten her. Stephanie had custody of their ten-year-old son.
>
> Stephanie drove her Volvo into a parking spot at the daiquiri shop. The defendant followed her into the parking lot in a new F–250 Ford pickup truck pulling a small trailer. From her rearview mirror, she saw the truck approaching her from behind. Not positive it was the defendant, but fearing it might be, Stephanie put her car in reverse, preparing to back out. Without

---

[15] Rec. Doc. 1-1, p. 101 of 139.

warning, the defendant smashed his truck into the back of the Volvo. Her windows (not windshields) shattered on impact and her car passed over the narrow median it was parked at and spun until Stephanie faced the opposite direction from her original parking-spot position. Because the median had a concrete curb, the tires on the Volvo were flattened. The defendant veered off several feet to the right and crashed into the side of a storage unit behind the daiquiri shop.

Stephanie testified at trial that she could not open the driver-side door. She crawled toward the passenger door and opened it. Before she could get both feet on the ground, the defendant dove through the driver-side window and grabbed her ankle. Stephanie fell to the ground. She kicked free from the defendant and got up to run. The defendant grabbed her hair and tackled her to the ground. Stephanie screamed for help. As she lay on her stomach, the defendant repeatedly struck her in the head. A crowd soon gathered, and the defendant was pulled off of Stephanie.

Theresa Sanders witnessed the collision and the aftermath. Theresa knew neither Stephanie nor the defendant. She testified at trial that she saw Stephanie pull her Volvo into a parking spot. As Stephanie's car sat still, the defendant drove his truck into the back of her car while moving very fast. The truck veered off into a storage unit, and the Volvo spun 180 degrees. The defendant exited his truck, screaming, and ran to the car. Theresa testified that defendant had to go around the car, but was not sure whether he went over the hood of the car before pulling Stephanie out of the passenger side by her hair. As Stephanie lay on the ground, the defendant stood over her and punched her in her face and body repeatedly. Stephanie screamed for help. At least two people pulled the defendant off of Stephanie and held him until the police came.

Dillon Sanders, Theresa's husband, also testified at trial. Dillon did not know Stephanie, nor did he know the defendant. He observed the defendant drive fast past him and hit Stephanie's car, causing the car to spin around. Dillon did not see brake lights illuminate on the truck before it struck the car. In fact, Dillon heard the engine "rev up" as it approached Stephanie's car. Dillon stated that the defendant did not try to stop. As Stephanie tried to climb out of her car, the defendant pulled her out of the passenger side, got on top of her, and began striking her in the head and face. The defendant was yelling and cursing, and Stephanie was screaming for help. A man who had come out of the back of the daiquiri shop pulled the defendant off of Stephanie.

The defendant did not testify at trial.[16]

Contrary to Lacayo's assertions, given the weight of the evidence presented at trial, and specifically the testimony of the two independent eyewitnesses, the newly discovered affidavit regarding the victim's alleged conspiracy and lies does not establish that Lacayo's actions were not intentional or that he was factually innocent.   Lacayo has not made the necessary showing by new evidence that he is actually innocent of the crime for which he was convicted.   *Schlup*, 513 U.S. at 316.

In sum, the instant petition was filed after the federal limitations period expired. Lacayo has not established that the limitations period was tolled or that the actual innocence exception applies.   Therefore, his federal *habeas corpus* petition should be dismissed with prejudice as untimely.

## RECOMMENDATION

**IT IS RECOMMENDED** that Lacayo's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

---

[16]   *State v. Lacayo*, 2011 WL 2135143, at *1-2.

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[17]

New Orleans, Louisiana, this 30th day of September, 2016.

                                          MICHAEL B. NORTH
                                    UNITED STATES MAGISTRATE JUDGE

---

[17] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.